**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **AMEC CONSTRUCTION MANAGEMENT, INC. (f/k/a/ Morse Diesel International, Inc.)**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **No.: 06-867 (Judge Braden)** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ENLARGEMENT OF DISCOVERY**

The Government's June 16, 2008 Motion for Enlargement of Discovery is the Government's latest attempt to purposefully and continually delay this case and an adjudication of its purported claims for excess reprocurement costs. According to the Government, the St. Louis Courthouse was substantially complete in May 2000, and the St. Louis Courthouse was occupied in January 2001. Thus, the Government took more than five years to begin asserting its claims, a process that began with an initial claim in March 2006 exceeding $30 million, and two revisions of that claim later in 2006 that also sought amounts in the $30 million range. Only after AMEC Construction Management, Inc. ("ACMI") filed this action in December 2006 did the Government take steps to recalculate its claim and belatedly announce, in August 2007, that its claim really was only approximately $17 million – a reduction of its claim by over 40%. Moreover, recent discovery in the case has shown that the Government, as recently as 2007, had internal calculations of its claim in the range of $10 million – an amount roughly 2/3 less than its original "calculations" in 2006.

The Government can recover excess costs of reprocurement only if it can prove three elements: (1) the reprocured services or supplies are the same as or similar to those of the original contract (comparing the item reprocured with the item specified in the original contract); (2) the Government actually incurred excess costs; and (3) the Government acted reasonably to minimize the excess costs resulting from the contractor's default (act within a reasonable time of the default, use the most efficient method of reprocurement, obtain a reasonable price, and mitigate its losses). *E.g., Cascade Pac. Int'l v. United States*, 773 F.2d 287, 293-94 (Fed. Cir. 1985). The sorry truth is that the General Services Administration ("GSA") took no action in 1999-2000 to create systems to monitor its costs so that it could contemporaneously document that the costs incurred after termination in June 1999 came within the scope of work applicable to Morse Diesel International (now ACMI) as the general contractor under the Phase 2 contract. Having failed to create such a system in 1999-2000, the Government supposedly spent more than five (5) years attempting to identify reprocurement costs, then the GSA issued three faulty calculations in 2006, revised that calculation in 2007 only after ACMI filed suit, and now is desperately seeking to conceal the GSA's own calculations concluding that a $10 million figure (or possibly an even lower figure) might be supportable.

Indeed, this five year delay is stunning in light of purported Government expert consultant Martin Hom's testimony that in drafting the flawed March 21, 2006 final decision, he spent only 10 to 20 hours reviewing documents and three (3) hours drafting the decision. 06/25/08 Hom Deposition (preliminary transcript), at 12:25:54 through 12:26:37 (Exhibit A).[1] Moreover, Mr. Hom evidently relied on cost data from September 2002 in drafting the March 21,

[1] Because at this time only the preliminary version of the Hom transcript is available and the pagination of that version is inconsistent, time stamp references are used to indicate the relevant text for the Hom deposition.

2006 final decision, and that 2002 data was the most updated data available as of January 2006. 06/25/08 Hom Deposition, at 11:38:15 through 11:42:47 (Exhibit A); Hom Deposition Exhibit 4 (Exhibit B). If the most current data available was from September 2002 and it only took Mr. Hom at most 23 hours to review documents and draft the March 21, 2006 final decision, there is no reason why the final decision was not issued in October 2002.

Yet, apparently, not even the most recent (August 9, 2007) final decision is an accurate statement of the Government's claim. On September 6, 2007, the Government first produced a spreadsheet bearing a date of July 30, 2007,[2] stating that it was "the spreadsheet for that computation" in the August 9, 2007 demand. Then, on May 28, 2008 (over seven months later as depositions were about to commence), the Government produced another spreadsheet containing revisions to the initial spreadsheet. Accordingly, Plaintiff ACMI has been prejudiced by both the Government's extreme delay tactics and the Government's ever-changing demands for excess reprocurement costs. Notably, all of those demands lack both legal and adequate factual support, as demonstrated by numerous documents and deposition testimony.

Meanwhile, ACMI has diligently pursued discovery from the Government. ACMI issued its requests for production of documents on January 16, 2008 and its first set of interrogatories on April 23, 2008. Although the Government responded to the first request for production on February 19, 2008, the Government's written response to the first request for production largely referred ACMI to a Kansas City warehouse where documents would be made available to ACMI. Initially the Government indicated that access would occur in March 2008. Yet, despite ACMI's multiple requests for access at earlier dates, the Government only permitted ACMI

---

[2] This date appears on the native excel file produced by the Government on February 8, 2008, after ACMI objected that the pdf version of the spreadsheet was unreadable.

access to the approximately 630 boxes of documents in the Kansas City warehouse the week of May 20, 2008 – three months after its written response. ACMI took the depositions of Terry Page on June 6, 2008, of Karen Poole on June 12-13, 2008, and of former GSA employee and purported Government expert consultant Martin Hom[3] on June 25, 2008. On June 12, 2008, ACMI noticed depositions for Linda Phillips and Georgann Butler for July 22-23, 2008, which dates are currently being negotiated by the parties. ACMI has noticed other depositions as well.

Almost a decade has passed since many of the relevant events occurred. As Tom Barnard, a GSA employee who was involved in this project, concedes, "it is tough remembering." *See* Exhibit C (May 2007 email from T. Barnard to T. Page explaining the difficulty with the delay). Moreover, in the meantime, key personnel have quit and even died. And, many Government documents have been destroyed, as was explored at length in the deposition of Contracting Officer Karen Poole.[4] As time continues to pass, the evidentiary difficulties get even worse -- something that the Government should be concerned about given its significant burdens of proof in this case.

This Motion is the third time the Government has sought an order from this Court delaying proceedings in this case for significant amounts of time. First, the Government's Contracting Officer Georgann Butler informed ACMI by letter dated April 24, 2007 that she was

---

[3] The Government informed ACMI in its May 30, 2008 Responses to Plaintiff's First Set of Interrogatories that "Defendant has rejected the calculation made by Mr. Hom in the March 21, 2006 contracting officer's decision and related demands." Mr. Hom is the second Government expert (including John Walsh) that the Government is seeking to discard in an attempt to escape ACMI's scrutiny. The Government spent over 17 months forcing ACMI to rely to its detriment on the March 21, 2006 calculation that it now rejects. However, the Government's subsequent reprocurement cost calculations are also deficient and unsupportable.

[4] ACMI will not burden this Court with lengthy excerpts from the Poole deposition transcript describing the inadvertent deletion of, and efforts to recreate, a computer file used by Ms. Poole to store materials related to litigation concerning the St. Louis Courthouse. Suffice to say that all parties to this litigation acknowledge this file is no longer available.

considering revising her March 21, 2006 calculation and that she would issue a fourth calculation on or before June 8, 2007. On April 27, 2007, the parties stipulated to postpone beginning discovery until June 15, 2007 and setting July 16, 2007 deadline for initial disclosures. Yet, the Contracting Officer failed to issue a revised final decision as promised and instead sent ACMI a June 7, 2007 letter advising ACMI that she would issue any revised final decision on August 9, 2007. Second, on June 14, 2007, the Government filed its Motion for Stay of Proceedings and Enlargement of Time and Defendant's Status Report seeking enlargement of time for 68 days from June 14, 2007 until August 23, 2007, which ACMI opposed. The Contracting Officer's June 7, 2007 letter cited as a reason for the delay "the current unavailability of former project personnel." However, ACMI has subsequently discovered from documents produced by the Government that, in fact, former project personnel from GSA, CRSS/Jacobs (the project manager), and Government expert Martin Hom had all been working with the Contracting Officer to revise the demand throughout April and May 2007.

The Government has had ample time to conduct its discovery and has failed to make use of that time. The Government failed to serve any requests – save one limited document request – until May 2008: eight (8) months after discovery commenced. As of the date the Government filed its current Motion for Enlargement of Discovery, it had not noticed a single deposition. Indeed, the first time the Government even told ACMI the identities of the persons it wanted to depose was when it filed its Motion on June 16, 2008.

The Government should not be rewarded with additional time that is only necessary as a result of the Government's own decision to delay this action. *See* Exhibit D (June 2006 email chain in which D. Kirchner advised G. Butler to "continue as you have been" in response to G. Butler's email stating that she "previously was advised by [GSA in-house regional counsel] Sam

Skare to take [her] time."). Additionally, the Government's counsel's personal leave schedule and work on other cases is wholly irrelevant. The Government's inordinate delay in initially asserting the overstated claim, its lengthy delay in revising the claim, and its delay in prosecuting the claim in this action demonstrates that laches and estoppel should preclude the Government's efforts to recover on its purported claim.

Therefore, MDI respectfully requests that the Government's Motion be denied.

/s/James D. Wareham
JAMES D. WAREHAM
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128
Attorney of Record for Plaintiff

Of Counsel:
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005

June 27, 2007
LEGAL USE 79839320.3

**CERTIFICATE OF SERVICE**

I hereby certify that this 27th day of June 2008 I caused a copy of the foregoing Plaintiff's Response to Defendant's Motion for Stay of Proceedings and Enlargement of Time to be served by ECF upon counsel for the Defendant as follows:

Dominique Kirchner
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530

/s/Danielle Pierce
Danielle Pierce