**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMEC CONSTRUCTION MANAGEMENT, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-867C** |
| | ) | |
| **THE UNITED STATES,** | ) | **(Judge Braden)** |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR IN CAMERA**
**<u>INSPECTION AND PROTECTIVE ORDER</u>**

Pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court conduct an <u>in</u> <u>camera</u> inspection and determine whether plaintiff is entitled to the documents identified below. Should the Court conclude, after such <u>in</u> <u>camera</u> inspection, that plaintiff is entitled to the production of some or all of the identified documents, defendant respectfully requests that the Court order their production pursuant to a Protective Order directing that plaintiff's counsel may disclose such documents only to members and employees of its law firm, and not to the plaintiff, and that such documents may be used only for purposes of the litigation and, if filed, must be filed under seal.

The general standards for determining appropriate discovery are set forth in RCFC 26(b)(1) which provides, in pertinent part:

> The frequency or extent of use of . . . discovery . . . shall be limited by the court if it determines that: (i) the discovery sought is unreasonable cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery . . . to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive. . . .

RCFC 26(c) further provides for protective orders "for good cause shown" "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Questions of the scope and conduct of discovery are committed to the discretion of the trial court. Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984). A motion for protective order to limit discovery and a motion to compel discovery are both committed to that discretion. Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1022 (Fed. Cir. 1986). In deciding such motions, the court considers among other factors whether the discovery is "reasonably necessary to afford [the party] a fair opportunity to develop and prepare the case." Id. at 1024. Courts also have recognized the necessity for the issuance of Protective Orders where a party's discovery requests cover information and documents that are personal in nature and where the information and documents in Government files are covered by the Privacy Act, 5 U.S.C. § 552a(b). Laxalt v. C.K. McClatchy, 809 F.2d 885, 888-89 (D.C. Cir. 1987) ("the applicability of the Privacy Act to the materials requested is a relevant factor for the District Court to consider in determining the appropriate scope and manner of discovery in a given case"). Statutory protections for certain information

> reflect a congressional judgment that certain delineated categories of documents may contain sensitive data which warrants a more considered and cautious treatment. In the context of discovery of government documents in the course of civil litigation, the courts must accord the proper weight to the policies underlying these statutory protections, and ... compare them with the factors supporting discovery in a particular lawsuit.

Laxalt, 809 F.2d at 889. Further, "the meaning of 'good cause' in Rule 26(c) is properly informed by the interests underlying the Privacy Act." United States v. Microsoft Corp., 165 F.3d 952, 959 (D.C. Cir. 1999); see also Lohrenz v. Donnelly, 187 F.R.D. 1, 8 (D.D.C. 1999)

("This analysis includes a balancing of the 'need for disclosure against potential harm to the subject of the disclosure").

This motion arises out of plaintiff's request for defendant's production of documents that evaluate the performance of seven employees or former employees of the General Services Administration ("GSA"): (1) John Walsh, (2) Steven Anderson, (3) Georgann Butler, (4) Anne Anderson, (5) Linda Derby (now Linda Derby Smith), (6) Karen Poole, and (7) Myron Goldstein. Plaintiff's request for production of documents and defendant's response were as follows:

> 45. All documents that evaluate the performance of the following individuals: John Walsh, Steven Anderson, Georgann Butler, Anne Anderson, Linda Derby, Karen Poole, and Myron Goldstein, without regard for whether the evaluation is considered final, including "personnel files" and any documents of any nature whatsoever discussing the job performance of these individuals regardless of whether the documents are kept or maintained in a "personnel file" for the individual. This request includes, but is not limited to, positive evaluations of the performance of any of these individuals and negative evaluations of the performance of any of these individuals regardless of whether the evaluations occurred as part of an annual evaluation process. This request also includes, but is not limited to, any discussion of whether any of these individuals should be considered for promotion, considered for demotion, or should receive any type of disciplinary sanction or action.
>
> RESPONSE: Defendant incorporates its general objections stated above. We also object because such performance evaluation documents are irrelevant and discovery of such privileged documents is not reasonably calculated to lead to the discovery of relevant evidence. See, e.g., Federal Data Corp., DOTCAB No. 2389, 91-3 BCA ¶ 24063 at n.7 (1991) (denying discovery of performance ratings); Essex Electro Engineers, Inc., DOTCAB No. 1025, 79-2 BCA ¶ 14158, (1979) (denying discovery of performance ratings). The following individuals retired from GSA and, upon their retirement, their personnel records were sent to the Federal Records Center in St. Louis, MO: Anne Anderson (retired February 1999, deceased), Linda Derby Smith (retired 1998 (11/29/2001 Dep. 6)), and Myron Goldstein (retired 2/23/2007). Steven Anderson was hired by the Department of Education, and

> began work there on September 10, 2001 (9/28/2001 Dep. 6). His personnel file is with that agency. GSA has personnel records for its employees John Walsh, Georgann Butler, and Karen Poole.

A8-16.[1] Plaintiff's request was for the period September 28, 1995 (the date of award of the Phase II contract) to the present. A9, 1-2.

The particular documents at issue in this motion are identified as follows:

Georgann Butler documents:

(1) Performance appraisal, 10/1/2006-9/30/2007
(2) Performance appraisal, 10/1/2005-9/30/2006
(3) Performance appraisal, 2/20/05-9/30/05
(4) Performance appraisal, 10/1/2004-9/30/2005
(5) Performance appraisal, 10/1/03-9/30/04

Karen Poole documents:

(6) Performance appraisal, 6/12/2007-10/12/2007
(7) Performance appraisal, 10/01/2005-9/30/2006
(8) Performance appraisal, 7/2005-9/2005
(9) Performance appraisal, 6/30/2005-9/30/2005
(10) Performance appraisal, 10/01/2004-3/31/2005
(11) Performance appraisal, 10/01/2003-9/30/2004
(12) Performance appraisal, 10/01/2002-9/30/2003
(13) Performance appraisal, 10/01/2001-9/30/2002

John Walsh documents:

(14) Document summarizing performance ratings and cash awards
(15) Performance appraisal, 8/1/2006-7/31/2007
(16) Performance appraisal, 8/1/2005-7/31/2006
(17) Performance appraisal, 8/1/2004-7/31/2005
(18) Performance appraisal, 8/1/2003-7/31/2004
(19) Performance appraisal, 8/1/2002-7/31/2003
(20) Performance appraisal, 8/1/2001-7/31/2002
(21) Performance appraisal, 8/1/2000-7/31/2001
(22) Performance appraisal, 8/1/1999-7/31/2000
(23) Performance appraisal, 8/1/1998-7/31/1999
(24) Performance appraisal, 8/1/1997-7/31/1998

---

[1] "A__" refers to the appendix to this motion.

(25) Performance appraisal, 8/1/1996-7/31/1997
(26) Performance appraisal, 7/1/1995-7/31/1996
(27) October 1, 2002 Email from Kathleen Tighe to Arthur Elkin and Eric Miller, Re: John Walsh.[2]

Plaintiff asserts that whether any of these employees or former employees "was criticized by government officials for [their] handling of [the St. Louis Courthouse Phase II] contract goes directly to the question of whether the government's conduct in terminating and reprocuring [the Phase II contract] was reasonable. See June 16, 2008 letter of Plaintiff's counsel at 2; A18. The Phase II contract was awarded on September 28, 1995 and terminated for default on June 16, 1999. A1-3.

The reasonableness of the Government's conduct in terminating the Phase II contract for default on June 16, 1999 is not at issue in this case. This Court has rejected plaintiff's challenge to the termination for default of the Phase II contract. Morse Diesel Int'l v. United States, 74 Fed. Cl. 601, 627-28 (2007). The Court ruled that ACMI had forfeited its claims in case number 99-529, including its request for a declaratory judgment invalidating the termination for default and converting it to a termination for convenience. Id. at 627-28. That ruling is entitled to res judicata and collateral estoppel effect in this proceeding. Id. Accordingly, there is no merit in plaintiff's contention that documents evaluating the performance of these, or any other, Government employees or former employees are relevant to a determination of whether or not the Government's conduct in terminating the Phase II contract for default was reasonable.

---

[2] Defendant's counsel is informed that the performance appraisals for Steven Anderson for the period when his work involved the GSA Phase II contract no longer exist. With regard to Anne Anderson, Linda Derby Smith, and Myron Goldstein, defendant's counsel has requested such records, but she has not yet been able to determine whether such documents exist.

In the alternative, plaintiff asserts that the requested documents are relevant because they relate to whether the Government's conduct in reprocuring the St. Louis Phase II contract was reasonable. Plaintiff's assertions of relevancy must be evaluated individually for each person for whom plaintiff has requested records evaluating their performance, and it is also necessary to consider the time period for which such records are requested.

Anne Anderson is a former GSA contracting officer who retired from GSA in February 1999. She died March 15, 2001. She has no involvement in either the termination for default of MDI or GSA's reprocurement of the St. Louis Phase II contract. There is no merit in plaintiff's assertions of relevancy with regard to Ms. Anderson.

Linda Derby Smith served as a GSA contracting officer on the Phase II contract. She retired from GSA in December 1998 (11/29/2008 Dep. 6). Ms. Derby Smith was not involved in any GSA actions or decisions following her retirement. There is no merit in plaintiff's assertions of relevancy with regard to Ms. Derby Smith.

Steven Anderson, formerly a GSA OIG Special Agent, left GSA for a position with the Department of Education, and started work there on September 10, 2001 (9/28/2001 Dep. 6). Mr. Anderson was the Special Agent who conducted the GSA OIG fraud investigation of MDI. Mr. Anderson was not involved in GSA's termination of MDI or its decisions to reprocure the Phase II contract. There is no merit in plaintiff's assertions of relevancy with regard to Mr. Anderson.

John Walsh is the GSA OIG auditor who provided assistance to Mr. Anderson in the fraud investigation. Mr. Walsh audited some of the payment applications of some of the contractors that GSA contracted with to complete the Phase II contract following the June 16, 1999 termination for default of MDI. There is no evidence that Mr. Walsh was involved in

GSA's termination of MDI for default or in its decision to reprocure the Phase II contract. There is also no indication that plaintiff is challenging any of the audit reports that Mr. Walsh prepared with regard to contractors that obtained GSA contracts to complete the Phase II contract. Plaintiff has not demonstrated that records evaluating Mr. Walsh's performance bear any relevance to any disputed issue of material fact in this case.

Myron Goldstein is a former GSA employee who retired February 23, 2007, and plaintiff has not explained how records evaluating his job performance bear any relevance to any disputed issue of material fact in this case.

Karen Poole previously served as a GSA contracting officer on the Phase II contract and also as a contracting officer during the reprocurement of the Phase II contract. Plaintiff has not demonstrated that records evaluating her job performance relate to any disputed issue of material fact in the case.

Starting in January 1999, Georgann Butler worked on the Phase II contract. Following the June 16, 1999 termination for default of MDI, Ms. Butler served as a GSA contracting officer during the reprocurement of the Phase II contract. Plaintiff has not demonstrated that records regarding Ms. Butler's job performance relate to a disputed issue of material fact in the case.

Although discovery of personnel records sometimes is allowed in discovery, disclosure of such documents, which are inherently private in nature, as recognized in case law and statute, should be permitted only where their disclosure truly bears upon a disputed issue of material fact in the lawsuit. Further, it also is necessary to consider the individual for whom such records are requested and whether that individual's job performance truly relates to a disputed issue of material fact in the lawsuit.

The courts have recognized the privacy interests inherent in such job appraisal information and documents. An employee's privacy interest in his personnel file and information has a statutory and common law basis. In Whalen v. Roe, 429 U.S. 589, 598-600 (1977), the Supreme Court recognized an individual's privacy interest in avoiding disclosure of personnel matters. See Tavoulareas v. Washington Post Co., 724 F.2d 1010, 1019-20 (D.C. Cir. 1984). A Government employee's interest in keeping his personnel file and information confidential also is recognized in the Privacy Act, 5 U.S.C. § 552a(b), which generally forbids Federal agencies to release information contained in an employee's personnel records without the prior written consent of the individual to whom the record pertains.

The Privacy Act lists eleven exceptions to this general prohibition, including the release of information required under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552a(b)(2). The FOIA, a disclosure statute, exempts from its provisions personnel files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). See generally Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487 (1994) (Privacy Act forbids disclosure of employees' home addresses to collective-bargaining representatives; such disclosure is a clearly unwarranted invasion of person privacy); Department of State v. Washington Post, 456 U.S. 595, 602 (1982) (Exemption 6 covers detailed Government records on an individual which can be identified as applying to that individual); Detroit Edison Co. v. National Labor Relations Board, 440 U.S. 301, 318 n.16 (1979) (recognizing a person's interest in preserving the confidentiality of his personnel file); see also Doe v. Chao, 540 U.S. 614 (2004) (employee suit for violation of Privacy Act); Wilburn v. Department of Health and Human Services, 49 F.3d 597 (9th Cir. 1995) (same); Oja v. United

States Army Corps of Engineers, 440 F.3d 1122 (9th Cir. 2006) (same). Exemption 11 of the Privacy Act provides, in relevant part:

> (b) Conditions of disclosure
>
> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be -
>
> (11) pursuant to the order of a court of competent jurisdiction ....

5 U.S.C. § 552a(b)(11). GSA Order HCO 9297.1, April 2, 2008, entitled "GSA Data Release Policy," also states that the performance ratings of its employees shall not be released. A23.

Courts also have recognized the private and confidential nature of personnel files and personal information in litigation. E.g. Stiward v. United States, 2007 WL 2417382 (E.D. La. 2007) ("Discovery of the personnel files of non-party individual employees presents special concerns about the privacy rights of the individuals involved. Balancing the interests of the parties in obtaining relevant discovery against the privacy interests of individual non-parties can best be accomplished by in camera review of the requested files"); Johnson v. Folino, 528 F. Supp.2d 548, 552 (E.D. Pa. 2007) ("Privacy Act's protection of certain information is still relevant to a court's exercise of discretion in resolving discovery disputes."); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (personnel files are confidential and discovery of them should be limited); Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994) (upholding district court decision that releasing personnel files of others would violate privacy interests), cert. denied, 515 U.S. 1159 (1995).

Accordingly, defendant respectfully requests that the Court conduct an in camera inspection and evaluate whether documents that evaluate the performance of each individual are

relevant to a disputed issue of material fact in this lawsuit. Defendant also respectfully requests that should the Court conclude that documents that evaluate the performance of a particular individual are relevant, that the Court specify the time period for which such records are actually relevant. Further, if the Court concludes that the documents that evaluate the performance of a particular individual for a particular time period are relevant, defendant respectfully requests that the Court issue a Protective Order directing their disclosure to plaintiff's counsel and further directing that plaintiff's counsel may disclose such documents only to members and employees of its law firm, and not to the plaintiff, and that such documents may be used only for purposes of the litigation and, if filed, must be filed under seal.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration
July 8, 2008

Table of Contents of Appendix

Page

1. September 28, 1995 award of the Phase II contract to MDI....................................................1

2. June 16, 1999 Termination for default of MDI...................................................................3

3. Excerpt from January 16, 2008 Plaintiff's Request For Production Of Documents To Defendant United States..........................................................................................................8

4. Excerpt from February 19, 2008 Defendant's Response To Plaintiff's Request For Production Of Documents..........................................................................................................13

5. June 16, 2008 Letter of Plaintiff's counsel to Defendant's counsel......................................17

6. July 7, 2008 Letter of Defendant's counsel to Plaintiff's counsel........................................20

7. GSA Order HCO 9297.1, April 2, 2008, Subject: Data Release Policy................................21

| SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NO. GS06P95GZC0501 | 2. TYPE OF SOLICITATION: [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP) | 3. DATE ISSUED 6/1/95 | PAGE OF PAGES 1 of 37 |
|---|---|---|---|---|

IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NO. GS06P95GZC0501 | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. NMO37113 |
|---|---|---|

**7. ISSUED BY** CODE

General Services Administration
PBS, Fee Developer Enterprise (6PCA)
Administrative/Procurement Services Branch
1500 E. Bannister Road, Rm. 2135
Kansas City, MO 64131-3088

Karen Poole (816) 926-5316 x298

**8. ADDRESS OFFER TO** 816-926-7203

General Services Administration
Enterprise Development Staff (6ADB)
1500 E. Bannister Road, Rm. 1160
Kansas City, MO 64131-3088

Transmit bid modifications via Western Union
1-800-248-5100 - DATAGRAM NO. N1028

| 9. FOR INFORMATION CALL: | A. NAME Linda M. Phillips - Project Manager | B. TELEPHONE NO. (Include area code) (NO COLLECT CALLS) (816) 926-7431 x274 |
|---|---|---|

## SOLICITATION

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder"

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date)*:

St. Louis, Missouri, Thomas F. Eagleton United States Courthouse, 111 South 10th Street
GS06P95GZC0501 - Bid Package No. 2 (NMO37113)

The following documents are hereby included by attachment and made a part of this solicitation and resulting contract:

- Volume I of VI - General Requirements
- Volume II of VI - Architectural & Structural
- Volume III of VI - Architectural
- Volume IV of VI - Mechanical
- Volume VI of VI - Electrical
- Volume VI of VI - Bid Forms
- Drawings: As listed in Volume I, Section 01010, Summary of the Work, Schedule of Drawings

This procurement is being made under the Small Business Competitiveness Demonstration Program.

NOTE: For bids exceeding $100,000: Failure to submit a signed Certification of Procurement Integrity, provided in the Representations and Certifications (GSA Form 3503), Paragraph 17, with the bid will render the bid non-responsive.

*820 c.d. after access to site and

11. The Contractor shall begin performance within 1 calendar days and complete it within * calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [X] mandatory [ ] negotiable. See Section 00800

12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES", indicate within how many calendar days after award in Item 12B.)*
[X] YES [ ] NO

12B. CALENDAR DAYS 15

13. ADDITIONAL SOLICITATION REQUIREMENTS

A. Sealed offers in original and 2 copies to perform the work required are due at the place specified in Item 8 by 3:00 p.m. *(hour)* local time August 17, 1995 (date). If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required. 20% of bid price if over $25,000 but shall not exceed $3,000,000

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

OFFER (Must be fully completed by offeror)

14. NAME AND ADDRESS OF OFFEROR (Include ZIP Code)
MORSE DIESEL INTERNATIONAL INC. IN ASSOCIATION WITH CMR CONSTRUCTION, INC.
S. WACKER DR., SUITE 200
CAGO, IL 60606 See attached letter

CODE FACILITY CODE

15. TELEPHONE NO. (Include area code)
312-541-1600

16. REMITTANCE ADDRESS (Include only if different than item 14)

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within 60 calendar days after the date offers are due. (Insert any number equal to or greater than the minimum requirement stated in item 13D. Failure to insert any number means the offeror accepts the minimum in item 13D.)

AMOUNTS ➤ LUMP SUM BID:
SEE SUPPLEMENT TO STANDARD FORM 1442 FOR BID FORM.
XXXXXXXXXXXXXX Dollars ($ XXXXXXXXXXXX )

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGEMENT OF AMENDMENTS
(The offeror acknowledges the receipt of amendments to the solicitation - give number and date of each)

| AMENDMENT NO. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 6-16-95 | 6-16-95 | 6-30-95 | 7-11-95 | 7-21-95 | 7-31-95 | 8-7-95 | 8-9-95 | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print)
DAVID L. HOFFMAN, EXEC. VICE-PRESIDENT

20B. SIGNATURE
[signature]

20C. OFFER DATE
AUG 17, 1995

AWARD (To be completed by Government)

21. ITEMS ACCEPTED:

| | |
|---|---|
| BASE BID: | $152,476,000.00 |
| UNIT PRICES: | 10,450,792.18 |
| OPTION NO. 8: | 1,900,000.00 |
| OPTION NO. 9: | 276,000.00 |
| TOTAL AWARD: | $165,102,792.18 |

The subcontracting Plan dated 9/22/95 is hereby incorporated by attachment and made a part of the contract.
Pending: Possible exercise of Options 1,( ), 4,5,6,7,10,11,12,13,14,15,16,17,18,19,20,21,22

22. AMOUNT
$165,102,792.18

23. ACCOUNTING AND APPROPRIATION DATA
192X.P0640001.80.25.RK1.516.A0310813.M00095ZZ($ 250,000.0
192X.P0610001.51.25.2K1.516.NM092001.M00095ZZ($164,576,792.1
192X.P0640001.80.25.RK1.516.A0310800.M00095ZZ($ 276,000.0

24. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 copies unless otherwise specified) ➤ ITEM 26

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO
☐ 10 U.S.C. 2304(c)( ) ☐ 41 U.S.C. 253(c)( )

26. ADMINISTERED BY CODE
A. General Services Administration, PBS
FDE Administrative/Procurement Services Branch (6PCA)
1500 E. Bannister Road, Rm. 2135
Kansas City, MO 64131-3088 (ORIGINAL INVOICE)
B. General Services Administration, PBS
Fee Developer Enterprise (6PC)
1500 E. Bannister Road, Rm. 2135
Kansas City, MO 64131-3088 (INVOICE COPY)

27. PAYMENT WILL BE MADE BY
General Services Administration
Finance Division (7BCP)
P.O. Box 17181
Ft. Worth, TX 76102-0181

CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

☐ 28. NEGOTIATED AGREEMENT: Contractor is required to sign this document and return ______ copies to the issuing office. Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference in or attached to this contract.

[XX] 29. AWARD (Contractor is not required to sign this document.) Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN (Type or print)
N/A

30B. SIGNATURE
N/A

30C. DATE

31A. NAME OF CONTRACTING OFFICER (Type or print)
ANNE B. ANDERSON
CONTRACTING OFFICER

31B. UNITED STATES OF AMERICA
Anne B. Anderson

31C. AWARD DATE
9/28/95

U.S. GENERAL SERVICES ADMINISTRATION
The Heartland Region

TRANSMITTED VIA FACSIMILE, HAND DELIVERED AND CERTIFIED MAIL-RETURN RECEIPT REQUESTED

JUN 16 1999

Mr. Graham Harwood
Morse Diesel International, Inc.
125 South Wacker
Suite 200
Chicago, IL 60606

St. Louis, MO. Thomas F. Eagleton United States Courthouse,
111 South 10th Street
GS06P95GZC0501 - Phase II (NMO37113)

NOTICE OF TERMINATION

You are hereby notified that your right to proceed further under Contract Number GS06P95GZC0501 is terminated completely for default pursuant to FAR 52.249-10 Default (Fixed-Price Construction) (APR 1984) of GSA Form 3506, Construction Contract Clause, Page 42, paragraph 99. The termination is effective immediately upon receipt of this notice.

Contract GS06P95GZC0501 (hereinafter "Phase II contract") was awarded to MDI on September 28, 1995 in the amount of $165,102,791.18 for construction of the courthouse's shell and finish. The Phase II contract stipulated the work was to be complete and ready for use no later than 820 calendar days from access to site. Due to performance delays and problems with Phase I construction (contract number GS06P94GYC0037), Phase II was Terminated for Convenience by the Government.

Pursuant to agreement between GSA and MDI reinstating the Phase II contract, MDI was granted access to the site for the Phase II contract beginning May 2, 1996. The reinstatement agreement also designated October 12, 1998, as the new substantial contract completion date for Phase II. Since the reinstatement, eight modifications have been issued extending Phase II's substantial completion date to January 11, 1999 (See attached "Graph of Contract Completion Dates").

In accordance with FAR 52.232-5-Payments Under Fixed Price Construction Contracts (APR 1989) GSA has, since February 14, 1997, retained as much as ten percent from each of MDI's monthly progress payments due to lack of satisfactory progress on Phase II. On December 8, 1998, GSA notified MDI of MDI's lack of satisfactory progress, of the contract's current completion date, and of GSA's intention to access $5000 per day liquidated damages per FAR Clause 52.212-5, Section 00800, page 21, lines 30-48, should MDI fail to meet the contract's completion date.

On January 12, 1999, the day after the contact completion date of January 11, 1999, had passed, GSA began accessing liquidated damages in the amount of $5000 per day. To date, liquidated damages totaling $700,000 have been assessed.

From June 1998 to the present, MDI has indicated in their Monthly Progress Updates that MDI is "investigating the cause of ...delay..." and are "currently developing an additional request for an extension incorporating all delays through the current completion date of the project." On March 3, 1999, the Contracting Officer wrote to MDI expressing GSA's concern regarding MDI's failure to provide timely submissions of requests for time adjustments as required in the contract. MDI's March 23, 1999 response did not offer any excuse for MDI's failure to meet the contract completion date. On May 7, 1999, the Contracting Officer again requested documentation that would substantiate any excusable delays. None was received. To date, GSA has reviewed all requests for time adjustments submitted by MDI.

In the Contracting Officer's May 18, 1999 letter, GSA expressed concerns regarding MDI's ability to complete the project, MDI's disregard of its own representations in regards to the construction schedule, MDI's lack of projected manpower in accordance with a Senior Management's meeting held on March 2, 1999, and GSA's inability to make building occupancy decisions due to MDI's unreliable schedule. GSA also advised MDI that GSA has reserved all rights available under the contract. On June 1, 1999, MDI responded by letter and stated their concerns were the same as the Government's.

Presently, all floors and parking levels are unfinished and unusable by GSA.

It is the Contracting Officers' decision that MDI has failed to the work within the time specified in this contract including any extensions. Therefore, your right to proceed under this contract is hereby terminated.

You are instructed to stop all work immediately and instruct all workers not to report to the site. You should notify your subcontractors of the termination. GSA will notify them as to the status of continuing work. GSA intends to inventory all construction records, drawings and materials stored on and off the site to

determine GSA ownership and the need for the completion of the work. Further access to the site will be limited to escorted trips for the removal of personal effects and property determined not to be government owned after the inventory.

The government may have the project completed by others and MDI and its sureties will be held liable for the excess costs as provided by the above referenced default clause. This notice constitutes a decision that MDI's failure to perform is not excusable, and you have the right to appeal, pursuant to FAR 52.233-1 Disputes – Alternate I (MAR 1994) of the Construction Contract Clauses (Fixed Price), GSA Form 3506.

The Government hereby reserves all rights and remedies provided by law under the contract, in addition to charging excess reprocurement costs.

This is the final decision of the Contracting Officers. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officers from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Karen A Poole

Karen A. Poole
Contracting Officer
Admin./Procurement Services Branch
Property Development Division
Public Buildings Service (6PCA)

Georgann Butler

Georgann Butler
Contracting Officer
Admin./Procurement Services Branch
Property Development Division
Public Buildings Service (6PCA)

Cc: Mr. A.S. McGaughan
Morse Diesel International, Inc.
8500 Eager Road
St. Louis, MO 63144

Mr. Paul Laswowske
Morse Diesel International, Inc.
8500 Eager Road
St. Louis, MO 63144

Seaboard Surety Company
and
St. Paul Fire and Marine Insurance Comapny
Burnt Mills Road & Route 206
Bedminster, NJ 07921

American Home Assurance Company
70 Pine Street
New York, NY 10270

Attachment

ACKNOWLEDGEMENT OF NOTICE

The undersigned acknowledges receipt of a signed copy of this Notice of Termination on June 16, 1999

Received by: Lobell Humphrey
(Name)
Morse Diesel Internatl
rec'd 2:00 p.m.

Thomas F. Eagleton
U.S. Courthouse
St. Louis, Missouri

# Graph of Contract Completion Dates




The red line is generated using MDI's projections given to GSA each month. The green line is the required contract completion date. MDI has issued over 17 revisions to their schedule. Each revision has improved the project completion date for that month only.

The schedule just submitted to GSA last week (Revision 17b) shows a completion date of February 26, 2000.

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 06-867<br>(Judge Braden) |

**REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UNITED STATES**

Pursuant to the provisions of Rules 26 and 34 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff, AMEC Construction Management, Inc. ("ACMI"), hereby requests that Defendant United States (the "Government") produce copies of the following documents within thirty (30) days of the date of service herewith at the offices of Paul, Hastings, Janofsky & Walker LLP, 875 15th Street, N.W., Washington, DC 20005.

## I. DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to these requests:

1. In answering these requests for production, please furnish all documents available to you, including documents in your own possession, custody or control as well as documents in the possession, custody or control of any person acting on your behalf, and not merely such documents as are known of your own personal knowledge. DO NOT DESTROY OR DISCARD ANY DOCUMENT CALLED FOR IN DISCOVERY OR RELATED TO THIS LITIGATION. If you cannot produce any of the documents requested, so state and produce the documents as fully as possible, stating whatever information or knowledge you have concerning the documents not produced.

2. To the extent you have produced documents responsive to any of these requests in your initial production of approximately 70 boxes containing the GSA contract file, indicate in your response to such requests that responsive documents were produced in that initial

1/16/2008

production and produce any other responsive documents that are not located in that GSA contract file.

3. These requests for production of documents require production of all responsive documents created, drafted, exchanged, sent, or received from the beginning of the St. Louis Phase II Contract in September 1995 to date.

4. Pursuant to these requests for production of documents, the Government has a continuing obligation to update his responses with any information and documents discovered after the original date set for responses, and to correct any response as required. Such supplementary responses are to be served upon Defendants within ten (10) days after receipt of such additional documents.

5. As used herein, the term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and a document request for "communications" includes correspondence, telexes, facsimile transmissions, telecopies, electronic mail, all attachments and enclosures thereto, recordings in any medium of oral communications, telephone logs, message logs, and notes and memoranda concerning written or oral communications, and any translations thereof.

6. As used herein, "Defendant" or the "Government" shall mean the United States Government, and its employees and agents.

7. As used herein, "ACMI" shall mean AMEC Construction Management, Inc., formerly known as Morse Diesel International, Inc.

8. As used herein, "MDI" shall mean Morse Diesel International, Inc.

9. As used herein, "CRSS" shall mean CRSS Constructors, Inc.

10. As used herein, "Amended Complaint" shall mean any and all complaints and amended complaints filed in Case No. 06-867 by plaintiff ACMI in the United States Court of Federal Claims.

11. As used herein, "Amended Answer" shall mean any and all answers and amended answers filed in Case No. 06-867 by Defendant United States in the United States Court of Federal Claims.

12. As used herein, "St. Louis Phase I Contract" shall mean Contract No. GS06P94GYC0037 to MDI for $20,343,186 for the construction of Phase I of the Thomas F. Eagleton U.S. Courthouse in St. Louis, Missouri.

13. As used herein, "St. Louis Phase II Contract" shall mean Contract No. GS06P95GZC0501 to MDI for $165,102,792 for the construction of Phase II of the Thomas F. Eagleton U.S. Courthouse in St. Louis, Missouri.

14. As used herein, "St. Louis Phase III Contract" shall mean the contracts awarded by GSA to various entities subsequent to ACMI's termination in June 1999, and any change

seek in this Litigation or elsewhere with respect to the Government's claims for reprocurement costs.

40. All complaints, answers, counterclaims, motions to dismiss, motions for summary judgment, judgments, stipulations, plea agreements, and settlement agreements by any party in a civil action that relate to the St. Louis Courthouse Contracts.

41. All documents relating to notification and instructions to preserve, retain, or cease destruction of documents relating to the St. Louis Courthouse Contracts, this Litigation, or earlier cases brought by the GSA or by MDI or ACMI related to the St. Louis Courthouse Contracts, including but not limited to document retention notices, freeze notices and hold orders.

42. All documents relating to electronic data retention policies for desktop and laptop computers, including but not limited to guidelines, protocols, manuals, memos, training material, or other communications.

43. All documents relating to your document management and document retention policies, including but not limited to policies, forms, checklists or other documents involved in document management and document retention.

44. All documents relating to your backup procedures, including but not limited to policies, forms, checklists or other documents involved in the backup or archiving of documents.

45. All documents that evaluate the performance of the following individuals: John Walsh, Steven Anderson, Georgann Butler, Anne Anderson, Linda Derby, Karen Poole,

and Myron Goldstein, without regard for whether the evaluation is considered final, including "personnel files" and any documents of any nature whatsoever discussing the job performance of these individuals regardless of whether the documents are kept or maintained in a "personnel file" for the individual. This request includes, but is not limited to, positive evaluations of the performance of any of these individuals and negative evaluations of the performance of any of these individuals regardless of whether the evaluations occurred as part of an annual evaluation process. This request also includes, but is not limited to, any discussion of whether any of these individuals should be considered for promotion, considered for demotion, or should receive any type of disciplinary sanction or action.

James D. Wareham by [signature]
JAMES D. WAREHAM
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128
Attorney of Record for Plaintiff

Of Counsel:
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005

January 16, 2008

LEGAL USE 75577865.4

## CERTIFICATE OF SERVICE

I hereby certify that this 16th day of January 2008 I caused a copy of the foregoing Requests for Production of Documents to Defendant United States to be served by regular and electronic mail upon counsel for the Defendant as follows:

Dominique Kirchner
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530

Tracy L. Hilmer
Civil Division
U.S. Department of Justice
601 D Street, N.W.
P.O. Box 261 Ben Franklin Station
Washington, DC 20044

Kirby Behre

LEGAL_US_E # 75577865.4

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc., | ) | |
| Plaintiff, | ) | Case No. 06-867 (Judge Braden) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS

In accordance with Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant provides the following responses to plaintiff's request for production of documents dated January 16, 2008. "ACMI" and "MDI" refer to AMEC Construction Management, Inc., f/k/a Morse Diesel International, Inc.

General Objections

1. We object to plaintiff's request for production of documents to the extent that it seeks to impose upon defendant any requirements beyond those established by the Rules of this Court.

2. We object to plaintiff's request for production to the extent it seeks information or documents protected from discovery by the Privacy Act, the attorney-client privilege, the deliberative process or executive privilege, the work product doctrine, or any other applicable privileges, and RCFC 26(b)(2).

3. We object to plaintiff's request for production of documents to the extent that it extends to documents that have previously been produced by defendant in this case or in related cases (Fed. Cl. No. 99-279 and consolidated cases), or that have been previously produced by plaintiff because such production is an undue burden and expense. For example, defendant's

RESPONSE: Defendant incorporates its general objections stated above. We also object because the request is duplicative of prior discovery in related cases (Fed. Cl. No. 99-279 and consolidated cases), overly broad and ambiguous in referring to "all documents relating to your backup procedures" and in its definition of "documents." We also object because the request is not reasonably calculated to lead to the discovery of relevant evidence. Without waiving our objections and assuming that the document request is limited to only those documents that are themselves backup procedures for computers, defendant previously produced such documents in response to plaintiff's request for production of documents dated June 21, 2007. See our July 24, 2007 response and supplemental responses. The Government's production of documents does not waive any privileges for material pertaining to documents not produced or redacted material.

45. All documents that evaluate the performance of the following individuals: John Walsh, Steven Anderson, Georgann Butler, Anne Anderson, Linda Derby, Karen Poole, and Myron Goldstein, without regard for whether the evaluation is considered final, including "personnel files" and any documents of any nature whatsoever discussing the job performance of these individuals regardless of whether the documents are kept or maintained in a "personnel file" for the individual. This request includes, but is not limited to, positive evaluations of the performance of any of these individuals and negative evaluations of the performance of any of these individuals regardless of whether the evaluations occurred as part of an annual evaluation process. This request also includes, but is not limited to, any discussion of whether any of these individuals should be considered for promotion, considered for demotion, or should receive any type of disciplinary sanction or action.

RESPONSE: Defendant incorporates its general objections stated above. We also object

because such performance evaluation documents are irrelevant and discovery of such privileged documents is not reasonably calculated to lead to the discovery of relevant evidence. See, e.g., Federal Data Corp., DOTCAB No. 2389, 91-3 BCA ¶ 24063 at n.7 (1991) (denying discovery of performance ratings); Essex Electro Engineers, Inc., DOTCAB No. 1025, 79-2 BCA ¶ 14158, (1979) (denying discovery of performance ratings). The following individuals retired from GSA and, upon their retirement, their personnel records were sent to the Federal Records Center in St. Louis, MO: Anne Anderson (retired February 1999, deceased), Linda Derby Smith (retired 1998 (11/29/2001 Dep. 6)), and Myron Goldstein (retired 2/23/2007). Steven Anderson was hired by the Department of Education, and began work there on September 10, 2001 (9/28/2001 Dep. 6). His personnel file is with that agency. GSA has personnel records for its employees John Walsh, Georgann Butler, and Karen Poole.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

Jeanne E. Davidson by Dominique Kirchner

JEANNE E. DAVIDSON
Director

Domenique Kirchner

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration
February 19, 2008

Paul Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(202) 551-1719
kirbybehre@paulhastings.com

June 16, 2008 37903.00006

**VIA E-MAIL AND U.S. MAIL**

Domenique Kirchner, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L St., N.W.; 8th Floor
Washington, D.C. 20530

Re: AMEC Construction Management, Inc., f/k/a *Morse Diesel International, Inc. v. United States*, Case No. 06-867

Dear Domenique:

I am writing to ask that you produce all documents requested in ACMI's January 16, 2008 Requests for Production of Documents, Request No. 45, requesting:

> All documents that evaluate the performance of the following individuals: John Walsh, Steven Anderson, Georgann Butler, Anne Anderson, Linda Derby, Karen Poole, and Myron Goldstein, without regard for whether the evaluation is considered final, including "personnel files" and any documents of any nature whatsoever discussing the job performance of these individuals regardless of whether the documents are kept or maintained in a "personnel file" for the individual. This request includes, but is not limited to, positive evaluations of the performance of any of these individuals and negative evaluations of the performance of any of these individuals regardless of whether the evaluations occurred as part of an annual evaluation process. This request also includes, but is not limited to, any discussion of whether any of these individuals should be considered for promotion, considered for demotion, or should receive any type of disciplinary sanction or action.

Your response to Request No. 45 was ambiguous, as you state that you object based on your general objections and "because such performance evaluation documents are irrelevant and discovery of such privileged documents is not reasonably calculated to lead to the discovery of relevant evidence. See, e.g., Federal Data Corp., DOTCAB No. 2389, 91-3 BCA ¶ 24063 at n. 7 (denying discovery of performance ratings); Essex Electro

Paul*Hastings*
ATTORNEYS



Engineers, Inc., DOTCAB No. 1025, 79-2 BCA ¶ 14158, (1979) (denying discovery of performance ratings)." (Emphasis in original). Yet, you also state that GSA, the Federal Records Center, and the Department of Education have personnel records. We have searched the documents you produced and cannot find any personnel records that you produced. Please confirm that you have produced no documents in response to Request No. 45.

Additionally, you objected during Karen Poole's deposition on June 12, 2008 to questions concerning Ms. Poole's performance evaluations during the time she worked on the Courthouse project. The basis for this instruction was a claim of a so-called "privacy privilege." You said that the two cases you cited in your response to plaintiff's Request for Production support such a privilege.

We have reviewed those cases and they support no such privilege. Rather, the cases concern the relevancy of the performance review information in those particular cases. Here, the relevancy of the requested information is clear: whether Ms. Poole, as contracting officer, or any of the other individuals identified in Request No. 45, was criticized by government officials for her handling of this contract goes directly to the question of whether the government's conduct in terminating and reprocuring was reasonable.

Moreover, the Privacy Act in general does not create a new discovery privilege and there is no special standard of "need" a party is required to show to obtain information beyond that required under the general relevance standards for discovery. *See, e.g., Laxalt v. McClatchey*, 805 F.2d 885, 889 (D.C. Cir. 1987). Indeed, in some cases, disclosure in civil discovery can be "routine use" allowed under the Act. *See, e.g., Pippinger v. Rubin*, 129 F.3d 519, 531-33 (10th Cir. 1997).

The circumstances of this case particularly merit disclosure of the performance evaluations and personnel records ACMI requests. First, the government did not object or instruct John Walsh not to answer questions regarding his performance and Mr. Walsh even testified that he had received an award for his work on the Courthouse project audit. *See* May 4, 2007 Deposition of John Walsh, at 138-142. Not only has the government waived any so-called privacy privilege by permitting Mr. Walsh to testify about his job performance, the government also is not permitted by the rules to introduce positive performance information and at the same time preclude ACMI from discovering any negative performance information. Second, the Protective Order in this case explicitly contemplates disclosure of information that may be covered by the Privacy Act and merely requires parties to designate such information or documents as confidential. *See* July 3, 2007 Protective Order, § 1(A) ("The United States may produce such documents unredacted to the Plaintiff. Upon producing these documents to the Plaintiff, the United States shall designate them as "confidential" in the manner set forth in paragraph 2,

PaulHastings
ATTORNEYS



below."). The Protective Order was entered for just this circumstance and is more than adequate to protect personnel records.

Please confirm whether the government intends to produce the documents requested in Request No. 45. Additionally, please advise immediately whether you will produce Martin Hom's personnel file by June 20, 2008 in advance of his deposition. If the government refuses to produce these documents, you are hereby on notice that ACMI intends to seek a motion to compel production.

Sincerely,

Kirby D. Behre
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

Attachments
LEGAL_US_E # 79765416.2

U. S. Department of Justice

JED:DKirchner
154-06-867

Tele: (202) 307-1111
Fax: (202) 514-8624

*Washington, D.C. 20530*

July 7, 2008

Kirby Behre
Paul, Hastings, Janofsky & Walker LLP
875 15th Street N.W.
Washington, D.C. 20005
Tele: (202) 551-1779
Fax: (202) 551-0119
By hand

Re: AMEC Construction Management, Inc. v. United States, Fed. Cl. No. 06-867C

Dear Mr. Behre:

With regard to plaintiff's request for production of documents number 45, we are producing the enclosed documents indicating award amounts and promotion dates for Karen Poole, Georgann Butler, and John Walsh. We continue to contend that all of the documents requested in plaintiff's document request number 45, including the enclosed documents, are not relevant and are not reasonably calculated to lead to the discovery of relevant evidence.

I am informed that the performance appraisals for Steven Anderson for the period when his work involved the GSA Phase II contract no longer exist. With regard to Anne Anderson, Linda Derby Smith, and Myron Goldstein, I have requested such records, but have not yet been able to determine whether such documents exist.

Very truly yours,

Domenique Kirchner

Domenique Kirchner
Senior Trial Counsel
Commercial Litigation Branch

**Kirchner, Domenique (CIV)**

**From:** catherine.crow@gsa.gov
**Sent:** Wednesday, July 02, 2008 3:22 PM
**To:** Kirchner, Domenique (CIV)
**Subject:** GSA Order

GSA's data release policy:

GENERAL SERVICES ADMINISTRATION
Washington, DC 20405

HCO 9297.1
April 2, 2008

GSA ORDER

SUBJECT: GSA Data Release Policy

1. Purpose. This order provides GSA's policy on releasing information relating to GSA employees, contractors, and others on whom GSA maintains information described in this document.

2. Cancellation. HCO-IL-07-1 is canceled.

3. Background. This policy includes modifications established by the Office of Personnel Management (OPM) on November 14, 2004, as a result of security concerns documented in the President's Declaration of National Emergency by Reason of Certain Terrorist Attacks. This modified policy is consistent with OPM regulations on personnel records.

Under the modified policy, GSA continues to comply with the Freedom of Information Act (FOIA) and the Privacy Act, which require a balance between the public's right of access to Federal government documents and the privacy rights of Federal employees, contractors, and others associated with the Federal government, whose records are maintained by Federal agencies.

4. Applicability. This order applies to all GSA officials, employees, contractors, and others, whose official duties include releasing information to the public such as through FOIA or other official requests and who collect, maintain, use, manage, or come in contact with personally identifiable or sensitive information.

5. References. The following informational material is relevant to this topic.

a. Privacy Act of 1974, as amended.(http://www.usdoj.gov/oip/privstat.htm)

b. Freedom of Information Act (FOIA) (http://www.usdoj.gov/oip/amended–foia-redlined.pdf )

c. OPM Regulations on Personnel Records, 5. C.F.R. Part 293, generally; and Sec. 293.311, specifically (http://www.access.gpo.gov/nara/cfr/waisidx_02/5cfr293_02.html)

6. Data associated with the name of an individual.

a. Releasable information. The following information **may be** released to the public at the individual record level for most individuals. GSA's data release policy is applied when responding to FOIA and other requests for individual level data en masse.

- Name
- Job title
- Grade level
- Position description
- Duty station
- Salary
- Award amounts (present and past annual salary rates including performance awards or bonuses unless the amount will convey the performance rating level, incentive awards, merit pay amount, Meritorious or Distinguished Executive Ranks, allowances, and differentials)

b. Non-releasable information. The following information **may not** be released to the public or persons other than the employee. This does not include employees of the agency who have a need for this information in the performance of their duties.

- Social Security Number (SSN)
- Date of birth
- Disability status
- Race
- National origin
- Sex
- United States citizenship status

- Annuitant status
- Federal Employees Health Benefits Program data
- Federal Employees Life Insurance data
- Federal Employees Retirement System coverage
- Frozen Civil Service Retirement System service
- Retirement plan
- Veterans' preference
- Educational level
- Instructional program
- Year degree attained
- Performance rating level
- Creditable military service
- Organizational component (lowest administrative subdivision of an agency to which an employee is assigned. The translation for this data element has the potential to allow an individual to locate an employee regardless of not having duty station)
- Current appointment authority (law, executive order, rule, regulation, or other basis that authorizes the employee's most recent conversion or accession action)
- Legal authority (the law, executive order, rule, regulation, or other basis that authorizes the appointing officer to effect a personnel action on an employee)
- Previous retirement coverage
- Dynamics category (accessions, separations, and terminations. This is a data element generated by analysts for internal OPM use to more succinctly categorize accessions and separations)
- Award Justification

7. Occupation based information. OPM has designated certain occupations as sensitive in nature. **Names** and **duty stations** of individuals in those job series/occupations are **not releasable** to the public.

a. Sensitive GSA occupations. The names and duty stations of individuals in the following sensitive occupations **may not** be released.

- 1802, Compliance inspection and support
- 1801, General inspection, investigation, and compliance
- 1810, General investigating
- 0930, Hearings and appeals Officer
- 1811, Criminal Investigating
- 1899, Investigating Student Trainee

b. Additional sensitive occupations. While the following job series/occupations may not apply to GSA, names and duty stations of individuals in these occupations are not releasable.

- 1854, Alcohol, Tobacco, and Firearms Inspection
- 1896, Border Patrol Agent
- 0007, Correctional Officer
- 1895, Customs and Border Protection
- 1881, Customs and Border Protection Interdiction
- 1890, Customs Inspection
- 1884, Customs Patrol Officer
- 1812, Game Law Enforcement
- 0401, General National Resources and Biological Science (U.S. Department of Homeland Security only)
- 1816, Immigration Inspection
- 0132, Intelligence
- 0134, Intelligence Clerk/Aide
- 0512, Internal Revenue Agent
- 1169, Internal Revenue Officer
- 0840, Nuclear Engineering
- 0084, Nuclear Materials Courier
- 0436, Plant Protection and Quarantine
- 0083, Police
- 0082, United States Marshall

8. Summary level data. GSA periodically issues summary level reports and statistics relating to agency programs and activities. Information in summary or aggregated form may not be released when an individual's identity could be discerned from the information contained in the summaries/reports.

GAIL T. LOVELACE
Chief Human Capital Officer/
Chief Privacy Officer