**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **AMEC CONSTRUCTION MANAGEMENT, INC. (f/k/a/ Morse Diesel International, Inc.)**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **No.: 06-867**<br>**(Judge Braden)** |

**PLAINTIFF'S RESPONSE TO MOTION TO COMPEL**
**AND PLAINTIFF'S CROSS-MOTION FOR PROTECTIVE ORDER**

AMEC Construction Management, Inc. ("ACMI") submits this motion in response to Defendant's July 18, 2008 Motion to Compel and Request for the Court's Expedited Consideration. The Government has no basis to compel production of documents relating to Mr. Laskowske or an index to the nearly 1,000 boxes of documents in ACMI's possession relating to the St. Louis Courthouse. Production of documents relating to Mr. Laskowske's subpoena is proceeding per the agreement of the parties. The documents in question were requested less than one month ago in the subpoena and were received by ACMI only 11 days ago. In addition, Mr. Laskowske is, at best, a tangential witness under the Government's own theory of the case. ACMI cross-moves for a protective order to limit the Government's second request for production of documents.

## I. INTRODUCTION

The Government moves to compel the production of documents relating to a tangential witness, former MDI employee Paul Laskowske, despite the fact that the Government failed to request some of those documents until less than a month ago. Having prematurely scheduled

that witness' deposition for July 31st, the Government is now panicked as a result of its own failure to request documents in a timely fashion. During a telephone conference on July 17, 2008, the parties agreed to a discovery timetable, and on July 21st Plaintiff attempted to produce the majority of responsive documents per that agreement, but the Government's mailroom was closed; the documents were re-delivered at 9 a.m. on July 22nd. The Government fails to mention that July 17 agreement in its motion.

The Government's Motion to Compel is a feeble attempt to create an issue where there is none and to distract Plaintiff. This case concerns the Government's claim for excess reprocurement costs incurred after MDI was terminated from the St. Louis Courthouse project. As a result, the vast majority of documents relating to the Government's claim are in the Government's own documents. Nevertheless, ACMI has already produced more than 415,000 pages of documents and 26 DVDs of site visits to the Government in this case. Indeed, ACMI's production to date will actually *exceed* the total production of documents ACMI obtained from the Government in a case in which (1) the Government must carry the heavy burden of proof, (2) the Government contends that only events occurring after the termination for default when ACMI was not on site and not generating documents are relevant, and (3) ACMI, by default, was not generating any documents relevant to the Government's many ever-changing excess reprocurement costs calculations.

When ACMI received the Government's May 1, 2008 Second Request for Production of Documents, it diligently located the approximately 1,000 boxes of documents that had been stored in storage facilities since late 1999. At various times since 1999, the boxes were moved from one storage facility to another. Not surprisingly, the boxes are dust laden and many of the boxes have collapsed due to age and weight and having been stacked. Due to the passage of time

caused by the Government's nine-year delay in seeking this discovery, counsel for ACMI does not have the benefit of any ACMI employees' knowledge of the contents of the boxes. Counsel for ACMI has therefore been forced to spend considerable time assessing the contents of the boxes and organizing the materials for adequate review.

As discussed below, the Government's Motion should be denied in its entirety. First, the Government's motion to compel production of documents relating to Paul Laskowske, former employee of MDI, is unwarranted and premature. On July 21, 2008 ACMI produced over 11,000 pages of documents from Mr. Laskowske's files and is making an additional 46 boxes of Mr. Laskowske's files available on the Government's previously requested date of July 25, 2008. ACMI will continue to produce documents relating to Mr. Laskowske on a rolling basis subject to ACMI's objections and any protective order the Court enters pursuant to ACMI's cross-motion herein. The Government's requests are extremely overbroad and should be limited by protective order relating to the Government's Second Request for Production discussed below.

Second, the Court should not compel the production of ACMI's work product indices for the nearly 1,000 boxes of documents relating to the St. Louis Courthouse because they constitute work product, are not fully reliable because they are drafts, and the Government will be provided with adequate access to responsive non-privileged documents subject to ACMI's objections to the Second Request for Production of Documents and any protective order the Court enters pursuant to ACMI's cross-motion requested herein.

Third, the Court should enter a protective order limiting the scope of the Government's Second Request for Production of Documents, which is excessively overbroad and unduly burdensome. In short, the Government's inordinate delay in initially asserting the overstated claim, its lengthy delay in revising the claim five times, and its delay in prosecuting the claim in

this action demonstrates that laches and estoppel should preclude the Government's efforts to compel production or to recover on its purported claim.

## II. THE GOVERNMENT'S MOTION TO COMPEL PRODUCTION OF LASKOWSKE DOCUMENTS IS UNWARRANTED.

The Government's motion to compel production of documents from Paul Laskowske is wholly unwarranted because ACMI is in the process of producing documents from Mr. Laskowske in advance of the currently-scheduled deposition date on July 31, 2008. As Mr. Laskowske's Response to the Subpoena stated, Mr. Laskowske does not have any personal documents responsive to the subpoaena. All documents in his possession are the property of ACMI and have been returned to counsel for ACMI for production in response to the Government's Second Request for Production of Documents. Accordingly, those documents would be covered by ACMI's cross-motion for protective order on the Second Request for Production of Documents.

Although the Government apparently served Mr. Laskowske with a subpoena less than one month ago on June 23, 2008, ACMI did not receive a copy of the subpoena until June 27, 2007. In the meantime, Government counsel was busy talking directly to Mr. Laskowske even though Government counsel was well aware that Mr. Laskowske was represented at his prior depositions in these consolidated cases by counsel for ACMI. ACMI's counsel had to advise Government counsel not to speak directly to MDI former employees before consulting ACMI's counsel. *See, e.g.*, 07/09/08 Letter from K. Behre to D. Kirchner, attached as Exhibit ("Exh.") 1; 07/11/08 Letter from D. Pierce to D. Kirchner, attached as Exh. 2.

Indeed, as asserted in Non-Party Paul Laskowske's Response to Defendant's Subpoena, Mr. Laskowske is not even a relevant witness in this case. 07/17/08 Non-Party Paul Laskowske's Response to Defendant's Subpoena, general objections at ¶¶ 1, 2, and 6, attached as

Exh. 3. First, Mr. Laskowske was not present on site on the St. Louis Courthouse project after Phase II of the project when the Government terminated MDI for default. Accordingly, Mr. Laskowske has absolutely no information related to work performed by the Government in Phase III of the project after MDI's termination and the Government's calculation of excess reprocurement costs.

Second, the Government's subpoena to Mr. Laskowske seeks primarily documents relating to Phase II of the project. Yet the Government has consistently maintained that its case is solely about the calculation of excess reprocurement costs and that Phase II of the project is completely irrelevant to this case because "such requests are not reasonably calculated to lead to the discovery of relevant evidence and production of such documents is also unduly burdensome. Further, in its January 26, 2007 decision, the Court declared such claims to be forfeited." *See, e.g.*, 02/19/08 Defendant's Responses to Plaintiff's Requests for Production of Documents, at 3-4, attached as Exh. 4. For example, the Government's extremely overbroad requests seek, among other overbroad requests:

- "All documents relating or referring to the Phase II contract" (Request 1);
- "All documents provided to any employee or official of ACMI relating or referring to the Phase II contract. . ." (Request 2);
- "All documents relating or referring to ACMI's bid for the Phase II contract. . ." (Request 3);
- "All documents relating or referring to ACMI's bid for Option 8 of the Phase II contract. . ." (Request 4);
- "All documents relating to correspondence or communications within ACMI relating to the Phase II contract." (Request 5);
- "All documents relating to correspondence or communications between ACMI and the Government. . ." (Request 6);
- "All document[s] relating or referring to ACMI's payments to its subcontractors and suppliers on the Phase II contract. . ." (Request 13);
- "All correspondence or communications between ACMI and its subcontractors and suppliers on the Phase II contract. . ." (Requests 14, 24);

- “All documents relating or referring to meetings between and among ACMI and its subcontractors.” (Request 16);
- “All contracts, change orders, and modifications issued by ACMI to its subcontractors and suppliers on the Phase II contract. . .” (Request 25);
- “All daily or other periodic construction reports of ACMI and its subcontractors and suppliers on the Phase II contract.” (Request 34);
- “All documents relating or referring to work performed or proposed or represented to be performed on the Phase II contract by ACMI or its subcontractors and suppliers.” (Request 35);
- “All schedules for Phase II contract work, irrespective of whether ACMI conveyed such documents to GSA, and all documents relating or referring to such schedules.” (Request 46);
- “All manpower reports, analyses or records relating to ACMI and its subcontractors on the Phase II contract.” (Request 56);
- “All photographs relating or referring to the Phase II contract work, and any documents relating or referring to such photographs.” (Request 67).

07/17/08 Non-Party Paul Laskowske’s Response to Defendant’s Subpoena, attached as Exh. 3. Moreover the subpoena is unduly burdensome as it includes 67 requests for production of documents. 07/17/08 Non-Party Paul Laskowske’s Response to Defendant’s Subpoena, general objections at ¶¶ 4, 7, 8, 9, 10, and 12 attached as Exh. 3. Of those requests, approximately 51 of the requests relate solely to documents related to Phase II of the project, which the Government has always maintained are irrelevant to this case. Additionally, the Government has produced numerous documents relating to Phase II of the project in response to ACMI’s requests for production and to that extent the subpoena is entirely duplicative.

ACMI was unaware that Mr. Laskowske had any company documents in his possession. When ACMI contacted Mr. Laskowske, ACMI counsel was surprised to learn the magnitude of documents Mr. Laskowske had kept at his house. Only 11 days ago, on July 11, 2008, ACMI received from Mr. Laskowske the following quantities of documents: (1) over 21,000 pages of documents contained in eight (8) boxes of hard copy documents on July 11; (2) over 40,000 pages of documents contained on six (6) CDs and 26 floppy disks containing on July 11; (3) over

14,000 pages of documents and e-mails from Mr. Laskowske's home computer on July 11; and (4) over 81,000 pages of documents and e-mails from Mr. Laskowske's work computer on July 11. Notably, the majority of the total of over 158,000 pages of documents are not responsive to the Government's subpoena, but are organized in such a way that the responsive documents cannot be easily segregated for review. ACMI has already spent in excess of approximately $15,000 processing Mr. Laskowske's data for review and expects to be forced to spend much more before production of Mr. Laskowske's documents is complete subject to the protective order ACMI seeks by cross-motion.

Due to the volume of documents and despite ACMI counsel's diligent efforts to review Mr. Laskowske's documents for responsiveness and privilege, it was simply impossible for ACMI's counsel to produce all responsive documents by July 18, 2008, two weeks prior to Mr. Laskowske's deposition and less than one month after service of the subpoena, as the Government requested. Moreover, the Government for all four depositions taken by ACMI failed to produce all relevant documents for each deponent until the eve of each witness's deposition. The Government produced approximately 12,000 pages of Terry Page's documents and e-mails on June 3, 2008, three days before Mr. Page's deposition on June 6, 2008; over 3,000 pages of Karen Poole's documents and e-mails on June 10, 2008, two days before Ms. Poole's deposition on June 12, 2008; and approximately 8,899 pages of Martin Hom's documents and e-mails on June 23, 2008, two days before Mr. Hom's deposition on June 25, 2008. The Government's demand for Mr. Laskowske's documents two weeks prior to his deposition demonstrates that the Government wants two sets of rules – one set with which the Government will comply and a different set by which ACMI is bound.

Moreover, on July 25, 2008 – a date the Government requested during in the week of July

14 – ACMI is making available for inspection 46 boxes of documents from Mr. Laskowske's files that are among the nearly 1,000 boxes of St. Louis Couthouse documents that had been stored in a storage facility. On July 18, 2008 ACMI sent an index of those boxes (as well as boxes from Mr. Harwood's files) to Government counsel. Notably, the Government does not need an index for all 1,000 boxes prior to July 25, 2008 in order to "be adequately prepared for Mr. Laskowske's deposition," (Government's Motion to Compel, at 3), as ACMI only has 46 boxes of documents that contain Mr. Laskowske's files, ACMI previously provided that index to the Government on July 18, and ACMI is making those boxes available to the Government on its requested date of July 25. Additionally, the Government has access to the approximately 119,600 documents (approximately 590,000 pages) it has produced to ACMI in this case, the 133 boxes of documents (approximately 399,000 pages) that the Government obtained from ACMI for copying on July 2, 2008, over 5,000 pages of documents that ACMI produced on June 20, 2008, and 26 DVDs of site visits that ACMI produced on May 22, 2008. The Government also can search those databases for documents that may be relevant to Mr. Laskowske's deposition.

On Monday, July 21, 2008, ACMI attempted to deliver over 11,000 pages of responsive non-privileged documents from Mr. Laskowske's documents, which included documents sourced from the 8 boxes of hard copy documents as well as some documents from Mr. Laskowske's home computer. However, the Government office was closed, and delivery was made at 9 a.m. on Tuesday, July 22. Moreover, ACMI is making available 46 boxes from storage on the Government's requested date of Friday, July 25, 2008. Thus the Government will have documents responsive to Mr. Laskowske' subpoena (subject to ACMI's general objections and the entry of an appropriate protective order ACMI seeks) in advance of Mr. Laskowske's deposition. On July 25, ACMI is also making available for inspection 28 boxes of documents

from Graham Harwood's files; ACMI understands from Mr. Harwood's counsel that Mr. Harwood's deposition is not yet scheduled.

Accordingly, the Government's motion to compel production of documents from Mr. Laskowske is entirely without merit, premature and should be denied.

## III. PRODUCTION OF WORK PRODUCT INDICES FOR 1,000 BOXES OF DOCUMENTS IS IMPROPER AND SHOULD NOT BE COMPELLED.

The Government's Motion demands that ACMI produce an index to the approximately 1,000 boxes of documents related to the St. Louis Courthouse project that have been in storage in various storage locations since late 1999. As discussed above, the Government's request should be denied for three reasons: (1) the index is work product, and even if produced is not fully reliable because it is a draft for which accuracy is not verified; (2) the 1,000 boxes of documents are disorganized and in bad condition due to the over nine-year passage of time the Government delayed in demanding excess reprocurement costs and requesting production of documents from ACMI; and (3) counsel is currently in the process of reviewing the 1,000 boxes for privilege and responsiveness, and the Government is not entitled to an index containing non-responsive or privileged files. Further, by this Motion, ACMI cross-moves for a motion for protective order limiting the scope of the Government's Second Request for Production of Documents, including company documents that ACMI recently received from Mr. Laskowske.

### A. The Index is Work Product and in Draft Form.

The Government seeks the production of indices prepared under the direction of ACMI's former counsel. The indices constitute work product, and the Government is not entitled to such work product. Furthermore, the indices are in draft form and the accuracy of the drafts is not verified.

In an effort to be cooperative, counsel for ACMI created an index of the boxes of

documents relating to Mr. Laskowske and Mr. Harwood, as the parties agreed on July 17. That index is the only non-privileged index ACMI has for those particular boxes. Therefore, to the extent the Government now asserts that the index is inadequate, the Government will have to rely on the only index in existence for those boxes.

**B. The Government's Nine-Year Long Delay in Seeking Discovery on its Ever-Changing Excess Reprocurement Costs Demands Resulted in Dilapidated and Disorganized Documents.**

The documents contained in the nearly 1,000 boxes of documents relating to the St. Louis Courthouse project that counsel for ACMI retrieved from the storage facility are both dilapidated and disorganized due to the Government's nine-year delay in seeking discovery on its claims for excess reprocurement costs. When MDI (now ACMI) was terminated for default, the company made efforts to collect materials and store them as best could be done at the time. Those nearly 1,000 boxes have been in storage facilities since late 1999. At various times, boxes were moved from one storage facility to another. Not surprisingly, the boxes are dust laden, and many of the boxes have started to collapse due to age and weight and having been stacked. Although ACMI made every effort to index the contents of the boxes, realizing that they could be relevant to litigation, the indices are merely in draft form and are frequently inaccurate when the contents of the box are compared to the indices.

Due to the Government's nine-year long delay in pursuing discovery on its claims, counsel for ACMI does not have the benefit of any ACMI employees' knowledge of the contents of the boxes. Counsel for ACMI has therefore had to spend time assessing the contents of the boxes and organizing the materials for adequate review.

Accordingly, and due to the Government's overbroad Second Request for Production of Documents, it is taking significant time to review the documents in the 1,000 boxes for responsiveness and privilege prior to production to the Government. ACMI anticipates that the

Court's granting of ACMI's cross-motion for protective order limiting the scope of the Government's Second Request for Production of Documents will alleviate the undue burden imposed on ACMI by the Government's overbroad requests.

### C. Counsel is Currently Reviewing the 1,000 Boxes of Documents and Making Boxes Available for Government Inspection on a Rolling Basis.

The Government requested to begin its inspection of those 1,000 boxes on July 25, 2008. During the July 17, 2008 telephone conference, Government counsel represented that she was most interested in seeing the files of Mr. Laskowske and Mr. Harwood, pay applications, and subcontractor files. Accordingly, ACMI is making available all 74 boxes relating to Mr. Laskowske's and Mr. Harwood's files on July 25, 2008. As ACMI advised Government counsel during the telephone conference on July 17, 2008, the Government already has copies of all of the pay applications for the project, as the Government itself produced those to ACMI, so that request is entirely duplicative. The Government also already has files relating to subcontractor work on all phases of the St. Louis Courthouse project, and any documents in ACMI's subcontractor files are entirely irrelevant to the Government's calculation of excess reprocurement costs. Additionally, the pay applications and some subcontractor files are scattered throughout the 1,000 boxes. It would take counsel for ACMI an exorbitant amount of time to hunt through every single box looking for those irrelevant and duplicative documents.

Subject to the Court's direction in considering ACMI's cross-motion for protective order, and subject to ACMI's written objections to the Government's Second Request for Production of Dcouments, ACMI will continue to review the 1,000 boxes and produce them for inspection to the Government on a rolling basis.

## IV. <u>THE COURT SHOULD ISSUE A PROTECTIVE ORDER LIMITING THE GOVERNMENT'S OVERBROAD AND UNDULY BURDENSOME SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND NOT REQUIRING ACMI TO PROVIDE AN INDEX.</u>

The Government's Motion is a prime example of the adverse effects of the Government's nine-year delay in attempting to determine excess reprocurement costs and seek discovery related to this litigation. Almost a decade has passed since many of the relevant events occurred. As Tom Barnard, a GSA employee who was involved in this project, concedes, "it is tough remembering." *See* May 2007 email from T. Barnard to T. Page explaining the difficulty with the delay, attached as Exh. 5. In the meantime, key personnel have quit and even died. Additionally, many Government documents have been destroyed, as was explored at length in the deposition of Contracting Officer Karen Poole.[1] As time continues to pass, the evidentiary difficulties get even worse – an issue that should be of grave concern to the Government given its significant burden of proof in this case.

As ACMI has previously advised this Court, the Government has revised its demand for excess reprocurement costs five times, most recently on July 2, 2008. The revision process began with an initial claim in March 2006 exceeding $30 million, two revisions of that claim later in 2006 that also sought amounts in the $30 million range, an August 2007 recalculation that its claim really was only approximately $17 million – a reduction of its claim by over 40%, and the most recent July 2, 2008 revised demand for $18 million. Moreover, recent discovery in the case has shown that the Government, as recently as 2007, had internal calculations of its claim in the range of $10 million – an amount roughly 2/3 less than its original "calculations" in

[1] ACMI will not burden this Court with lengthy excerpts from the Poole deposition transcript describing the inadvertent deletion of, and efforts to recreate, a computer file used by Ms. Poole to store materials related to litigation concerning the St. Louis Courthouse. Suffice to say that all parties to this litigation acknowledge this file is no longer available.

2006. Notably, the July 2, 2008 revision was issued after three depositions of individuals involved in compiling the excess reprocurement costs had occurred. Due to the Government's latest fifth revision, ACMI may need to seek leave to re-depose one or more of those three individuals.

While ACMI has diligently pursued discovery from the Government beginning on January 16, 2008, the Government did not seek any production of documents from ACMI until May 1, 2008 except for one limited document request. The Government's February 19, 2008 written response to ACMI's January 16, 2008 first request for production largely referred ACMI to a Kansas City warehouse where documents would be made available to ACMI. Initially the Government indicated that access would occur in March 2008. Despite ACMI's multiple requests for access at earlier dates, the Government only permitted ACMI access to the approximately 630 boxes of documents in the Kansas City warehouse the week of May 20, 2008 – three months after its written response. While ACMI has taken three depositions and noticed four other depositions, the first time the Government even told ACMI the identities of the persons it wanted to depose was in its Motion for Enlargement of Discovery on June 16, 2008.

A protective order is appropriate due to the overbroad and unduly burdensome Government requests. Government counsel was informed on June 25, 2008 that MDI's documents were available for review with reasonable notice of inspection. ACMI provided the Government with access to more than 130 boxes, which the Government chose to copy wholesale on July 2 without any review. Government counsel did not schedule a date to begin her inspection of documents in response to the Second Request for Production until the week of July 14, 2008, and proposed to begin inspecting boxes of documents on July 25, 2008. Again on

July 17, 2008, during a telephone conference with Government counsel, counsel for ACMI advised that the nearly 1,000 boxes were in bad condition, disorganized, and did not track the work product indices that ACMI had in its possession. Counsel for ACMI believed that Government counsel understood that due to the magnitude of those boxes, Government counsel needed to prioritize and limit her request for production.

Indeed, Government counsel during the July 17 call indicated that she wanted to see only four (4) categories of documents: (1) Mr. Laskowske's files; (2) Mr. Harwood's files; (3) pay applications 40 and 41 (the last two pay applications that MDI submitted on the project); and (4) subcontractor files. ACMI's counsel agreed to proceed by first providing for inspection the boxes containing Mr. Laskowske's files and Mr. Harwood's files on July 25.

ACMI's counsel advised Government counsel that her request to see pay applications 40 and 41 was entirely duplicative because the Government had previously produced those pay applications to ACMI. Additionally, ACMI's counsel reminded Government counsel during the July 17 telephone conference that the request to see subcontractor files is entirely irrelevant to this case under the Government's own theory of this case and duplicated the Government's production to ACMI of numerous subcontractor documents. As discussed above, the Government has repeatedly stated its position that Phase II of the St. Louis Courthouse project is irrelevant due to the forfeiture decision and that only the Government's excess reprocurement cost calculation is relevant to this litigation. The subcontractor files could not possibly contain any documents relevant to the Government's excess reprocurement cost calculation.

In any event, ACMI believed after the July 17 telephone conference that the parties had agreed that the Government was really seeking those narrowly-tailored four categories of documents. Later that day, however, the Government reneged on that agreement and filed this

motion to compel without contacting counsel for ACMI first to discuss the Government's abrupt change of course.

ACMI has already produced in excess of 415,000 pages of documents and 26 DVDs of site visits to the Government in this case. Indeed, ACMI's production to date likely *exceeds* the quantity ACMI obtained from the Government of approximately 590,000 pages of documents. With the production of additional documents received from Mr. Laskowske and documents from the 1,000 boxes, ACMI's production could rise to triple the size of the Government's production. Moreover, the relevance of documents in ACMI's possession is nil in this case because the Government must carry the heavy burden of proof, the Government contends that only events occurring after the termination for default when ACMI was not on site and not generating documents are relevant, and ACMI by default was not generating any documents relevant to the Government's many ever-changing excess reprocurement costs calculations. To the extent that counsel for ACMI can expediently locate any responsive non-privileged documents that were generated after the June 16, 1999 termination for default that are related to pay applications 40 and 41 or subcontractor files, ACMI will attempt to produce those documents. However, it would be unduly burdensome, time consuming, and expensive for ACMI to be required to hunt through every single box of the 1,000 boxes in order to find even those documents. To force ACMI to review and produce documents duplicative of the Government's production and documents that the Government has contended multiple times are irrelevant to this case would be unduly burdensome and inappropriate, particularly in light of the discovery abuses in which the Government continues to engage.

Additionally, ACMI has already produced over 11,000 pages of other documents from Mr. Laskowske's files on July 22, 2008 and will produce 46 boxes of documents from Mr.

Laskowske's files on the Government's previously requested date of July 25, 2008. As discussed above, the Government's subpoena to Mr. Laskowske is grossly overbroad because Mr. Laskowske was not involved in the Government's calculation of its excess reprocurement costs, and the Government has asserted many times that Phase II of the project is irrelevant to this case. ACMI was able to narrow the search for potentially responsive documents to some extent by searching only the "Eagleton" folder of Mr. Laskowske's home computer, but potentially responsive documents could exist in all other areas of his home and work computers. Moreover, review of the total over 158,000 pages of documents ACMI received from Mr. Laskowske is unduly burdensome, time consuming and expensive. Additionally, the Government already has in its possession documents generated by Mr. Laskowske among the over 415,000 pages of documents that ACMI has produced to date.

Because Mr. Laskowske's documents are the property of ACMI, those documents would be potentially responsive, if to anything, to the Government's Second Request for Production of Documents. ACMI's cross-motion for protective order therefore also encompasses the documents (except for the over 11,000 pages provided to the Government on July 22) that ACMI received from Mr. Laskowske and has not reviewed yet for production to the Government.

Accordingly, ACMI requests that the Court enter a protective order requiring ACMI to produce only the 74 boxes containing Mr. Laskowske's and Mr. Harwood's files and to make best efforts to locate any responsive non-privileged documents generated after the termination for default on June 16, 1999 related to pay applications 40 and 41 and subcontractor files to the extent such documents can be located from the draft work product indices available to ACMI. Additionally, ACMI requests that the Court enter a protective order stating that ACMI is not required to produce any additional documents it received from Mr. Laskowske prior to July 25,

2008. Further, ACMI requests that the Court enter a protective order stating that ACMI is not required to produce any index of the 1,000 boxes of documents for the reasons stated above regarding the work product concern and less than reliable draft nature of the indices.

## V. CONCLUSION

For the foregoing reasons, ACMI requests that the Court deny the Government's Motion to Compel in its entirety and grant ACMI's cross-motion for protective order.

Respectfully submitted,

/s/James D. Wareham
JAMES D. WAREHAM
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128
Attorney of Record for Plaintiff

Of Counsel:
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005

July 22, 2008

LEGAL USE 79839320.3

## CERTIFICATE OF SERVICE

I hereby certify that this 22nd day of July 2008 I caused a copy of the foregoing Plaintiff's Response to Motion to Compel and Plaintiff's Cross-Motion for Protective Order to be served by ECF upon counsel for the Defendant as follows:

Dominique Kirchner
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530

/s/Danielle Pierce
Danielle Pierce

LEGAL_US_E # 80253130.4