IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC. (f/k/a Morse Diesel International, Inc.), | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-867C |
| | ) | (Judge Braden) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

On July 18, 2008, defendant, pursuant to Rules 34, 37(a)(2), and 45 of the Rules of the United States Court of Federal Claims ("RCFC"), respectfully requested that this Court issue an order (1) compelling plaintiff to respond to defendant's second request for production of documents, dated May 1, 2008, and produce copies of all of the indices for plaintiffs' documents, and (2) compelling plaintiff to respond to defendant's subpoena duces tecum and attached request for production of documents directed to Paul Laskowske, dated June 17, 2008, by producing copies of all of the requested documents by July 25, 2008, 9:00 am, all of which documents were formerly within the control and custody of Paul Laskowske, before he transferred them to plaintiff's counsel. Defendant also respectfully requested that the Court order the plaintiff to produce a privilege log by August 1, 2008, for any documents it is withholding in response to defendant's second request for production of documents and the subpoena duces tecum. We address these matters in turn.[1]

[1] With regard to the progress of depositions, plaintiff has conducted the following depositions: Terry Page of Jacobs Facilities (June 6, 2008); Karen Poole of GSA (June 12-13, 2008); Martin Hom (June 25, 2008); and Linda Phillips of GSA (July 23, 2008). Defendant is scheduled to conduct Paul Laskowske's deposition on July 31, 2008, and Graham Harwood's

**I. Production Of The Indices For Plaintiff's Documents**

The chronology regarding defendant's requests for production of plaintiff's documents and the indices for such documents is as follows:

| | |
|---|---|
| May 1, 2008 | Defendant's Second Request For Production Of Documents, served |
| June 2, 2008 | Plaintiff's Response to Defendant's Second Request For Production of Documents served, and plaintiff does not produce any documents |
| June 15, 2008 | Defendant's Motion for Enlargement Of Discovery, stating among other things that the plaintiff has failed to produce any documents in response to defendant's second request for production of documents |
| June 23, 2008 | Defendant's counsel's letter requesting an index of documents (App. 76)[2] |
| July 17, 2008 | Defendant's counsel's letter again requesting an index of plaintiff's documents |
| July 17, 2008 | Defendant's counsel's email notifying plaintiff of its intent to file a motion to compel |
| July 18, 2008 | Plaintiff's counsel's letter providing an index for boxes that would be produced on July 25, 2008 |
| July 18, 2008 | Defendant's counsel's letter notifying plaintiff of its intent to file a motion to compel |

Plaintiff has refused to produce copies of the indices relating to plaintiff's documents, which number in the range of 1000 boxes, claiming (1) such indices are privileged as work-product, and (2) such indices are drafts and not reliable. Pl. Mot. 3, 9. Plaintiff also asserts that plaintiff's "counsel is currently in the process of reviewing the 1,000 boxes for privilege and

---

deposition on August 13, 2008. Defendant understands that plaintiff wishes to depose Georgann Butler, the GSA contracting officer, in September 2008. Defendant also has noticed a Rule 30(b)(6) deposition of plaintiff which will be conducted in September 2008. Plaintiff has issued Rule 30(b)(6) deposition notices to Jacobs Facilities and Cotton & Co.

[2] "App." refers the appendix attached to this pleading.

responsiveness." Pl. Mot. 9. Plaintiff also has failed to produce a privilege log for the documents that it is withholding from defendant, including the withheld-indices.

Plaintiff has failed to establish that its indices of its documents are protected by the work-product privilege. The work-product doctrine protects documents prepared in anticipation of litigation or for trial, prepared by a party or that party's representative (e.g., attorney. consultant, or agent). Hickman v. Taylor, 329 U.S. 495 (1947); United States v. Nobles, 422 U.S. 225, 238-39 (1975) (attorneys often must reply on investigators and the work product doctrine extends to materials prepared by such agents). In Hickman, the Supreme Court extended the work-product doctrine to all inquiries and requests seeking "counsel's mental impressions, conclusions, or opinions." Accord, Genetech, Inc. v. U.S. Int'l Trade Commission, 122 F.3d 1409, 1415 (Fed. Cir. 1997).

Courts applying the work-product doctrine distinguish between "opinion" work product and ordinary or factual work product. "Opinion" work product describes documents containing the mental impressions, conclusions, opinions, or legal theories of an attorney. Ordinary or factual work-product describes materials prepared in anticipation of litigation but which do not contain the attorney's mental impressions. To overcome the ordinary or factual work-product privilege a party must show both a substantial need for the information and that seeking the information through other means would cause undue hardship. In re Seagate Technology, LLC, 497 F.3d 1360, 1375-76 (Fed. Cir. 2007).

First, plaintiff has presented no evidence that the indices of plaintiff documents that it seeks to withhold from defendant are actually privileged. Plaintiff also has not provided a privilege log for its various indices. At the hearing on July 22, 2008, plaintiff's counsel asserted that its indices were prepared by prior counsel. July 22, 2008 Tr. 39. Even if it were established

that such indices had been prepared by prior plaintiff counsel that fact alone does not demonstrate that such documents are privileged as work-product. MDI's regular course of business presumably required that it maintain its documents regarding the Phase II contract as well as inventories or indices of such company documents.

Further, defendant has a substantial need for such indices of Phase II documents. According to plaintiff, there are approximately 1000 boxes of plaintiff documents related to the St. Louis Courthouse Phase II contract. Defendant requested production of such documents in its document request dated May 1, 2008. On July 25, 2008, plaintiff made a restricted subset of such documents available for inspection and review by defendant's counsel. App. 71. Defendant requires an index so that defendant can conduct its own an inspection and review of the plaintiff's Phase II documents.

Further, assuming that the indices of documents which plaintiff's counsel is withholding were prepared by prior plaintiff counsel, plaintiff likely has waived any work-product privilege that arguably attached to such documents. The voluntary disclosure of work product materials to an adversary generally results in a waiver of the privilege. Genentech, Inc., 122 F.3d at 1415. In the related MDI litigation, plaintiff's prior counsel provided some indices of documents to defendant's counsel to enable her review of MDI documents. By its motion to compel, defendant is seeking the production of all of the various plaintiff indices that relate to its collection of the more than 1000 boxes of Phase II documents.

Plaintiff's counsel further asserts that the indices of plaintiff documents that it has are not reliable. In that case, the Court should direct plaintiff to produce a reliable index for its collection of more than 1000 boxes of documents. Absent a reliable index, there is no practical way for the defendant to adequately inspect and review the plaintiff's documents relating to the

St. Louis Phase II project. Further, plaintiff has failed to provide a privilege log for the documents that it is withholding from defendant. Plaintiff should also be directed to provide by August 1, 2008, a privilege log for the documents that it is withholding from defendant.

**II. <u>Production Of The Documents Previously Stored In Paul Laskowke's Home</u>**

The chronology regarding the Government's request for production of these documents is as follows:

| | |
|---|---|
| June 17, 2008 | Defendant issued its Notices Of Deposition and Request For Production Of Documents To Paul Laskowske and Graham Harwood and served plaintiff's counsel with a copy[3] |
| June 23, 2008 | Defendant personally served Mr. Laskowske and Mr. Harwood with the Notices of Deposition and Requests for Production of Documents |
| July 11, 2008 | Plaintiff's Counsel Receives the Paul Laskowske Documents[4] |
| July 18, 2008 | Date that the Paul Laskowske documents were required by the subpoena duces tecum to be produced to defendant's counsel |
| July 22, 2008 | Plaintiff begins production of Paul Laskowske documents |
| July 31, 2008 | Defendant's Deposition of Paul Laskowske in Chicago, IL |

Beginning on July 22, 2008, plaintiff's counsel has produced copies of the Paul Laskowske documents to defendant's counsel.[5] The Government assumes that plaintiff's counsel is continuing to expeditiously produce the Paul Laskowske documents. Defendant's

---

[3] Our appendix includes a copy of the Government messenger's trip sheet indicating that the subpoenas were delivered to plaintiff's mailroom on June 17, 2008. App. 34.

[4] Plaintiff's counsel's letter dated July 11, 2008 stated that plaintiff had received Mr. Laskowske's documents. This document is included at defendant's appendix p. 54 to plaintiff's motion to compel.

[5] Plaintiff's assertion that its delivery of the Paul Laskowske documents began on July 21, 2008 is incorrect. Pl. Mot. 3. Plaintiff's delivery actually began on July 22d. Pl. Mot. 8.

counsel respectfully requests that the Court direct plaintiff to provide a privilege log for the Paul Laskowske documents that it is withholding from defendant.

## III. Plaintiff's Motion For Protective Order Should Be Denied

### A. Plaintiff Misstates Defendant's Position On The Scope Of Discovery

Plaintiff's motion for a protective order precluding the Government from inspecting and reviewing plaintiff's Phase II documents should be rejected first because it is based upon a false premise. In its motion, plaintiff repeatedly asserts that it is Government's position that all documents relating to the St. Louis Phase II contract are irrelevant and that the only Government documents that are relevant in this case are those relating to Phase III, wherein GSA contracted with numerous contractors, many of which were former MDI subcontractors, to complete construction of the St. Louis Courthouse. Pl. Mot. 2, 5, 6. Thus, plaintiff's motion states that "the Government contends that only events occurring after the termination for default when ACMI was not on site and not generating documents are relevant." Pl. Mot. 2. That assertion is incorrect.

Plaintiff's erroneous statement of the Government's position is based upon plaintiff's selective and misleading quotation from defendant's response to plaintiff's request for production of documents. Pl. Mot. 5. Plaintiff asserts that the Government stated

> that Phase II is completely irrelevant to this case because "such requests are not reasonably calculated to lead to the discovery of relevant evidence and production of such documents is also unduly burdensome. Further, in its January 26, 2007 decision, the Court declared such claims to be forfeited."

Pl. Mot. 5. In response to plaintiff's requests for production of documents, the Government actually stated:

> 7. We object to plaintiff's request for production of documents to the extent that it seeks to obtain documents relating

to ACMI's claims relating to the St. Louis Courthouse Phase I contract or the Phase II contract because such requests are not reasonably calculated to lead to the discovery of relevant evidence and production of such documents is also unduly burdensome. Further, in its January 26, 2007 decision, the Court declared such claims to be forfeited. Morse Diesel, 74 Fed. Cl. at 625-35.

In response to plaintiff's request for production of documents, the Government further stated its objections:

> 5. We object to plaintiff's request for production of documents to the extent that it seeks to obtain documents prior to the award of the St. Louis Courthouse Phase II contract on or about September 28, 1995 because such discovery is not reasonably calculated to lead to the discovery of relevant evidence.
>
> 6. We object to plaintiff's request for production of documents to the extent that it seeks to obtain documents relating to the June 1999 termination for default of plaintiff because such request is not reasonably calculated to lead to the discovery of relevant evidence. In its January 26, 2007 decision, the Court declared that plaintiff's challenge to the June 1999 termination for default of MDI was forfeited, and, accordingly, such discovery is improper. Morse Diesel v. United States, 74 Fed. Cl. 601, 628, 636 n.21 (2007).
>
> * * * * * *
>
> 8. We object to plaintiff's request for production of documents to the extent that it seeks to obtain documents relating to GSA's imposition of liquidated damages on the Phase II contract for the period January 9-May 31, 1999. ACMI's August 30, 2001 certified claim and request for equitable adjustment challenged GSA's imposition of liquidated damages and sought recovery of such liquidated damages. In its January 26, 2007 decision, the Court declared that ACMI's August 30, 2001 claim was forfeited, and, accordingly, such discovery is improper. Morse Diesel, 74 Fed. Cl. at 625-35.
>
> 9. We object to plaintiff's request for production of documents to the extent that it seeks to obtain documents relating to ACMI's June 15, 2005 certified claim because such request is not reasonably calculated to lead to the discovery of relevant evidence. In its June 29, 2007 unpublished decision at p.7, the Court ruled that it did not currently have jurisdiction to address that claim, and, accordingly, plaintiff's requested discovery is improper. Subsequently, on January 24, 2008, GSA contracting officer Georgann Butler issued a final decision denying that claim.

> Plaintiff has not filed an appeal of that contracting officer's decision.

Plaintiff’s motion to compel was based upon a false premise. The Government has not taken the position that all Phase II documents are irrelevant in this case. The Government made specific objections to the extent and scope of plaintiff’s requests for production of documents. Accordingly, the Court should deny the plaintiff’s motion for protective order.

**B. The Government Is Not Responsible For The Condition Of Plaintiff’s Approximately 1,000 Boxes Of Documents**

Plaintiff asserts that the condition of its “nearly 1,000 boxes of documents relating to the St. Louis Phase II project are both dilapidated and disorganized due to the Government’s nine-year delay in seeking discovery on its claims for excess reprocurement costs.” Pl. Mot. 10. Plaintiff states that those boxes have been in storage facilities since late 1999, that the boxes have been moved at various times, that the boxes are dust laden, that many have started to collapse, and that, because of Government delay, ACMI does not have the benefit of any ACMI employees’ knowledge of the contents of its own boxes. Pl. Mot. 10.

There is no basis for plaintiff’s argument that the Government is responsible for the condition of plaintiff’s approximately 1,000 boxes of documents. ACMI’s loss of any employees with knowledge of the contents of its own records is not the fault of the Government. As the Court knows, ACMI’s parent company made a decision to close down ACMI. ACMI’s resulting loss of employees and attendant loss of knowledge of its own records is the result of that decision, and is not attributable to the Government.

Further, although the Government terminated the St. Louis Phase II contract for default on June 16, 1999, ACMI continued on preparing and filing various claims against the Government all related to the St. Louis Phase II contract. ACMI presumably based such claims

and lawsuits upon a review of at least some of its documents in its nearly 1,000 boxes of documents. For example, on September 1, 2000, plaintiff filed a complaint in this Court raising a claim involving the reinstatement agreement of the Phase II contract. The case was docketed as Fed. Cl. No. 00-531. On August 30, 2001, ACMI submitted a claim to the GSA contracting officer relating to the St. Louis Phase II contract. On June 20, 2003, ACMI filed this claim with this Court as Fed. Cl. No. 03-1537. In its January 2007 decision, this Court declared that MDI's reinstatement claim and the August 2001 claim both were forfeited. Morse Diesel Int'l, 74 Fed. Cl. at 625-35. On June 15, 2005, ACMI filed another Phase II contract claim with the GSA contracting officer requesting approximately $22 million. App. 52-70. This claim has not been filed with this Court.

### C. Plaintiff's Phase II Documents Are Directly Relevant To Defendant's Claim For Excess Reprocurement Costs

In the hearing on July 22, 2008, defendant's counsel addressed the relevancy of plaintiff's boxes of Phase II documents, and further details such relevancy here.

On June 10, 1999, MDI submitted progress payment application no. 41 to the GSA for work performed on the St. Louis Phase II contract through May 31, 1999. App. 1-28. That payment application was certified by Graham Harwood, ACMI Vice-President. App. 2. GSA did not make a payment in response to payment application no. 41. Subsequently, GSA reimbursed MDI subcontractors for work that they had performed on the Phase II contract and for which they had not received payment from MDI. App. 31-32.

On August 6, 1999, Graham Harwood, ACMI Vice-President, sent GSA a letter and attached "a list of estimated payments that would have been made to the subcontractors if GSA had processed the May Billing." App. 29-30. It is our belief that this letter was signed by Paul Laskowske. Mr. Harwood's letter stated, "[i]t is our understanding that GSA will be paying

these subcontractors direct." Id. According to Mr. Harwood's letter, the payment due from GSA amounted to $2,502,831.80, and the total estimated payments for subcontractors amounted to $2,160,920.82. Id.

In its first and second sets of interrogatories and requests for production of documents, defendant inquired of plaintiff as to the basis for the computation stated in the August 6, 1999 letter of Mr. Harwood, requested that plaintiff identified the amounts that it owed to its subcontractors, including the amounts owed for the May 1999 and the June 1-16, 1999 Billings, and also requested that plaintiff provide copies of any documents identified or relied upon in preparing its responses. App. 35-51. Plaintiff provided only limited information in response to the Government's first and second set of interrogatories, and failed to provide any documents or support for the statements in Mr. Harwood's letter. Id.

The Government's computation of its excess reprocurement costs includes amounts that the Government paid directly to MDI's subcontractors to reimburse them for amounts that they were owed by MDI. The Government provided plaintiff with an excel spreadsheet that is used to compute the Government's reprocurement costs, and a chart that summarizes information contained in its excel spreadsheet relating to the Government's reimbursement of MDI subcontractors and suppliers. App. 31-33. The total payments on this summary chart amount to $5,423,378.64. Among other things, the Government seeks to discover any documentation that either supports or contradicts Mr. Harwood's letter, and to determine what amounts, in plaintiff's view, were owed to MDI's subcontractors and suppliers. As noted, the Government's reimbursements of amounts owed to MDI subcontractors and suppliers are an element included in the Government's computation of excess reprocurement costs.

Also, included in the Government's computation of excess reprocurement costs is missing inventory and supplies, e.g., amounts that the Government incurred to purchase inventory and supplies that could not be located on the St. Louis Courthouse job site after the June 16, 1999 termination of MDI. The Government needs to review MDI's files to determine whether such supplies were in fact delivered to the job site, including MDI files relating to its subcontractors and suppliers, the work completed by MDI subcontractors and suppliers, the suppliers' and subcontractors' invoices to MDI, and MDI's payments made to its suppliers and subcontractors.

Plaintiff has not accurately described defendant's counsel's statements in the telephone conversation on July 17, 2008. It was not defendant's counsel understanding that an agreement was made in the July 17th telephone call. In that telephone conversation, Government counsel informed plaintiff's counsel of her priorities for her review of the plaintiff's Phase II documents but did not restrict the Government's written requests for production of documents, dated May 1, 2008. Government counsel requested that she first be given access to all of Paul Laskowske's files, all of Graham Harwood's files, all of the files relating to MDI payment applications, especially payment applications numbers 40 and 41, and all of the MDI subcontractor files for the Phase II contract. By orally requesting all of the files relating to payment applications, defendant's counsel was not requesting only the payment application itself. Any payment application is developed through what are commonly called pencil copies or drafts, and there also are internal MDI accounting files and other documents related to any payment application, including subcontractors' and suppliers' invoices. In the telephone conversation on July 17th, defendant's counsel orally requested access to all of the files and documents relating to MDI

payment applications and MDI subcontractors, as well as all of Mr. Laskowske's files and all of Mr. Harwood's files.

Defendant's counsel further states that, with assistance, she conducted a review of the boxes of documents that plaintiff produced for inspection on July 25, 2008, and that she did not find any backup or documentation that supports the statements made in the August 6, 1999 letter of Mr. Harwood. Defendant needs to review any and all files that relate or refer to MDI payment applications, especially MDI payment application number 41, and any MDI files that relate or refer to MDI subcontractors and suppliers, including work performed by MDI subcontractors and suppliers, subcontractors' and suppliers' invoices to MDI, and MDI payments to its subcontractors and suppliers. App. 74. Further, defendant's counsel needs to review the files of the MDI accountant, Steven Dollens, since he is believed to have prepared or assisted in the preparation of the MDI payment applications.

**D. <u>Plaintiff's Position On The Issues And The Appropriate Scope Of Discovery</u>**

Based upon Plaintiff's Memorandum in Opposition to Defendant's Request For In Camera Inspection and Protective Order and in support of Plaintiff's Motion To Compel, dated July 25, 2008, and the questioning of witnesses by plaintiff's counsel at the depositions regarding the June 16, 1999 termination for default, it appears that plaintiff's real position is that all Phase II documents are relevant in this litigation, including plaintiff's own Phase II documents. In its memorandum, plaintiff asserts that the Government must demonstrate that the June 16, 1999 termination for default of MDI was warranted because of MDI's delay in completing the St. Louis Courthouse. July 25, 2008 Pl. Mem. 4. Plaintiff further asserts that, during the Phase II contract, delays occurred as a result of environmental contamination at the site, poor performance of the Government's architect HOK, and delays by GSA staff and

consultants in review and evaluation of request for changes from ACMI during Phase I and Phase II. July 25, 2008 Pl. Mem. 9. Plaintiff also asserts that it is likely that such alleged Government delay continued into Phase III of the construction. Id. Plaintiff's position in its motion for protective order, i.e., that MDI own documents regarding the Phase II contract are irrelevant in this case, contradicts the position that it has taken in its July 25, 2008 memorandum. Accordingly, the Court should deny plaintiff's motion for a protective order regarding its own St. Louis Phase II documents.

Further, in its January 26, 2007 decision, this Court declared that plaintiff's challenge to the June 16, 1999 termination for default of MDI was forfeited, and, accordingly, the Government is not required to demonstrate in this case that the termination for default was warranted because of MDI's delay. Morse Diesel v. United States, 74 Fed. Cl. 601, 628, 636 n.21 (2007). The Government will further address ACMI's memorandum, dated July 25, 2008, in its reply brief.

**Conclusion**

For these reasons and those stated in defendant's motion to compel, dated July 18, 2008, plaintiff's motion for protective order, dated July 22, 2008, should be denied and the Court issue an order granting defendant's motion to compel.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:
TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

July 28, 2008

Table of Contents of Appendix

Page

June 10, 1999 Excerpts from MDI progress payment application no. 41, certified by Graham Harwood of MDI to GSA....................1

August 6, 1999 Letter from Graham Harwood of MDI to GSA....................29

Chart summarizing Amounts GSA paid to MDI subcontractors....................31

June 17, 2008 DOJ Tripsheet from messenger delivery of subpoenas on June 17, 2008........34

July 7, 2008 Plaintiff's Responses to Defendant's First Interrogatories and Request for Production of documents....................35

June 23, 2008 Plaintiff's Responses to Defendant's Second Interrogatories and Request for Production of Documents....................45

June 15, 2005 Excerpt from ACMI's claim for $22 million....................52

July 18, 2008 Letter from Plaintiff's Counsel to Defendant's Counsel....................71

July 24, 2008 Letter from Defendant's Counsel to Plaintiff's Counsel....................74

June 23, 2008 Letter from Defendant's Counsel to Plaintiff's Counsel....................76