**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC.,<br>f/k/a Morse Diesel International, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 06-867 |

**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER**

## I. Introduction

AMEC Construction Management, Inc. ("ACMI") submits this reply in support of its July 22, 2008 cross-motion for protective order limiting the government's overbroad and unduly burdensome second request for production of documents and to not require ACMI to provide an index to these documents. The government's document request is an exemplar of why the government Contracting Officer's almost six-year delay in seeking excess reprocurement costs for the completion of the St. Louis federal courthouse has both hampered discovery and turned the case on its head. This case is about the costs incurred by the government when it completed construction of the courthouse from June 1999 through substantial completion in May 2000; not about a time-consuming review of ACMI's work on the courthouse prior to termination in June 1999. ACMI respectfully requests that this Court order that ACMI is not required to produce any additional documents from its historical files, limit the production of electronic Laskowske documents to the current search terms proposed by the government, and provide that ACMI does not need to produce an index of all the documents in its possession.

In an "excess reprocurement case," the focus should be upon the work done by the government to complete the contract: whether that work was within the scope of the original contract and whether the government performed its work in a manner to mitigate any excess costs. In this particular case, approximately $25 million remained unspent in the original contract when the government terminated ACMI.[1] The government ultimately spent over $51 million to complete the project, and now seeks $18 million from ACMI. It is the government's heavy burden to establish what costs are recoverable from ACMI. Yet the government stalled its assertion of claims for over six years (until 2006), significantly reduced the $30 million claimed in 2006 to approximately $17.3 million in 2007, (a more than 40% decrease), and then delayed its own discovery efforts in this case until issuance of its first significant document request on May 1, 2008 (more than six months from the Court's initial scheduling order). It is simply too late for the government to feign concern that it has not had an opportunity to obtain materials from ACMI's files.

The lengthy passage of time, in combination with the government's failure to properly track its work during the reprocurement phase ("Phase III"), has prevented the government from making any accurate claim for reprocurement costs against ACMI. Instead, since March 2006 the government has serially issued requests for repayment widely varying from over $30 million to approximately $17 million. On July 2, 2008 the Contracting Officer issued the most recent recomputation of the "final" decision- a decision totaling just over $18 million.[2] Even though

[1] Morse Diesel International, Inc., was the prime contractor on the Phase II courthouse project. After termination in May 1999, Morse Diesel changed its name to AMEC Construction Management, Inc. ("ACMI") which is used throughout this reply to refer to the entity.

[2] This revision was issued to ACMI after ACMI had deposed three individuals involved in compiling the excess reprocurement costs.

the multiple recomputations of the government's "final" decision fluctuate in value by $13 million, documents produced in discovery reveal that internal drafts show an even greater fluctuation. As recently as May 2007 a draft demand letter by the government held MDI accountable for approximately $10 million.

## II. ACMI'S Request for a Protective Order

ACMI's July 22, 2008 cross-motion for a protective order sought relief on three distinct issues: (1) a protective order requiring ACMI to produce only the 74 boxes containing Harwood and Laskowske documents and to make its best efforts using existing indices to locate certain other files for the government to review; (2) a protective order stating that ACMI is not required to produce any additional documents from Paul Laskowske prior to July 25 (as the government was seeking an expedited order requiring some additional production before the agreed date of July 25); and (3) a protective order stating that ACMI is not required to produce any index of the collection of approximately 1,000 boxes of historical files because the indices are attorney work product and furthermore are not wholly reliable.[3] Since the filing of the government's motion and ACMI's cross-motion, the Court has held two teleconferences. This Reply reflects the Court's instructions during those conferences.

### *A. The Scope of Production of ACMI's Historical Materials*

As to the first request, it is ACMI's position that no additional documents need to be produced from the approximately 1,000 ACMI historical boxes retrieved from warehouse storage relating principally to ACMI's work on Phase II project of the St. Louis Courthouse. As of the

[3] During the telephone conference with the Court on July 28, 2008, the Court requested that ACMI provide the existing indices for *in camera* review by August 11, 2008. ACMI agreed to do so.

date of this filing, the government has already had access to, and copied portions, of 114 boxes containing pay applications, files of Mr. Harwood, and files of Mr. Laskowske. Earlier in July, ACMI had already provided to the government approximately 133 boxes (approximately 371,000 pages) of documents maintained by ACMI's expert (Warner Construction Consulting). The great majority of those boxes are copies of historical documents that Warner had collected from ACMI's historical files in 2000 and 2001. Furthermore, the vast majority of those boxes contain materials wholly duplicative of the government's own materials -- as the government was the owner of the building the vast majority of correspondence included both the owner and the general contractor.

ACMI has continued to diligently attempt to locate pay application files from the approximately 1,000 boxes worth of material. On Wednesday July 30, 2008, ACMI informed government counsel that there were 13 additional boxes of material containing certain pay applications relating to Phase I and Phase II of the construction project that were available for the government's review. At that time additional copies of pay applications 40 and 41 found during ACMI's review were provided to the government. On August 5, 2008, the 13 pay application boxes along with 27 additional boxes relating to Graham Harwood and Paul Laskowske's file cabinets were produced for inspection by the government. In sum, on August 5, the government was provided with an additional 40 boxes of material containing approximately 100,000 pages. Thus, ACMI has now reviewed and given the government access to more than 240 boxes of historical documents as well as reviewing and producing electronic documents.

ACMI has made diligent efforts to find any and all documents relating to Mr. Laskowske, Mr. Harwood, and the pay applications from the 1,000 boxes. Belatedly, in the government's July 28, 2008 response to ACMI's cross-motion for a protective order, the government now says

that it also wants ACMI to try to cull out the files of Steve Dollens (a former ACMI employee) for review. Yet the government has not offered any rationale for why it now needs to review Mr. Dollens' files or any rationale for its delay in making that request. In addition, a simple word search of the 133 Warner boxes already produced to the government and copied in full by the government reveals that nearly 3,000 of those documents that are already in the government's possession include references to Mr. Dollens. The government's continuing and late-hour requests for the files of various ACMI former employees must end at some point, particularly in light of the record of the government's failure to take any steps to seek discovery until very late in the life of this case. This Court should enter a protective order that ACMI need not provide any more files from its 1,000 boxes of historical materials.

***B. Protection Relating to Files from Mr. Laskowske's Home***

As to ACMI's second request for a protective order, the government's request to compel production before July 25 has become moot. ACMI did produce some materials before July 25, it produced additional materials on July 25 (including access to over 70 boxes), and it has continued to produce materials since that date. ACMI has produced some electronic documents from Mr. Laskowske's computer files: on Monday July 21, 2008 over 1,000 pages of Laskowske data were produced, on Wednesday July 23, 2008 2,699 additional pages of Laskowske data were produced, on July 31, 2008 an additional 16,722 pages of similar Laskowske data were produced, finally on August 1, 2008 an additional 9196 pages of Laskowske materials were produced.

In accordance with the Court's instruction during the July 28, 2008 telephone conference, the government provided search terms in an effort to ameliorate the need to review in excess of

120,000 remaining pages of electronic materials. In ACMI's view the government's search terms are overbroad. Nevertheless, when compared to the terms that ACMI would propose, the increase in page count from the use of the government's terms is only marginal. Therefore, ACMI is currently in the process of reviewing the 53,000 pages of additional material yielded from the government's search terms.

ACMI's position is that, after this review is complete, no further review of electronic documents will be necessary. Therefore ACMI requests that the Court order that ACMI's review of Mr. Laskowske's electronic files can cease once it has completed its review of the 53,000 additional pages resulting from the government's search terms.

***C. Protection of ACMI's Indices***

ACMI's third request is that it not have to produce the indices created for the 1,000 boxes of historical materials. A brief review of the historical situation provides the context for ACMI's request.

When the GSA terminated ACMI in June 1999, ACMI's files for the Phase II project were principally located in construction office trailers located next to the building site in St. Louis on land controlled by the GSA. The GSA did not allow ACMI to remove the files at that time; indeed, several months passed before ACMI could retrieve its files. ACMI has reason to believe that the government or its agents and contractors may have accessed those files without ACMI's permission. Ultimately, ACMI was allowed to retrieve its files and began the process of organizing them for storage. Litigation had already begun between the government and ACMI by that time, and ACMI had every reason to expect that it might also have to deal with litigation brought by subcontractors on the Phase II project against ACMI. In fact, ACMI's concerns were

justified as several contractors brought Miller Act cases in the U.S. District Court for the Eastern District of Missouri. In sum, ACMI personnel, at the direction of its then-counsel, made a good faith effort in a timely manner to collect, organize, and index the files and then store them in warehouse facilities.

After the initial collection and storage, the historical files were accessed from time to time as part of the subcontractor litigation, as well as for other purposes. In addition, the boxes have been moved among warehouse facilities at various times in the past. As is not uncommon in situations of this sort, some boxes or files never made it back to their original storage location. Boxes have been mislaid or mislabeled. Boxes have collapsed and files have been moved into new boxes. As a result of all these factors, the original index has become less than fully reliable. ACMI's current counsel created further indices of some of the materials upon review of some portions of the 1,000 warehoused boxes. Had the government acted more promptly in asserting its reprocurement claims, the confusion of the boxes may have been avoided. In a real sense, the government's delay has only exacerbated the difficulty in locating ACMI's records more than nine years old.

Rule 34(b) of the Rules of the Court of Federal Claims ("RCFC") provides that a party may either (1) provide documents for inspection "as they are kept in the usual course of business" or (2) shall organize and label documents to correspond to the categories of the request. The disjunctive structure of the rule allows the producing party to determine the method by which it wishes to produce the documents. *See In re G.I. Holdings Inc.*, 218 F.R.D. 428, 439 (D.N.J. 2003) ("The plain phrasing of [identically phrased former Rule of Civil Procedure] 34 reveals that the producing party has the option of presenting information in one of two ways."); *see also Rowlin v. Alabama Dep't Pub. Safety*, 200 F.R.D. 459, 462 (M.D. Ala. 2001) (stating

that identically phrased former Rule 34(b) of Civil Procedure leaves it to producing party to decide which of the two ways it will produce its records, so long as the records have not been maintained in bad faith). The production of an index of all documents produced or in existence is not required. *See Braun v. Agri-Systems*, No. F-02-6482 A WILJO, 2006 WL 278592, *5 (D. Kan. Oct. 15, 2006) (unpublished opinion) ("An index, whether of documents produced or those in existence ... is not required under [Civil Rule of Procedure] 34."); *see also In re G.I. Holdings Inc.*, 218 F.R.D. at 439 ("If the producing party produces documents in the order in which they were kept in the usual course of business, the Rule imposes no duty to organize and label the documents."). As these authorities demonstrate, ACMI is not required to provide an index to the government of its 1,000 boxes.

In response to ACMI's explanation that the indices are less than wholly reliable, the government seeks the Court to direct plaintiff to produce a reliable index to the collection of boxes. Defendant states that "[a]bsent a reliable index, there is no practical way for the defendant to adequately inspect and review the plaintiff's documents relating to the St. Louis Phase II project." (D's Response at 4-5). The government's request from ACMI for a reliable index is unreasonable and unduly burdensome. ACMI, as the responding party, is not required to prepare the government's case or do its work. Furthermore, under the Rules the production of an index of all documents produced or in existence is not required. *See Braun v. Agri-Systems*, No. F-02-6482 A WILJO, 2006 WL 278592, *5 (D. Kan. Oct. 15, 2006) (unpublished opinion) ("An index, whether of documents produced or those in existence ... is not required under [Civil Rule of Procedure] 34."); *see also In re G.I. Holdings Inc.*, 218 F.R.D. at 439. ("If the producing party produces documents in the order in which they were kept in the usual course of business, the Rule imposes no duty to organize and label the documents."). The cost to ACMI of creating

a new work product index would be significant. It would also result in further delay in this case, while rewarding the government for its delay in seeking discovery from ACMI. Finally, providing the less than wholly reliable indices present the very real risk that the government would use those flawed indices to request access to more boxes. Yet when the boxes are opened and reviewed they could turn out to contain materials not indicated by the original index. In sum, ACMI could spend a significant amount of time pulling boxes and reviewing materials in which the government ultimately has no interest.

* * * * * * * *

Most importantly, as noted previously, the focus of this case should be on the government's work on Phase III of the contract, not on a fishing expedition by the government through ACMI's Phase II files. ACMI has already incurred a substantial financial and time burden in reviewing materials and responding to the government's request. The government inordinately delayed bringing its claims and seeking discovery. This Court should enter a protective order in accordance with ACMI's request and terminate any further government access to the ACMI's historical materials.

## III. Conclusion

For the foregoing reasons, and as set forth in ACMI's Cross-Motion for Protective Order and supporting papers, ACMI requests this Court order that ACMI is not required to produce any additional documents from its historical files, limit the production of electronic Laskowske documents to the current search terms proposed by the government, and provide that ACMI does not need to produce an index of all the documents in its possession.

.

Respectfully submitted,

/s/James D. Wareham
James D. Wareham, Attorney of Record
for Plaintiff
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128

Date: August 6, 2008
LEGAL USE 80437506.3

**CERTIFICATE OF SERVICE**

I hereby certify that this 6th day of August 2008 I caused a copy of the foregoing Plaintiff's Reply in Support of Cross-Motion for Protective Order to be served by ECF upon counsel for the Defendant as follows:

Dominique Kirchner
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530

/s/Kirby D. Behre
Kirby D. Behre