No. 06-867C
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMEC CONSTRUCTION MANAGEMENT, INC.,
(f/k/a Morse Diesel International, Inc.),

Plaintiff,

v.

UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND REQUEST FOR THE COURT'S EXPEDITED CONSIDERATION

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111

Of Counsel:

KENT C. KIFFNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

August 15, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

FACTS .......... 2

ARGUMENT .......... 6

I. Plaintiff Has Failed To Satisfy The Mandatory Regulations Governing Subpoenas Of Government Attorneys .......... 8

II. The Shelton Rule .......... 7

A. Plaintiff Has Failed To Establish That No Other Means Exist To Obtain The Information It Seeks .......... 10

B. The Information Sought Is Potentially Subject To The Work-Product Doctrine .......... 14

C. The Information Sought Is Not Crucial To Plaintiff's Case .......... 16

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

## CASES

Allergan Inc. v. Pharmacia Corp., No. 01-141-S
2002 U.S. Dist. LEXIS 19811 (D. Del. May 17, 2003) .......... 9

Auto Club Family Ins. Co. v. Provosty,
2006 U.S. Dist. LEXIS 55619 (E.D. La. Aug. 9, 2006) .......... 9

BB &T Corp. v. United States,
233 F.R.D. 447 (M.D.N.C. 2006) .......... 13

Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.,
2007 U.S. Dist. LEXIS 7775 (S.D. Fla. Feb. 2, 2007) .......... 10

Christensen Shipyards, Ltd. v. St. Paul Fire & Marine Ins. Co.,
2007 U.S. Dist. LEXIS 59105 (W.D. Wash. May 18, 2007) .......... 10

Commonwealth of Puerto Rico v. United States,
490 F.3d 50 (1st Cir. 2007) .......... 8

Dunkin' Donuts, Inc. v. Mandorico, Inc.,
181 F.R.D. 208 (D.P.R. 1998) .......... 9, 13

In re Echostar Commc'n Corp.,
448 F.3d 1294 (Fed. Cir. 2006) .......... 14

Engel v. Rapid City Sch. Dist.,
506 F.3d 1118 (8th Cir. 2007) .......... 9

England v. Sherman R. Smoot Corp.,
388 F.3d 844 (Fed. Cir. 2004) .......... 3

Exxon Shipping Co. v. U.S. Department of Justice,
34 F.3d 774 (9th Cir. 1994) .......... 8

Flink/Vulcan v. United States,
63 Fed. Cl. 292 (2004) .......... 3, 5

Gragg v. Int'l Mgmt. Group (UK), Inc.,
2007 U.S. Dist. LEXIS 25780 (N.D.N.Y. Apr. 5, 2007) .......... 9

Haithcox v. Geo Group, Inc.,
2008 WL 2487913 (D. Colo. 2008) ........ 8

Hickman v. Taylor,
329 U.S. 495 (1947) ........ 6, 15

Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578,
130 F.R.D. 348 (D.N.J. 1990) ........ 16

Kinetic Builders Inc. v. Peters,
226 F.3d 1307 (Fed. Cir. 2000) ........ 2

King-Fisher Co. v. United States,
58 Fed. Cl. 570 (2003) ........ 9

Kwan Fai Mak v. FBI,
252 F.3d 1089 (9th Cir. 2001) ........ 8

Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.,
2008 U.S. Dist. LEXIS 44707 (N.D. Ill. June 6, 2008) ........ 9

Nationwide Mut. Ins. Co. v. Home Ins. Co.,
278 F.3d 621 (6th Cir. 2002) ........ 9

N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,
117 F.R.D. 83 (M.D.N.C. 1987) ........ 7, 9, 10, 13

Sadowski v. Gudmundsson,
206 F.R.D. 25 (D.D.C. 2002) ........ 10

Shelton v. American Motors Corp.,
805 F.2d 1323 (8th Cir. 1986) ........ 7, 9, 12, 13

Sparton Corp. v. United States,
44 Fed. Cl. 557 (1999) ........ passim

Sporck v. Peil,
759 F.2d 312 (3d Cir. 1985) ........ 15

Thiessen v. G.E. Capital Corp.,
267 F.3d 1095 (10th Cir. 2001) ........ 9

United States v. Allen,
554 F.2d 398 (10th Cir. 1977) ........ 8

United States v. Soriano-Jarquin,
492 F.3d 495 (4th Cir. 2007) .......... 8

United States v. Vander Luitgaren,
2008 WL 2610465 (M.D. Fla. 2008) .......... 8

United States v. Wallace,
32 F.3d 921 (5th Cir. 1994) .......... 8

Upjohn Co. v. United States,
449 U.S. 383 (1981) .......... 15

Walker v. United Parcel Servs., Inc.,
87 F.R.D. 360 (E.D. Pa. 1980) .......... 16

Watts v. Securities and Exchange Comm.,
482 F.3d 501 (D.C. Cir. 2007) .......... 8

White v. Delta Const. Int'l, Inc.,
285 F.3d 1040 (Fed. Cir. 2002) .......... 2

Wilner v. United States,
24 F.3d 1397 (Fed. Cir. 1994)(en banc) .......... 2

## STATUTES

41 U.S.C. § 605 (a) .......... 2

41 U.S.C. § 609(a) .......... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC. (f/k/a Morse Diesel International, Inc.), | ) |
| Plaintiff, | ) |
| v. | ) No. 06-867C |
| | ) (Judge Braden) |
| UNITED STATES, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**
**AND REQUEST FOR THE COURT'S EXPEDITED CONSIDERATION**

Defendant, the United States, pursuant to Rule 26(c) of the Rules of the Court of Federal Claims ("RCFC"), respectfully requests issuance of a protective order precluding plaintiff from deposing and requesting the production of documents from Domenique Kirchner and Catherine Crow. On August 6, 2008, plaintiff issued notices of deposition and requests for production of documents directed to Ms. Kirchner and Ms. Crow, the depositions being proposed for Saturday, August 30, 2008 and Sunday, August 31, 2008, respectively.[1] Defendant also respectfully requests that the Court expedite consideration of this motion, direct plaintiff to file a response by August 23d, and resolve it as soon as possible. Ms. Kirchner is a trial attorney employed by the Civil Division of the Department of Justice and is lead litigation counsel representing the United States in this case. Ms. Crow is a litigation attorney for the General Services Administration ("GSA") and has assisted Ms. Kirchner in discovery and the preparation of this case for trial. Any information and documents that either Ms. Kirchner or Ms. Crow possess regarding any conceivable issue in this case was obtained in their capacities as litigation counsel. For the

[1] Plaintiff has not yet served the notices and subpoenas pursuant to RCFC 45 and the Touhy regulations.

reasons that follow, plaintiff's demands exceed the scope of discovery, and this Court should enter a protective order accordingly.

## FACTS

Plaintiff, with just weeks remaining until the discovery deadline, issued notices of deposition upon Ms. Kirchner and Ms. Crow on August 6, 2008. The Court-ordered deadline for lay discovery has been set for October 1, 2008.

In addition to the notices, plaintiff has attached Schedule A (the "Schedule"), which enumerates "[t]he documents to be produced and the matters on which examination is requested." Pl. Notice of Dep., p. 1. The Schedule lists seven document requests, focusing upon Ms. Kirchner and Ms. Crow's "participation in drafting, editing, revising, discussing, formatting, or working on the Government's claimed excess reprocurement costs," Pls. Notice of Dep., Schedule A, p. 6, their "attendance at and/or participation in meetings in 2007 . . . or at any other time between 1999 and present," id. at p. 7, and their "determination to change the format of the excess reprocurement costs demand letter or recalculation or revision to the contracting officer's final decision . . . ." Id.

The Court, at trial, will determine the Government's reprocurement costs de novo. Wilner v. United States, 24 F.3d 1397, 1402 (Fed. Cir. 1994) (en banc) (contracting officer's findings are not binding upon the parties and are not entitled to any deference); 41 U.S.C. § 605(a) (a contracting officer's findings are not "binding in any subsequent proceeding"); 41 U.S.C. § 609(a)(an action in a court on a claim "shall proceed de novo...."); Kinetic Builders Inc. v. Peters, 226 F.3d 1307, 1318 (Fed. Cir. 2000); White v. Delta Const. Int'l, Inc., 285 F.3d 1040, 1045 (Fed. Cir. 2002); England v. Sherman R. Smoot Corp., 388 F.3d 844, 856 (Fed. Cir.

2004) (contracting officer's unilateral contract modification and allowance of costs was not binding on the Government in litigation); Flink/Vulcan v. United States, 63 Fed. Cl. 292, 309-10 (2004).

As evidenced by the cover letter accompanying the notices of deposition, plaintiff seeks testimony and documents from Ms. Kirchner and Ms. Crow regarding "the Government's five different calculations of its excess costs of reprocurement . . . ." Letter of August 6, 2008. Accordingly, it is important to illustrate why three of the calculations are irrelevant to this dispute.

The first "calculation" that plaintiff refers to is contained in the contracting officer's final decision of March 21, 2006. That final decision requests reprocurement costs of $31,791,700.39. This amount, calculated by Martin Hom, includes a calculation of reprocurement costs and the liquidated damages imposed after the termination of the contract. The second "calculation" refers to a demand letter dated May 1, 2006, which indicates that the GSA is demanding a payment of $28,498,723.05. The third "calculation," a demand letter dated October 10, 2006, demands payment of $28,496,731.05. All three of these documents are based on the same $31.7 million calculation by Martin Hom, who plaintiff has deposed in this case.

The Government, however, has informed plaintiff that it has rejected Mr. Hom's calculation contained in the March 21, 2006 contracting officer's final decision. Specifically, plaintiff propounded the following interrogatory to the Government regarding these calculations:

> 11. State all facts forming the basis for the amounts, and the changes in the amounts, claimed in the GSA Contracting Officer decisions and/or repayment demands dated August 9, 2007; October 10, 2006; May 1, 2006; and March 21, 2006, and detail all discussions regarding the same.

Defendant's Response To Plaintiff's First Set of Interrogatories, p. 29. In response, the Government stated that the Government "has rejected the calculation made by Mr. Hom in the March 21, 2006 decision and related demands [dated May 1, 2006 and October 10, 2006] because it resulted in double counting of amounts, and such discovery is not reasonably calculated to lead to the discovery of relevant evidence." The Government further explain that the calculations contained in the May 1, 2006 decision differed from the March 21, 2006 decision as follows:

> (a) The amount of damages caused by Fan Terminal Unit ("FTU") hose was changed erroneously from $466,654.97 to $468,654.97, due to a typographical error.
>
> (b) The total amount was changed from $30,031,700.39 to $30,031,699.39 (a $1 difference) and labeled Final Decision Corrected Amount. The $30,031,699.39 was calculated using the correct amount of $466,654.97 for damages caused by FTU hose, despite $468,654.97 being listed in the document for that item. It also included GSA's second demand for debt repayment in the amount of $1,534,968.34, although it was not on the list on page 2.
>
> The calculations contained in the October 10, 2006 decision differ from the May 1, 2006 decision as follows:
>
> (a) The amount of damages caused by FTU hose failure was corrected back to $466,654.97.
>
> (b) The Final Decision Corrected Amount was changed from $30,031,699.39 to $28,496,731.05 and labeled "Demand Amount." The $28,496,731.05 did not include GSA's second demand for debt repayment in the amount of $1,534,968.34, which was not listed.

Id. The Government further explained that the problem with Mr. Hom's computation was that it resulted in double-counting of amounts, and that the Government had recomputed its damages using an excel spread sheet to ensure that there was no double counting:

> The calculations contained in the August 9, 2007 letter differ from all of the previous calculations because they use an excel spread sheet to perform the calculation. The calculations contained in the March 21, 2006 contracting officer's decision were made by Martin Hom, who drafted that decision for the contracting officer. The calculation may be explained by Mr. Hom, who is being deposed by plaintiff.
>
> The Government has rejected Mr. Hom's calculation contained in the March 21, 2006 contracting officer's decision because it resulted in double counting. Sandra Hadley, an accountant with David Cotton & Company, assisted GSA contracting officer Georgann Butler with the formulation of an excel spread sheet that was used by Ms. Butler in her August 9, 2007 calculation. The use of the excel spread sheet ensured that amounts were not counted twice in the calculation. The spread sheet was completed by Ms. Butler, with the assistance of Terry Page and Brent Daubach.
>
> Subsequently, Ms. Butler corrected various entries in the excel spread sheet and also inserted into the spreadsheet the amounts that make up the entries in columns 1-18 of the spreadsheet. She also made hand written notes and compiled documentation which traces amounts in the spread sheet to amounts in supporting documents, with the assistance of Terry Page and Brent Daubach. The revised spread sheet, list of revisions, and supporting documentation was provided to plaintiff's counsel on three CDRoms on May 28, 2008. In addition, on May 27, 2008, defendant's counsel provided plaintiff's counsel with a copy of the Jacobs Fan Terminal Unit ("FTU") report on a CDRom, which details the deficiencies with the FTUs, and includes numerous photographs. The state of the building as of the time of termination for default is also detailed in the documents contained on the discs provided to plaintiff's counsel with defendant counsel's letters dated September 8, 2006 and December 15, 2006, the CRSS August 11, 1999 Phase II Termination Building Status Assessment, photographs and videos.

Id. at 29-32 (emphasis added).

The fourth "calculation," the August 9, 2007 recalculation, is the result of the completion of an Excel spreadsheet, which ensured that components were not counted twice in the computation. The Government's response to plaintiff's interrogatory makes this clear. See also Telephonic Conference of June 22, 2007 Tr. at 17-18 ("June 22, 2007 Tr. at 17-18"). Contracting officer Georgann Butler of the GSA was primarily responsible for the August 9, 2007 computation, and plaintiff intends to depose her in September of 2008.

The fifth and final "calculation" is a revision to the August 9, 2007 computation, dated July 2, 2008, derived by correcting entries in the Excel spreadsheet. The final total according to the July 2, 2008 revision is $18,001,262.04. Like the August 9, 2007 total, Ms. Butler was primarily responsible for the July 2, 2008 computation. Plaintiff will have adequate opportunity to depose her regarding these figures in September.

Ms. Kirchner and Ms. Crow do not possess any information that is both relevant and non-privileged, or not work-product. Any documents that they possess are either duplicates of documents already provided to plaintiff, or documents that are privileged or work-product. A protective order is therefore necessary to avoid further unnecessary discovery disputes, disruption to the adversarial system, and interference with Government counsel's preparation of the Government's case.

## ARGUMENT

While RCFC 26 provides for broad discovery, the scope of the Rule is not unlimited. RCFC 26(b)(2)(C) permits the Court to limit otherwise permissible discovery methods if the discovery requested "is unreasonably cumulative or duplicative, or is obtainable from some other

source that is more convenient, less burdensome, or less expensive." This limitation applies with even greater urgency where the discovery sought is testimony from an adversary's trial counsel. See generally Hickman v. Taylor, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."). Courts therefore generally disfavor deposition of opposing trial counsel:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). Generally speaking, courts have held that "a request to take the deposition of a party's attorney . . . constitutes a circumstance justifying departure from the normal rule" against precluding depositions in their entirety. N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 84 (M.D.N.C. 1987). This case is no different, except that a party seeking to depose a Department of Justice attorney and a General Services attorney must also satisfy long-standing regulatory requirements.

## I. Plaintiff Has Failed To Satisfy The Mandatory Regulations Governing Subpoenas Of Government Attorneys

The Department of Justice (DOJ) and the General Services Administration (GSA) both have issued regulations pursuant to the Housekeeping Act, 5 U.S.C. § 301, which authorizes

Federal agencies to promulgate regulations to govern the conditions and procedures by which agency employees and former employees may respond to subpoenas or testify about work related issues in state and federal proceedings, including federal proceedings in which the United States is a party. 28 C.F.R. § 16.21(a)(1); United States v. Soriano-Jarquin, 492 F.3d 495, 504 (4th Cir. 2007); Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 61-62 (1st Cir. 2007); Watts v. Securities and Exchange Comm., 482 F.3d 501, 508-09 (D.C. Cir. 2007); Kwan Fai Mak v. FBI, 252 F.3d 1089, 1092 (9th Cir. 2001); Exxon Shipping Co. v. U.S. Department of Justice, 34 F.3d 774 (9th Cir. 1994); United States v. Wallace, 32 F.3d 921, 929 (5th Cir. 1994) (applying DOJ Touhy regulations); United States v. Allen, 554 F.2d 398, 406 (10th Cir. 1977) (same).

To comply with these regulations, a litigant wishing to obtain documents or testimony from a Government employee must serve the subpoena as provided in the regulations, and meet additional requirements set forth in the regulations. The DOJ Touhy regulations are set forth at 28 C.F.R. § 16.21 et seq., and the GSA Touhy regulations are set forth at 41 C.F.R. § 105-60.901 et seq. For example, the regulations state that "[i]f oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handline the case or matter." 28 C.F.R. § 16.23(c); see 41 C.F.R. § 195-60.605(c)(1). Plaintiff has made no efforts to comply with this and the other requirements of the Touhy regulations. Haithcox v. Geo Group, Inc., 2008 WL 2487913 (D. Colo. 2008) (quashing subpoena for lack of compliance with Touhy regulations); United States v. Vander Luitgaren, 2008 WL 2610465 (M.D. Fla. 2008) (quashing

subpoena issued to Assistant United States Attorney).

## II. The Shelton Rule

Shelton, the leading case regarding the issue of deposing an adversary's trial counsel, adopted a three-prong test to determine when a deposition is appropriate. Shelton, 805 F.2d at 1327; Engel v. Rapid City Sch. Dist., 506 F.3d 1118, 1127 (8th Cir. 2007). According to Shelton, plaintiff must show (1) that no other means exist to obtain the information it seeks except to depose opposing counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to its case. Id. Failure to establish any of the three prongs precludes a party from deposing an adversary's counsel. Thiessen v. G.E. Capital Corp., 267 F.3d 1095, 1112 (10th Cir. 2001) (Party's failure to meet the first requirement renders it "unnecessary to address the district court's ruling on the second Shelton requirement").

While the Federal Circuit has yet to formally adopt Shelton, the Court of Federal Claims followed it in Sparton Corp. v. United States, 44 Fed. Cl. 557, 563 (1999) and King-Fisher Co. v. United States, 58 Fed. Cl. 570 (2003). Moreover, both the Sixth Circuit and the Tenth Circuit have followed Shelton. Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 628 (6th Cir. 2002); Thiessen, 267 F.3d at 1112. And district courts in the First Circuit, Dunkin' Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208, 210 (D.P.R. 1998), the Second Circuit, Gragg v. Int'l Mgmt. Group (UK), Inc., No. 5:03-CV-0904, 2007 U.S. Dist. LEXIS 25780, at *29-30 (N.D.N.Y. Apr. 5, 2007), the Third Circuit, Allergan Inc. v. Pharmacia Corp., No. 01-141-SLR, 2002 U.S. Dist. LEXIS 19811, at *2-4 (D. Del. May 17, 2003), the Fourth Circuit, N.F.A. Corp., 117 F.R.D. at 84, the Fifth Circuit, Auto Club Family Ins. Co. v. Provosty, No. 05-6482, 2006 U.S. Dist. LEXIS 55619, at *8-9, (E.D. La. Aug. 9, 2006), the Seventh Circuit, Miyano Mach. USA, Inc. v.

Miyanohitec Mach., Inc., No. 08 C 526, 2008 U.S. Dist. LEXIS 44707, at *24-28 (N.D. Ill. June 6, 2008), the Ninth Circuit, Christensen Shipyards, Ltd. v. St. Paul Fire & Marine Ins. Co., No. C06-0641-JCC, 2007 U.S. Dist. LEXIS 59105, at *2-6 (W.D. Wash. May 18, 2007), the Eleventh Circuit, Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., No. 04-80090-CIV-COHN, 2007 U.S. Dist. LEXIS 7775, at *11-12 (S.D. Fla. Feb. 2, 2007), and the D.C. Circuit, Sadowski v. Gudmundsson, 206 F.R.D. 25 (D.D.C. 2002), have all followed the three-part analysis. We will therefore analyze this issue under each of the three prongs.

### A. Plaintiff Has Failed To Establish That No Other Means Exist To Obtain The Information It Seeks

The first Shelton inquiry establishes an exceptionally high burden. To satisfy this inquiry, plaintiff "must demonstrate that the deposition is the only practical means available of obtaining the information" requested. N.F.A., 117 F.R.D. at 86 (emphasis added); see also Sparton, 44 Fed. Cl. at 663 (emphasizing that these types of depositions are permissible where "the proposed deposition of the government's attorney is the only means of" acquiring the information sought.) Indeed, "if there are other persons available who have the information, they should be deposed first." N.F.A., 117 F.R.D. at 86.

Sparton, which involved allegedly improper use of patented inventions by the United States Department of the Navy, provides strong support for the Government's position in this case. Sparton, 44 Fed. Cl. at 559. The Navy, after receiving notice of a dispute, assigned the matter to an attorney in the Office of the Chief of Naval Research, who investigated the claim and ultimately recommended settling the matter. Id. The parties later sparred over the settlement agreement, and the matter proceeded to formal litigation. Id. Sparton Corporation sought to

depose the Navy's attorney during discovery, arguing that it was "the only means of eliciting [counsel's] presumably relevant knowledge of the background contractual and technical materials he reviewed during his investigation . . . ." Id. at 560. The Government, in response, moved pursuant to RCFC 26(c) for a protective order precluding the deposition. Id. at 559.

The Court of Federal Claims granted the Government's motion, relying on the Shelton factors set forth above. Id. at 568. In applying the first Shelton prong, the Court reasoned that "Sparton has not demonstrated than an adequate effort was made to obtain the information it seeks from alternate sources before seeking to depose" opposing counsel, i.e., "that the information sought was not available from other potential witnesses who were not directly involved in counseling the parties . . . ." Id. Sparton Corporation's failure to meet this high burden necessitated a protective order pursuant to RCFC 26(c).

So it is with plaintiff's demand to depose and request the production of documents from Ms. Kirchner and Ms. Crow. Like the movant in Sparton, plaintiff has made no showing that it has exhausted – or, indeed, even pursued – other discovery options at this point in the litigation. Plaintiff seeks to inquire about Ms. Kirchner and Ms. Crow's involvement, among other things, "in drafting, editing, revising, discussing, formatting, or working on the Government's claimed excess reprocurement costs . . . and/or documents related to any future revised calculations that are currently in progress or being worked on . . . ." Pls. Notice of Dep., Schedule A, p. 6. To the extent plaintiff seeks information regarding the Government's reprocurement costs or calculations, it has already deposed Terry Page of Jacobs Facilities on June 6, 2008. Plaintiff also deposed Mr. Hom on June 25, 2008. Mr. Hom was the individual responsible for calculating the $31 million amount in the final decision of the contracting officer dated March

21, 2006. His figures were also used in the agency demand letters dated May 1, 2006 and October 10, 2006. None of this, of course, is relevant to the Government's position, because, as noted above, the Government has specifically rejected Mr. Hom's computation. Furthermore, plaintiff is scheduled to depose Ms. Butler in September of 2008.

Each of these individuals was directly involved with the computation of reprocurement costs to the Government, and, specifically, plaintiff is well aware of Ms. Butler's intimate involvement with the calculation of reprocurement costs for the letters dated August 9, 2007 and July 2, 2008. Any potential testimony from either Ms. Kirchner or Ms. Crow – to the extent it does not fall within the protective enclaves of the attorney-client privilege or the work-product doctrine – would be duplicative of the testimony already obtained from Mr. Page and Mr. Hom, and of the testimony soon to be had from Ms. Butler. Until plaintiff deposes Ms. Butler and exhausts alternative avenues of discovery, it cannot possibly meet its burden according to Shelton.

Furthermore, Ms. Kirchner and Ms. Crow, as counsel working on the litigation, do not have "independent knowledge of the facts underlying the litigation." Sparton, at 561-62. Like agency counsel in Sparton any information regarding reprocurement costs that Ms. Kirchner and Ms. Crow possess "would have been conveyed to [them] by [their] client . . . or learned in the course of investigating" the claim. Id. at 562. This information, to the extent non-privileged, should be extracted from fact witnesses before an attempt is made to depose the Government's counsel.

Even assuming for argument's sake that plaintiff can show a need to obtain information from either Ms. Kirchner or Ms. Crow, it is unclear why plaintiff cannot use less intrusive

methods of discovery. See, e.g., N.F.A. Corp., 117 F.R.D. at 86 (noting that "other methods, such as written interrogatories[,] which do not involve the same dangers as an oral deposition, should be employed."); see also BB&T Corp. v. United States, 233 F.R.D. 447, 450 (M.D.N.C. 2006) ("until a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery."); Dunkin' Donuts, 181 F.R.D. at 211.

Finally, an additional factor weighs heavily in the Government's favor. In Sparton, the plaintiff attempted to depose an attorney who had previously worked on a matter that resulted in litigation. Sparton did not involve the deposition of the Government's trial counsel, which, if anything, is entitled to even greater protection under the discovery rules. Plaintiff's request in this case, which will inevitably result in more discovery disputes, more forays into the areas of the attorney-client privilege and work-product doctrine, and possibly even the disqualification of Ms. Kirchner as lead trial counsel, is, it can be safely asserted, more deserving of a protective order than that in Sparton. See, e.g., N.F.A. Corp., 117 F.R.D. at 86 ("The only apparent benefit defendant would receive from this procedure is perhaps obtaining the disqualification of Mr. Green as an attorney in this case. The Court will not permit that result without an extremely high showing of necessity, which defendant has not done.") (emphasis added). And all of this before plaintiff has exhausted discovery of an important witness like Ms. Butler.

Given the discovery alternatives available, as well as the established practice that deposing an adversary's counsel "should be employed only in limited circumstances," Shelton, 805 F.2d at 1327, this Court should grant the Government's motion for a protective order with respect to the noticed depositions of both Ms. Kirchner and Ms. Crow.

**B. The Information Sought Is Potentially Subject To The Work-Product Doctrine**

The second Shelton prong requires plaintiff to establish that the testimony and documents requested are relevant and non-privileged. Shelton, 805 F.2d at 1327. Importantly, it is not the Government's burden to establish the existence of a privilege with respect to the testimony or documents requested. As with all three of the Shelton inquiries, the burden rests on plaintiff to establish the non-existence of any privilege. Plaintiff's document requests, which will form the basis for its deposition questioning, focus on "attendance at and/or participation in meetings" regarding the calculation of reprocurement costs. Inevitably, some of this information will fall within the protection of the work-product doctrine.

The basis for the work-product doctrine is found in RCFC 26(b)(3). The Federal Circuit has held, however, that the Rule actually creates two distinct forms of work-product protection. In re Echostar Commc'n Corp., 448 F.3d 1294, 1301-02 (Fed. Cir. 2006). The first form – "factual" or "non-opinion" work product – is qualified work product and is discoverable as provided by RCFC 26(b)(3). A party may obtain discovery of factual work product by a showing of "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent . . . by other means." RCFC 26(b)(3). The "undue hardship" inquiry, which allows for limited discovery of otherwise protected material, is what qualifies the protection given to this form of work product. Sparton, 44 Fed. Cl. at 564. That this inquiry sounds familiar is not surprising. Like the Shelton requirement, plaintiff must show, in order to obtain factual work product, that it cannot get the information anywhere else without "undue hardship." See, e.g., Shelton, 805 F.2d at 1327 ("no

other means exist to obtain the information than to depose opposing counsel."). As illustrated above, plaintiff has failed to exhaust other discovery avenues and cannot, at this time, claim any undue hardship necessitating discovery of the factual work product it seeks to acquire.

The second form of work product involves the opinions or legal analyses of an attorney. See RCFC 26(b)(3). The protection given to attorney opinions, mental impressions, and legal conclusions, unlike factual work product, is not qualified. The "proper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue influence and needless interference." Hickman, 329 U.S. at 510-11. Thus, "notes and impressions of oral statements of witnesses interviewed in the course of preparing for litigation are also a form of opinion work product." Sparton, 44 Fed. Cl. at 564 (citing Upjohn Co. v. United States, 449 U.S. 383, 400-01 (1981)). Moreover, Sparton specifically noted that "[t]he selection and compilation of documents by counsel in preparation for pretrial discovery and litigation has repeatedly been held to fall within the highly protected category of opinion work product." Id. (citing Shelton, 805 F.2d at 1329; Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985)). It is therefore evident, even under a narrow reading of plaintiff's demands, that its request will undoubtedly result in further clashes over the applicability of the work-product doctrine. And, according to Shelton and its progeny, it is plaintiff's burden to establish the non-privileged nature of the documents and information if it desires to depose and request documents from Ms. Kirchner and Ms. Crow. Sparton, 44 Fed. Cl. at 568 (requiring a party to establish "that the requested deposition is appropriate and necessary to its case.").

Plaintiff will not be able to show the non-existence of a privilege with respect to the

documents and testimony it seeks. Consistent with this failure, this Court should grant the Government's motion for protective order with respect to the proposed depositions of both Ms. Kirchner and Ms. Crow.

### C. The Information Sought Is Not Crucial To Plaintiff's Case

The final Shelton requirement, which the Court need not consider if it finds that plaintiff failed to establish either of the first two elements, asks whether the information sought is crucial to plaintiff's case. Information is crucial when it is especially important to a claim or defense of a party. This inquiry focuses on the necessity of the testimony to establishing a claim or a defense, regardless of the source. "The deposition of an adverse attorney on central factual issues, rather than peripheral concerns, would weigh more heavily" in favor of the proposed discovery. Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 353 (D.N.J. 1990); accord, Walker v. United Parcel Servs., Inc., 87 F.R.D. 360, 362 (E.D. Pa. 1980) (denying deposition where the attorney's role was not central to the underlying dispute).

Plaintiff cannot establish that Ms. Kirchner or Ms. Crow's testimony – and, in some instances, potentially protected work product – is crucial to its defense in this reprocurement action. This Court, on June 22, 2007, received assurances from the Government during a telephonic conference that the boxes of documents regarding Phase III of the construction of the St. Louis Courthouse and any documents regarding Ms. Butler's recalculation figures would be individually reviewed for privileged material and turned over to plaintiff. June 22, 2007 Tr. at 17-18. The Government has fulfilled its obligation regarding those documents. Indeed, given the Court's admonition during the June 22, 2007 conference, the Government, wishing to avoid any appearance of the abuse of the privilege, took a very narrow view of work product and other

privileges and turned over all documents that were not clearly protected. Id. at 23, 26-27 ([redacted]). Plaintiff now possesses all the relevant, discoverable information it needs to depose Ms. Butler and conclude its discovery in this case. Any non-privileged material that Ms. Kirchner or Ms. Crow could provide will also be obtainable from Ms. Butler and would therefore be duplicative. These depositions are not crucial to plaintiff's case, and the Government requests that this Court grant its motion for a protective order with respect to the proposed depositions and requests for production of documents directed to both Ms. Kirchner and Ms. Crow.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court enter an order granting this motion for a protective order.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:

KENT C. KIFFNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

August 11, 2008