Case No. 06-867
(Judge Braden)

UNITED STATES COURT OF FEDERAL CLAIMS

AMEC CONSTRUCTION MANAGEMENT, INC.,
f/k/a Morse Diesel International, Inc.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR A RULING ON PLAINTIFF'S CHALLENGE TO THE JUNE 1999 TERMINATION FOR DEFAULT


Of Counsel:

KENT C. KIFFNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624


August 28, 2008

Attorneys for Defendant

# TABLE OF CONTENTS


DEFENDANT'S BRIEF ........ 2

Statement of The Issues ........ 2

STATEMENT OF THE CASE ........ 2

I. Nature of the Case ........ 2

II. Statement of Relevant Facts ........ 3

ARGUMENT ........ 4

I. Plaintiff's Challenge To The June 1999 Termination For Default Of MDI Is Precluded ........ 4

II. The Default Termination Is Sustained Because Of Morse Diesel's Fraud And Kickback ........ 6

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

## CASES

Acme Process Equipment Co.,
385 U.S. 138 (1966) .......... 7, 8

Agostini v. Felton,
521 U.S. 203 (1997) .......... 5

Arizona v. California,
460 U.S. 605 (1983) .......... 5

Carrier Corp. v. United States,
164 Ct. Cl. 666,
328 F.2d 328 (1964) .......... 6

Cascade Pac. In't v. United States,
773 F.2d 287 (Fed. Cir. 1985) .......... 2

Christianson v. Cot Indus. Operating Corp.,
486 U.S. 800 (1988) .......... 5

Christopher Village v. United States,
360 F.3d 1319 (Fed. Cir. 2004) .......... 8

Cosmos Engineers, Inc., ASBCA No. 23529,
84-2 BCA ¶ 17,268 (1984) .......... 9

Daff v. United States,
31 Fed. Cl. 682 (1994), aff'd,
78 F.3d 1566 (Fed. Cir. 1996) .......... 6, 7, 8

Dry Roof Corp., ASBCA No. 29061,
88-3 BCA ¶ 21,096 (1998) .......... 9

Florida Power & Light Co. v. United States,
66 Fed. Cl. 93 (2005) .......... 5

Geisler v. United States,
232 F.3d 864 (Fed. Cir. 2000) .......... 2

Holland v. United States,
75 Fed. Cl. 492 (2007) .......... 4

Intergraph Corp. v. Intel Corp.,
253 F.3d 695 (Fed. Cir. 2001) ........ 4, 5

J.E.T.S., Inc. v. United States,
838 F.2d 1196 (Fed. Cir.), cert. denied,
486 U.S. 1057 (1988) ........ 7

Joseph Morton Co. v. United States,
757 F.2d 1273 (Fed. Cir. 1985) ........ 6, 7, 8

Kelso v. Kirk Bros. Mech. Contractors, Inc.,
16 F.3d 1173 (Fed. Cir. 1994) ........ 6

Lamb Engineering & Constr. Co. v. United States,
2002 WL 32933387 (Fed. Cl. 2002) ........ 7, 8

Lassiter v. United States,
60 Fed. Cl. 265 (2004) ........ 2

Mega Const. Co. v. United States,
29 Fed. Cl. 396 (1993) ........ 2

Messenger v. Anderson,
225 U.S. 436 (1912) ........ 4

Morse Diesel Int'l v. United States,
74 Fed. Cl. 601 (2007) ........ passim

Perkin-Elmer Corp. v. Computervision Corp.,
732 F.2d 888 (Fed. Cir. 1984) ........ 5

Pots Unlimited, Ltd. v. United States,
220 Ct. Cl. 405,
600 F.2d 790 (1979) ........ 6

Ricmar Engineering, Inc., ASBCA No. 44260,
97-2 BCA ¶29,084 (1997) ........ 8

Rumley v. United States,
152 Ct. Cl. 166,
285 F.2d 773 (1961) ........ 2

Samuel T. Isaac & Associates v. United States,
7 Cl. Ct. 255 (1985) ........ 7, 8

Suel v. Sec'y of Health & Human Servs.,
192 F.3d 981 (Fed. Cir. 1999) .......... 5

Tester Corp. v. United States,
1 Cl. Ct. 370 (1982) .......... 2

Timber Products, Co. v. United States,
515 F.3d 1213 (Fed. Cir. 2008) .......... 4

Umpqua Excavation & Paving Co., AGBCA No. 84-185-1,
91-1 BCA ¶ 23,452 (1990) .......... 9

Wolfchild v. United States,
68 Fed. Cl. 779 (2005) .......... 5

**STATUTES**

41 U.S.C. §§ 51-58 (2000) .......... 8

41 U.S.C. § 609(a)(1) .......... 2

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc., Plaintiff, | ) | Case No. 06-867 (Judge Braden) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S MOTION FOR A RULING ON PLAINTIFF'S CHALLENGE TO THE JUNE 1999 TERMINATION FOR DEFAULT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), defendant respectfully requests that the Court enter a ruling that plaintiff is precluded from challenging the June 16, 1999 termination for default of Morse Diesel International, Inc. (Morse Diesel or ACMI) by the January 2007 decision of this Court in Morse Diesel Int'l, Inc. v. United States, Fed. Cl. No. 99-279 and consolidated cases. Morse Diesel Int'l v. United States, 74 Fed. Cl. 601, 628, 636 n.21 (2007) (Morse Diesel III). This Court already has ruled that Morse Diesel's challenge to the June 16, 1999 termination of default on the St. Louis Courthouse Phase II contract has been forfeited. Id.

In the alternative, defendant respectfully requests that the Court enter a ruling that the June 16, 1999 termination for default is sustained because of Morse Diesel's fraud and kickback on the St. Louis Courthouse Phase II contract. Further, Morse Diesel's felony guilty plea on the St. Louis Courthouse Phase II contract is entitled to collateral estoppel effect and establishes Morse Diesel's fraud on the Phase II contract. Morse Diesel's fraud and kickback are proper grounds for sustaining the June 16, 1999 termination for default.

Upon a proper termination for default, the Government is entitled to reimbursement of its

costs of completing the project in addition to liquidated damages. Mega Const. Co. v. United States, 29 Fed. Cl. 396, 483-85 (1993). Thus, where a termination for default is sustained, this Court's inquiry at trial is limited to determining the amount of reasonable reprocurement costs and the liquidated damages due the Government. See Cascade Pac. In't v. United States, 773 F.2d 287, 291, 293 (Fed. Cir. 1985) ("The measure of damages is the reasonable reprocurement price less the original contract price."); Geisler v. United States, 232 F.3d 864, 877 (Fed. Cir. 2000) ("government is entitled to prevail on its counterclaim for excess reprocurement costs"); Lassiter v. United States, 60 Fed. Cl. 265, 270-71 (2004) (Government proved that its reprocurement costs were reasonable). The Government also may assert common-law remedies. Rumley v. United States, 152 Ct. Cl. 166, 171-72, 285 F.2d 773, 777 (1961); Tester Corp. v. United States, 1 Cl. Ct. 370, 373 (1982).

## DEFENDANT'S BRIEF

### Statement of The Issues

Whether plaintiff's challenge in this case to the June 16, 1999 termination for default of plaintiff on the St. Louis Courthouse Phase II contract is precluded by this Court's decision in Morse Diesel Int'l v. United States, 74 Fed. Cl. 601, 628, 636 n.21 (2007) (Morse Diesel III).

Whether the June 16, 1999 termination for default of plaintiff's St. Louis Courthouse Phase II contract is sustained because of Morse Diesel's fraud and kickback on that contract.

## STATEMENT OF THE CASE

### I. Nature of the Case

Morse Diesel International, Inc. changed its name to AMEC Construction Management, Inc. (ACMI). Plaintiff's case is brought under the Contract Disputes Act, 41 U.S.C. § 609(a)(1),

and arises from plaintiff's challenge to the contracting officer's final decision, dated March 21, 2006. That final decision requested reprocurement costs of $31,791,700.39. This amount, calculated by Martin Hom, included a calculation of reprocurement costs and liquidated damages assessed following the termination of the contract. The Government, however, has rejected Mr. Hom's calculation that was contained in the March 21, 2006 contracting officer's final decision.

On July 9, 2007, this Court granted the Government's motion for a stay. Thereafter, contracting officer Georgann Butler completed a calculation of the Government's reprocurement costs. This calculation, dated August 9, 2007, was the result of the completion of an Excel spreadsheet, which ensured that items were not counted twice in the computation. The total amount of reprocurement costs computed was $17,343,711.03, including liquidated damages of $1,760,000.00. Subsequently, Ms. Bulter made corrections in the Excel spreadsheet which resulted in a total amount of reprocurement costs of $18,001,262.04, which includes liquidated damages of $1,760,000.00.

II. Statement of Relevant Facts

On June 16, 1999, the General Services Administration (GSA) terminated Morse Diesel's contract for Phase II of the St. Louis Courthouse for default. Morse Diesel III, 74 Fed. Cl. at 607. On July 29, 1999, plaintiff brought suit in this Court challenging the agency's decision in Fed. Cl. No. 99-529C. Morse Diesel III, 74 Fed. Cl. at 627.

In its amended complaint in this case, ACMI again challenges the same June 16, 1999 termination for default that was at issue in Fed. Cl. No. 99-529C. See September 28, 2007 Amended Compl. ¶¶ 6-19. Further, in its amended complaint, ACMI acknowledges that, in 2007, this Court issued a determination on ACMI's liability. Amended Compl. ¶ 22. ACMI

asserts that the Court's 2007 ruling is in error and that ACMI intends to appeal. Id. ACMI also states that "it contends that notwithstanding that ruling, it is proper for ACMI to maintain its position, in this proceeding, that the May (sic) 1999 termination for default was proper." Id. In addition, in Counts II and III of the Amended Complaint, ACMI contends that, because the termination for default was improper, the assessment of liquidated damages also is improper, and the default termination should be converted to a termination for convenience which "invalidates the Government's claim for reprocurement costs." Amended Compl ¶¶ 33-34, 36-37.

In January 2007, this Court ruled that Morse Diesel's challenge to the June 16, 1999 termination for default on the St. Louis Courthouse Phase II contract has been forfeited. Morse Diesel Int'l v. United States, 74 Fed. Cl. 601, 628, 636 n.21 (2007). The Court also ruled that Morse Diesel engaged in fraud and kickbacks on the Phase II contract. Id. at 608, 614, 628. The Court's determination that Morse Diesel engaged in fraud on the Phase II contract was based in significant part upon Morse Diesel's felony guilty plea to fraud. Id. at 628, 636.

ARGUMENT

I. Plaintiff's Challenge To The June 1999 Termination For Default Of MDI Is Precluded

In its January 2007 decision, this Court ruled that plaintiff's challenge to the June 16, 1999 termination of default on the St. Louis Courthouse Phase II contract was forfeited. Morse Diesel v. United States, 74 Fed. Cl. 601, 628, 636 n.21 (2007).

This ruling is the law of the case and precludes plaintiff's challenge to the termination for default in this case. "The doctrine of law of the case generally bars retrial of issues that were previously resolved." Intergraph Corp. v. Intel Corp., 253 F.3d 695, 697 (Fed. Cir. 2001) (citing Messenger v. Anderson, 225 U.S. 436, 444 (1912) (law of the case doctrine "expresses the

practices of courts generally to refuse to reopen what has been decided")). Accord, Timber Products, Co. v. United States, 515 F.3d 1213, 1220 (Fed. Cir. 2008); Holland v. United States, 75 Fed. Cl. 492, 494 n.2 (2007); Wolfchild v. United States, 68 Fed. Cl. 779, 785 (2005); Florida Power & Light Co. v. United States, 66 Fed. Cl. 93, 95-96 (2005). The law of the case doctrine prevents a court from "reopen[ing] issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997). While a court has authority to revisit its prior rulings, it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Cot Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n. 8 (1983)).

The law of the case "doctrine insures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness-a litigant given one good bite at the apple should not have a second." Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900 (Fed. Cir. 1984). The doctrine "protects the settled expectations of the parties and promotes orderly development of the case." Suel v. Sec'y of Health & Human Servs., 192 F.3d 981, 984 (Fed. Cir. 1999).

"Reasons that may warrant departure from the law of the case . . . include the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." Intergraph Corp., 253 F.3d at 698; Wolfchild, 68 Fed. Cl. at 785.

In the instant case, there are no reasons to depart from the Court's rulings, which are the

law of the case. There has been no intervening change of controlling legal authority, or any new and materially different evidence that would alter the Court's ruling that plaintiff's challenge to the default termination has been forfeited. Accordingly, the Court's ruling sustaining the default termination in Fed. Cl. No. 99-529, is the law of this case. Therefore, the Court should dismiss Counts II and III of ACMI's Amended Complaint, which are based upon its assertion that the default termination was improper.

In the alternative, plaintiff's challenge to the June 16, 1999 termination for default should be rejected because Morse Diesel engaged in fraud and kickbacks on the Phase II contract.

II. The Default Termination Is Sustained Because Of Morse Diesel's Fraud And Kickback

The court "sustains a default termination if justified by circumstances at the time of termination, regardless of whether the Government originally removed the contractor for another reason." Kelso v. Kirk Bros. Mech. Contractors, Inc., 16 F.3d 1173, 1175 (Fed. Cir. 1994); accord Pots Unlimited, Ltd. v. United States, 220 Ct. Cl. 405, 600 F.2d 790, 793 (1979).

"Fraud taints everything it touches." Carrier Corp. v. United States, 164 Ct. Cl. 666, 678, 328 F.2d 328 (1964). Thus, the United States Court of Appeals for the Federal Circuit has held that fraud on a contract "warrants termination as a matter of law." Joseph Morton Co. v. United States, 757 F.2d 1273, 1279 (Fed. Cir. 1985). In Joseph Morton, the Federal Circuit affirmed the Claims Court's decision that the contractor's conviction for submission of false documentation with respect to a single change order justified the Government's default termination of the contract, even though fraud was not the reason the Government originally removed the contractor. The Federal Circuit also rejected the contractor's argument that the court "should perform a balancing test between its one fraudulent act and the amount of work performed 'free'

of fraud . . . ." Id. at 1278.

Likewise, the Federal Circuit affirmed the decision in Daff v. United States, 31 Fed. Cl. 682 (1994), aff'd, 78 F.3d 1566 (Fed. Cir. 1996), where this Court held that "proof of fraud by clear and convincing evidence is a ground for default termination" of a Federal contract. Daff, 31 Fed. Cl. at 688, citing Joseph Morton, 757 F.2d at 1278-79, and Acme Process Equipment Co., 385 U.S. 138, 144-48 (1966).

Also, in Lamb Engineering & Constr. Co. v. United States, 2002 WL 32933387 at *7 (Fed. Cl. 2002), the Court granted summary judgment and sustained a termination for default based upon the contractor's false certifications that it had timely paid its subcontractors. The court there held that the false statements in connection with the payment applications "gives the government grounds for terminating the entire contract for default." Id. at *7.

Also, in Samuel T. Isaac & Associates v. United States, 7 Cl. Ct. 255, 257, 258 (1985), the Court granted summary judgment and sustained a termination for default based upon a guilty plea to fraud, embezzlement, obtaining money by false pretenses and other similar financial crimes where most of the criminal activity took place prior to termination, but the conviction was entered after termination.

On December 12, 2000, Morse Diesel pleaded guilty to a felony for supplying the Government with a false certification and a false bond invoice on the Phase II contract. Morse Diesel III, 74 Fed. Cl. at 614, 618-19. As this Court ruled, Morse Diesel is bound by the factual and legal stipulations made in connection with that felony guilty plea, and Morse Diesel engaged in fraud on the Phase II contract. Morse Diesel III, 74 Fed. Cl. at 614, 618-19. Accord J.E.T.S., Inc. v. United States, 838 F.2d 1196, 1200-01 (Fed. Cir.) (according collateral estoppel effect to a

guilty plea to fraud), cert. denied, 486 U.S. 1057 (1988). In addition, this Court ruled that based on uncontroverted evidence Morse Diesel engaged in a kickback on the Phase II contract. Id. at 622. The Government, therefore, is entitled to a ruling sustaining the Government's default termination of the Phase II contract because of Morse Diesel's fraud and kickback on that contract. Joseph Morton Co., 757 F.2d at 1279; Daff, 31 Fed. Cl. at 688; Lamb Engineering, 2002 WL 32933387 at *7; Samuel T. Isaac & Associates, 7 Cl. Ct. at 257, 258.

Further, Christopher Village v. United States, 360 F.3d 1319, 1336-37 (Fed. Cir. 2004), acknowledges the holding in Joseph Morton that the contractor's conviction of conspiracy to defraud the Government "justified the default termination because '[i]t is settled law that a party can justify a termination if there existed at the time an adequate cause, even if then unknown.'" Id. The Court held:

> [O]ur case law holds that **any degree of fraud is material as a matter of law**. [citing Joseph Morton, 757 F.2d at 1278] This is particularly true in light of Congress' express prohibition of kickbacks reflected in the Anti-Kickback Act of 1986, 41 U.S.C. §§ 51-58 (2000) [citing Acme Process, 385 U.S. at 144-45]. Our court, in turn, has "unscore[d] the necessity for the Government to be secure in its confidence in its contractors." Joseph Morton, 757 F.2d at 1278.

Id. at 1335 (emphasis added). Morse Diesel's fraud as a matter of law is sufficient to justify the Government's termination of the Phase II contract. Thus, in accordance with Christopher Village, this Court should sustain the default termination of the St. Louis Phase II contract on the basis of Morse Diesel's felony guilty plea. The default termination is also justified by the undisputed evidence that Morse Diesel violated the Anti-Kickback Act when it knowingly submitted claims for reimbursement of bond "costs" that included a kickback to its parent and

indemnitor, AMEC, plc. See also Ricmar Engineering, Inc., ASBCA No. 44260, 97-2 BCA ¶ 29,084 (1997) (contractor "breached the contract when it conspired to submit the fraudulent progress payment invoice" and the fraud was grounds for sustaining termination for default); Dry Roof Corp., ASBCA No. 29061, 88-3 BCA ¶ 21,096 (1998) (contractor's submission of forged bonds was grounds for sustaining the termination for default); Cosmos Engineers, Inc., ASBCA No. 23529, 84-2 BCA ¶ 17,268 (1984) (criminal conviction established contractor's fraud in the performance of its contract and the fraud was grounds for sustaining the termination for default). Because the termination for default is sustained by Morse Diesel's fraud and kickback on the Phase II contract, the Court should dismiss Counts II and III of ACMI's Amended Complaint, which are based upon its assertion that the termination for default is improper.

## CONCLUSION

In sum, there is no reason for this Court to further consider plaintiff's challenge to GSA's decision to terminate Morse Diesel for default. The termination for default already was sustained in the Court's earlier ruling, and that determination is the law of the case. Alternatively, the termination for default should be sustained because of Morse Diesel's fraud and kickback on the Phase II contract. Accordingly, this Court should enter a ruling precluding plaintiff from challenging the June 1999 termination for default, and dismissing Counts II and III of plaintiff's Amended Complaint, which are based upon its assertion that the termination for default was improper.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Fax: (202) 514-8624
Attorneys for Defendant

Of Counsel:

KENT C. KIFFNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

TRACY L. HILMER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

ERIC L. MILLER
Office of the Inspector General
General Services Administration

CATHERINE CROW
General Services Administration

August 28, 2008

Table of Contents of Appendix

Page

June 16, 1999 Termination for Default of Morse Diesel's Phase II contract..........................1

December 12, 2000 Felony Guilty Plea of Morse Diesel in United States District Court for the Eastern District of Missouri..............................................................................................6

U.S. GENERAL SERVICES ADMINISTRATION
The Heartland Region

TRANSMITTED VIA FACSIMILE, HAND DELIVERED AND CERTIFIED MAIL-RETURN RECEIPT REQUESTED

JUN 1 6 1999

Mr. Graham Harwood
Morse Diesel International, Inc.
125 South Wacker
Suite 200
Chicago, IL 60606

St. Louis, MO. Thomas F. Eagleton United States Courthouse,
111 South 10th Street
GS06P95GZC0501 - Phase II (NMO37113)

**NOTICE OF TERMINATION**

You are hereby notified that your right to proceed further under Contract Number GS06P95GZC0501 is terminated completely for default pursuant to FAR 52.249-10 Default (Fixed-Price Construction) (APR 1984) of GSA Form 3506, Construction Contract Clause, Page 42, paragraph 99. The termination is effective immediately upon receipt of this notice.

Contract GS06P95GZC0501 (hereinafter "Phase II contract") was awarded to MDI on September 28, 1995 in the amount of $165,102,791.18 for construction of the courthouse's shell and finish. The Phase II contract stipulated the work was to be complete and ready for use no later than 820 calendar days from access to site. Due to performance delays and problems with Phase I construction (contract number GS06P94GYC0037), Phase II was Terminated for Convenience by the Government.

Pursuant to agreement between GSA and MDI reinstating the Phase II contract, MDI was granted access to the site for the Phase II contract beginning May 2, 1996. The reinstatement agreement also designated October 12, 1998, as the new substantial contract completion date for Phase II. Since the reinstatement, eight modifications have been issued extending Phase II's substantial completion date to January 11, 1999 (See attached "Graph of Contract Completion Dates").

1500 East Bannister Road, Kansas City, MO 64131-3088

Federal Recycling Program Printed on Recycled Paper

In accordance with FAR 52.232-5-Payments Under Fixed Price Construction Contracts (APR 1989) GSA has, since February 14, 1997, retained as much as ten percent from each of MDI's monthly progress payments due to lack of satisfactory progress on Phase II. On December 8, 1998, GSA notified MDI of MDI's lack of satisfactory progress, of the contract's current completion date, and of GSA's intention to access $5000 per day liquidated damages per FAR Clause 52.212-5, Section 00800, page 21, lines 30-48, should MDI fail to meet the contract's completion date.

On January 12, 1999, the day after the contact completion date of January 11, 1999, had passed, GSA began accessing liquidated damages in the amount of $5000 per day. To date, liquidated damages totaling $700,000 have been assessed.

From June 1998 to the present, MDI has indicated in their Monthly Progress Updates that MDI is "investigating the cause of ...delay..." and are "currently developing an additional request for an extension incorporating all delays through the current completion date of the project." On March 3, 1999, the Contracting Officer wrote to MDI expressing GSA's concern regarding MDI's failure to provide timely submissions of requests for time adjustments as required in the contract. MDI's March 23, 1999 response did not offer any excuse for MDI's failure to meet the contract completion date. On May 7, 1999, the Contracting Officer again requested documentation that would substantiate any excusable delays. None was received. To date, GSA has reviewed all requests for time adjustments submitted by MDI.

In the Contracting Officer's May 18, 1999 letter, GSA expressed concerns regarding MDI's ability to complete the project, MDI's disregard of its own representations in regards to the construction schedule, MDI's lack of projected manpower in accordance with a Senior Management's meeting held on March 2, 1999, and GSA's inability to make building occupancy decisions due to MDI's unreliable schedule. GSA also advised MDI that GSA has reserved all rights available under the contract. On June 1, 1999, MDI responded by letter and stated their concerns were the same as the Government's.

Presently, all floors and parking levels are unfinished and unusable by GSA.

It is the Contracting Officers' decision that MDI has failed to the work within the time specified in this contract including any extensions. Therefore, your right to proceed under this contract is hereby terminated.

You are instructed to stop all work immediately and instruct all workers not to report to the site. You should notify your subcontractors of the termination. GSA will notify them as to the status of continuing work. GSA intends to inventory all construction records, drawings and materials stored on and off the site to

determine GSA ownership and the need for the completion of the work. Further access to the site will be limited to escorted trips for the removal of personal effects and property determined not to be government owned after the inventory.

The government may have the project completed by others and MDI and its sureties will be held liable for the excess costs as provided by the above referenced default clause. This notice constitutes a decision that MDI's failure to perform is not excusable, and you have the right to appeal, pursuant to FAR 52.233-1 Disputes – Alternate I (MAR 1994) of the Construction Contract Clauses (Fixed Price), GSA Form 3506.

The Government hereby reserves all rights and remedies provided by law under the contract, in addition to charging excess reprocurement costs.

This is the final decision of the Contracting Officers. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officers from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Karen A Poole
Karen A. Poole
Contracting Officer
Admin./Procurement Services Branch
Property Development Division
Public Buildings Service (6PCA)

Georgann Butler
Georgann Butler
Contracting Officer
Admin./Procurement Services Branch
Property Development Division
Public Buildings Service (6PCA)

Cc: Mr. A.S. McGaughan
Morse Diesel International, Inc.
8500 Eager Road
St. Louis, MO 63144

Mr. Paul Laswowske
Morse Diesel International, Inc.
8500 Eager Road
St. Louis, MO 63144

Seaboard Surety Company
and
St. Paul Fire and Marine Insurance Comapny
Burnt Mills Road & Route 206
Bedminster, NJ 07921

American Home Assurance Company
70 Pine Street
New York, NY 10270

Attachment

ACKNOWLEDGEMENT OF NOTICE

The undersigned acknowledges receipt of a signed copy of this Notice of Termination on June 16, 1999

Received by: Ladell Humphrey
(Name)
Morse Diesel Internat'l
rec'd 2:00 p.m.

Thomas F. Eagleton
U.S. Courthouse
St. Louis, Missouri

# Graph of Contract Completion Dates




The red line is generated using MDI's projections given to GSA each month. The green line is the required contract completion date. MDI has issued over 17 revisions to their schedule. Each revision has improved the project completion date for that month only.

The schedule just submitted to GSA last week (Revision 17b) shows a completion date of February 26, 2000.

AO 245E (3/96) Judgment in a Criminal Case for Organizational Defendants
Sheet 1

# UNITED STATES DISTRICT COURT
Eastern District of Missouri

FILED
DEC 1 2 2000
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA

v

MORSE DIESEL INTERNATIONAL, INC.

JUDGMENT IN A CRIMINAL CASE
(For Organizational Defendants)

CASE NUMBER: 4:00CR522RHK

Ronald E. Jenkins
Defendant Organization's Attorney

THE DEFENDANT ORGANIZATION:

☒ pleaded guilty to count(s) One of the information on 12/12/00

☐ pleaded nolo contendere to count(s) ______ which was accepted by the court.

☐ was found guilty on count(s) ______ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:287 | False Claim to the General Services Administration | November 1995 | One |

A TRUE COPY OF THE ORIGINAL
JAMES G. WOODWARD, CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY: [signature]
DEPUTY CLERK

The defendant organization is sentenced as provided in pages 2 through 3 of this judgment.

☐ The defendant organization has been found not guilty on count(s) ______

☐ Count(s) ______ dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant organization shall notify the United States Attorney for this district within 30 days of any change of name, principal business address, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant Organization's Federal Employer I.D. No.: ______

December 12, 2000
Date of Imposition of Judgment

Defendant Organization's Principal Business Address:

[signature]
Signature of Judicial Officer

Richard H. Kyle, United States District Judge
Name and Title of Judicial Officer

Defendant Organization's Mailing Address:

December 12, 2000
Date

A 6

Record No.: 11

DEFENDANT ORGANIZATION: MORSE DIESEL INTERNATIONAL, INC.

CASE NUMBER: 4:00CR522RHK

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 3, Part B

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Count 1 | $200.00 | $500,000.00 | |
| | | | |
| | | | |
| Totals: | $200.00 | $500,000.00 | |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . ________

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of ________.

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived.

☐ The interest requirement is modified as follows.

# RESTITUTION

☐ The determination of restitution is deferred until ________. An Amended Judgment in a Criminal Case will be entered after such a determination.

☐ The defendant organization shall make restitution, payable through the Clerk of Court, to the following payees in the amounts listed below.

If the defendant organization makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | * Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |
| Totals: | | | |

A 7

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A [✓] immediately; or within 10 days.

B [ ] $ _ immediately, balance due (in accordance with C, D, or E); or

C [ ] not later than_____; or

D [ ] in installments to commence _ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer sha pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; c

E [ ] in _ (e.g. equal, weekly, monthly, quarterly) installments of $ _ over a period of _ year(s) to commence _ day(s) after the date of this judgment.

Special instructions regarding the payment of criminal monetary penalties:

Fine is to be paid within 10 days.

[ ] The defendant shall pay the cost of prosecution.

## FORFEITURE

[ ] The defendant shall forfeit the defendant's interest in the following property to the United States:

FILED
DEC 12 2000
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. |
| MORSE DIESEL INTERNATIONAL, INC., | ) 4:00CR00552 |
| Defendant. | ) |

## INFORMATION

The United States Attorney charges:

1. That on or about November 28, 1995, in the Eastern District of Missouri and elsewhere, the defendant, Morse Diesel International, Inc., presented to the General Services Administration a false claim upon the United States under contract number GS06P95G2C0501;

2. At the time this claim was presented, the General Services Administration was an agency and department of the United States;

3. The claim presented was false in that the invoice attached to the claim for bond premium was stamped paid when, in fact, Morse Diesel International, Inc., knew the bond premium had not been paid when presented for payment to the General Services Administration;

4. Therefore, the defendant, Morse Diesel International, Inc., knew that the claim was false; and

5. The false claim was material.

In violation of Title 18, United States Code, Section 287.

A 9

A TRUE COPY OF THE ORIGINAL
JAMES G. WOODWARD, CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Michael W. Reap
MICHAEL W. REAP
Assistant United States Attorney

UNITED STATES OF AMERICA )
Eastern District of Missouri )

I, Michael W. Reap, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

Michael W. Reap
ASSISTANT UNITED STATES ATTORNEY

Subscribed and sworn to before me this 22nd day of November, 2000.

CLERK, UNITED STATES DISTRICT COURT

By: 
Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
DEC 1 2 2000
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| MORSE DIESEL INTERNATIONAL, INC., | ) | 4:00CR00552 |
| | ) | |
| Defendant. | ) | |

PLEA AGREEMENT AND STIPULATION OF FACTS RELEVANT TO SENTENCING

The United States of America, by and through Assistant U.S. Attorney Michael W. Reap and Morse Diesel International, Inc. (hereinafter referred to as "Defendant or "Defendant corporation"), by and through its undersigned counsel and its officer (who has the specific authorization of the Board of Directors of Defendant to act in its behalf in this proceeding), enter into the following Plea Agreement and Stipulation of Facts Relevant to Sentencing (hereinafter referred to as "Agreement").

A. PLEA AGREEMENT

1. Defendant agrees to waive indictment and plead guilty to a one count Information, a copy of which is attached hereto and incorporated by reference herein, which charges the Defendant with presenting a false claim upon the United States of America to the General Services Administration in violation of Title 18, United States Code, Section 287.

2. Defendant has been fully apprised of its constitutional rights by its attorney, which include the following:



A TRUE COPY OF THE ORIGINAL
JAMES G. WOODWARD, CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY: [signature]
DEPUTY CLERK

a) Public and Speedy Trial

If Defendant entered a plea of not guilty to the charge, Defendant would have the right to a public and speedy trial, either a jury trial or a trial by a judge sitting without a jury.

b) Presentation to Grand Jury

The Defendant corporation also has the right to have this matter presented to a grand jury for consideration of a felony indictment or a no true bill. The Defendant corporation specifically waives that right and agrees to proceed by the attached Information.

c) Trial by Jury

Defendant has a right to a jury trial. The jury would have to agree unanimously before it could return a verdict of guilty. The jury would be instructed that Defendant is presumed innocent, and that it could not convict unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt.

d) Trial by Judge

If the trial were before a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether the government has proved Defendant's guilt beyond a reasonable doubt.

e) Right to Counsel

Defendant has the right to be represented by an attorney at every stage of the proceeding.

f) Right to Confront and Cross-Examine Witnesses

At a trial, whether by a jury or by a judge, the government will be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront

these government witnesses and its attorney would be able to cross-examine the witnesses. In turn, Defendant may present witnesses and other evidence in its own behalf. The District Court can also require the attendance of witnesses for the Defendant through the subpoena power of the Court

g) Appeals

Defendant understands that after a trial, the Defendant could appeal an adverse judgment.

3. Defendant understands that, by its plea of guilty, Defendant expressly waives all the rights set forth in paragraphs 2(a) through 2(g), and also knowingly and voluntarily waives its right to appeal its plea of guilty, and resulting sentence entered in accordance with this Agreement. Defendant's attorney has explained these rights to Defendant and the consequences of Defendant's waiver of those rights. Defendant acknowledges that, as a result of its plea of guilty, no trial will in fact occur and that the only action remaining to be taken in this case is the imposition of the sentence which shall occur forthwith.

4. In exchange for a plea of guilty, the United States Attorney for the Eastern District of Missouri agrees that it will not criminally prosecute within the Eastern District of Missouri this Defendant, or Defendant's parent, subsidiary or related companies, their officers, directors and employees (past or present) for any criminal violations that the United States Attorney's Office for the Eastern District of Missouri or the General Services Administration's Office of Inspector General is on notice as a result of the investigation into the Defendant's conduct during the period August 19, 1994 to the date of this Agreement related to the Defendant's contracts with the GSA designated GS069P94GYC0037 and GS0695GZC0501, including but not limited to an Administrative Summons dated May 24, 1996, a GSA/OIG Special Agent's Report dated February 18, 1999, grand jury

subpoenas dated March 19, 1999, May 4, 1999, June 16, 1999, and February 7, 2000, and all other known facts or allegations obtained by authorities during the course of this investigation up to the time of this signed Agreement (the "Criminally Investigated Conduct").

5. The United States of America and Defendant hereby stipulate and agree that a fine of Five Hundred Thousand Dollars ($500,000.00) shall be assessed against Defendant as follows:

(a) Pursuant to the provisions of Title 18, United States Code, Section 3571(c), Defendant is subject to a maximum fine of Five Hundred Thousand Dollars ($500,000.00). Furthermore, a mandatory special assessment of $200.00 is applicable and the Defendant corporation agrees that this assessment and fine is due and payable immediately.

(b) As to this criminal prosecution the parties further agree that it is not appropriate to apply Title 18, United States Code, Section 3571(d) to impose a greater maximum sentence.

(c) The Defendant corporation and the Government agree that restitution is discretionary as the event in this Information occurred before April 24, 1996. However, the parties stipulate by this plea bargained sentence that the fine is an appropriate resolution of this criminal case and that no criminal restitution should be imposed in this prosecution.

(d) Both parties acknowledge that there are ongoing civil proceedings between the United States of America and Defendant, and other potential claims arising out of the contracts involved in the Criminally Investigated Conduct in the Eastern District of Missouri, including cases presently pending in the U.S. Court of Federal Claims and the General Services Board of Contract Appeals. Except to the extent that this "Agreement" admits the facts stated in the Information as a violation of Title 18, United States Code, Section 287, this Agreement shall not constitute a waiver

or release of either party's claims, rights, contentions or defenses with respect to those other cases and potential claims and allegations.

The Defendant has discussed with their attorney and understands that nothing contained in this Plea Agreement or the Stipulation of Facts Relevant to Sentencing for this case is meant to limit the rights and authority of the United States of America to take or pursue any civil, tax, or administrative action against the Defendant.

(e) The parties further agree that the specific fine and sentence in this Agreement is the appropriate disposition of this criminal case and adequately punishes the Defendant criminally for this offense and the other "Criminally Investigated Conduct" pursuant to Rule 11(e)(1)(C), Fed. R. Crim. P.

(f) The defendant understands that this offense and the "Criminally Investigated Conduct" is otherwise subject to the provisions and guidelines of the "Sentencing Reform Act of 1984", Title 18, United States Code, Sections 3661 *et seq.*

(g) The parties further agree that pursuant to Sentencing Guidelines §§ 8C2.1, 8C2.3, 8C2.4(d)(Level 16), 8C2.5(a) and 8C2.6(Score 5), a fine of Five Hundred Thousand Dollars ($500,000.00) is not only the maximum allowed by Title 18 of the United States Code, but also the appropriate and maximum fine allowed under the Sentencing Guidelines for this criminal offense and the "Criminally Investigated Conduct"..

(h) Aside from the specific conduct described in the Information, Defendant does not acknowledge that any of the "Criminally Investigated Conduct" alleged by the United States to have been illegal gives rise to criminal liability and specifically denies that it is guilty of any other criminal misconduct. The United States neither accepts nor rejects these contentions.

(i) The parties understand and agree that this Agreement is subject to the approval of the United States District Court under the provisions of Rule 11(c)(2), Federal Rules of Criminal Procedure. If this Agreement is not accepted by the United States District Court in its entirety, each party shall have the right to withdraw the plea bargain, this Agreement, and the Information.

6. This Agreement constitutes the entire agreement between the Defendant corporation and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant corporation states that no person has, directly or indirectly, threatened or coerced it to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

7. Defendant is a person as defined in Title 1, United States Code, Section 1.

8. The elements of the offense to which Defendant agrees to plead guilty are as follows:

(a) The Defendant presented to a department and agency a claim against the United States;

(b) At the time that this claim was presented, the General Services Administration was an agency and department of the United States;

(c) The claim was false in that it was stamped paid when in fact it had not been paid at that time by the Defendant;

(d) The Defendant knew that the claim was false, and

(e) The false claim was material.

9. The conduct described below this "Stipulation of Facts" constitutes a factual basis for the violation of Title 18, United States Code, Section 287. The Defendant contends that the specific

acts were performed by non-management, non-principal employees, acting within the scope of their employment. Defendant further contends that they occurred without knowledge, approval or direct authorization by senior management. For purposes of this plea, the government neither accepts nor rejects these contentions. The parties agree that Defendant, a corporation, is criminally liable under the legal theory of *respondeat superior* for the act or acts of its employees exercised within the scope of their employment.

10 The Defendant corporation has no criminal record.

11. The information set forth above is fully and completely the substance of any agreements made between the parties, and no other understanding or agreements, expressed or implied, have been made between the parties in this case.

B. STIPULATION OF FACTS

1. On or about November 21, 1995 an employee of Defendant, in the insurance and bonding department of Defendant's New York office, called a representative of Rollins, Hudig, Hall, the Defendant's bonding and insurance agent, and asked that representative to stamp an invoice for the bond premium as paid when, in fact, it had not been paid up to that date, and deliver the invoice stamped "paid" to Defendant's office.

2. Thereafter, on or about November 28, 1995, another employee of Defendant in St. Louis attached the falsely stamped "paid" invoice to a Progress Payment Voucher and certified the accuracy of the "paid" invoice and made a claim upon the United States pursuant to contract number GS06P95G2C0501, through the General Services Administration, for payment from the United States to Defendant for this "paid" bond premium.

3. Based upon the "paid" invoice and the certification (which were material to the General Services Administration in its determination to pay), said department and agency paid Defendant the amount of the "paid" invoice on or about December 18, 1995.

4. Defendant, in fact, paid the Rollins, Hudig, Hall invoice for the bond premium on or about February 6, 1996, and was not entitled to be reimbursed by the government for this amount under the contract until after the premium was in fact paid.

Respectfully submitted,

AUDREY G. FLEISSIG
United States Attorney

12/12/00
Date

MICHAEL W. REAP
Assistant United States Attorney

12/12/00
Date

MORSE DIESEL INTERNATIONAL, INC.
Defendant corporation

12/12/00
Date

RONALD E. JENKINS
Attorney for Defendant corporation

Morse Diesel
INTERNATIONAL, INC.
CONSTRUCTION/CONSULTING

[illegible] Broadway • New York, NY 10019 [illegible]
212 [illegible] • Fax [illegible]

Peter S. Janson
Chairman of the Board

September 8, 2000

Mr. Michael W. Reap
Assistant United States Attorney
1114 Market Street
Room 401
St. Louis, Missouri 63101

RE: *United States of America vs. Morse Diesel International, Inc.*

Dear Mr. Reap:

Attached to this correspondence is the Authorization of the Board of Directors of Morse Diesel International, Inc. for the undersigned to execute this document binding the Corporation to our agreement.

Morse Diesel understands that a one count felony information will be filed against the Corporation charging a violation of Title 18, United States Code # 287. The Corporation, represented by counsel, has reviewed the two plea agreements transmitted by you to our St. Louis counsel, Ronald E. Jenkins, on August 28, 2000. The Corporation has approved both of these agreements and will execute the agreements at our initial court appearance.

The Corporation has requested your office to wait until on or after December 1, 2000 to schedule this court appearance and you have agreed to this request. As consideration for this postponement of the Corporation's court appearance, Morse Diesel International, Inc., by and through its undersigned authorized representative, hereby voluntarily and knowingly waives the statute of limitations for any and all matters which are being or have been investigated by the United States Attorney's Office and the Federal Grand Jury for the Eastern District of Missouri from the date of this correspondence to and including January 1, 2001.

Sincerely,

Peter S. Janson

A 19

# MORSE DIESEL INTERNATIONAL, INC.
# CERTIFICATE RELATING TO RESOLUTION OF BOARD OF DIRECTORS

The undersigned, being the Chairman of the Board of Morse Diesel International, Inc., hereby certifies that a special meeting of the Board of Directors of the Company was held, via telephone, pursuant to due notice, on September 7, 2000, and that said special meeting was attended by Peter Janson, Mitchell Becker and John Cavanagh, who, collectively, constituted a quorum of said Board of Directors and that, at said special meeting, the Board of Directors adopted and approved the following resolution:

NOW THEREFORE BE IT RESOLVED that Peter Janson be and is hereby authorized to execute a letter, and to bind the Company to the terms thereof, which letter shall be addressed to the United States Attorney for the Eastern District of Missouri and, which letter shall provide that (a) after the expiration of ninety (90) days from the date of said letter, the Company will enter into a Plea Bargain Agreement pursuant to which the company will plead either guilty or *nolo contendre* to a one count Criminal Information relating to issues being investigated by the United States Attorney's Office and the Grand Jury in connection with the Thomas F. Eagleton Courthouse in St. Louis, Missouri, and will pay a fine of $500,000, and (b) the Company agrees to waive the applicable Statute of Limitations for everything that is being investigated by the United States Attorney's Office and the Grand Jury in connection with the Thomas F. Eagleton Courthouse for a period of ninety (90) days from the date of said letter.

EXECUTED this 7th day of September, 2000.

Peter Janson, Chairman of the Board