**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMEC CONSTRUCTION MANAGEMENT, INC., f/k/a Morse Diesel International, Inc., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-867 |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER TO PREVENT DISCOVERY AND DEPOSITIONS OF DOMENIQUE KIRCHNER AND CATHERINE CROW AND CROSS-MOTION TO COMPEL**

AMEC Construction Management, Inc. ("ACMI") respectfully submits its memorandum in opposition to Defendant's Motion for a Protective Order ("Motion") relating to Domenique Kirchner's, counsel of record for the government in this case, and Catherine Crow's, counsel for the General Services Administration ("GSA"), involvement in and knowledge of the government's calculation of excess reprocurement costs and cross-moves to compel discovery, including document production and depositions. The depositions of Ms. Kirchner and Ms. Crow are necessary and crucial to the preparation of plaintiff's case, address non-privileged information regarding the calculation of the government's excess reprocurement costs, and there is no other means by which that information can be obtained. Therefore, the court should deny defendant's motion for a protective order and allow the depositions to proceed immediately.

The government is in the unusual position of seeking a protective order to prevent the depositions of two of its attorneys. Yet the government's predicament is entirely of the government's own making. First, the government permitted its attorneys to engage in meetings

and communications regarding the revisions to reprocurement costs with multiple GSA employees and non-parties. Those communications, by their very nature cannot be privileged because no privilege attaches in communications with non-parties. Moreover, the information is not privileged because the factual underpinning for the excess reprocurement costs claimed as the government's damages is not legal advice, but pure fact.

Second, government counsel has waived any claim of privilege relating to the myriad of meetings, discussions and documents that bear directly upon the government's claim for excess costs of reprocurement. Such documents were produced by the government and used by ACMI without objection during depositions. ACMI's counsel provided government counsel with several oral and written notices that the government may have inadvertently produced privileged material, yet the government failed to "claw back" the documents (other than two documents). Therefore, ACMI now seeks, via cross-motion to compel, discovery related to those issues, including the production of these documents and questioning of government employees regarding the events of these meetings with Ms. Kirchner and Ms. Crow.

Specifically, as set forth in the notices of deposition, ACMI seeks discovery from Ms. Kirchner and Ms. Crow regarding the April 18 and 19, 2007 and May 21, 22, 23, 24, and 25, 2007 meetings during which the revision and calculation of excess reprocurement costs were discussed and/or made. ACMI also seeks discovery related to Ms. Crow and Ms. Kirchner's review of any draft final decisions or demands that were not ultimately issued to ACMI, including but not limited to the approximately $10 million draft May 24, 2007 final decision, produced by the United States. ACMI also seeks discovery from Ms. Kirchner and Ms. Crow relating to their participation in any supporting documents used to justify excess reprocurement costs, specifically the assembly of the spreadsheets used to support the August 9, 2007 and July

2, 2008 final demands. Finally, ACMI seeks discovery from Ms. Kirchner and Ms. Crow on their involvement in the Contracting Officer's decision to adopt a new methodology which was employed in the August 9, 2007 and July 2, 2008 final demands.

The meetings and discussions referenced in the documents already produced by the government directly relate to the numerous large changes the government has made to the amount it claims it is owed as excess costs of reprocurement. Plaintiff's defense to the government's claim includes establishing that the government has failed to meet its burden in proving the basis for the amount it claims. The government's ever-changing claim amount undermines the amount it now seeks. The government's Motion should be denied and the government should be compelled to make both witnesses available for depositions.

Finally, the government's assertion that ACMI has failed to follow certain agency regulations in noticing these depositions is wholly without merit. Those regulations are designed to control internal agency operations in responding to requests for information. Those regulations cannot and do not impose a different standard than the general civil discovery rules by which ACMI can depose government employees or agency officials. In addition, it is surprising that the government now seeks to invoke these regulations as a shield to these depositions when it has already produced agency documents to ACMI on numerous occasions regarding the excess reprocurement calculation and has, without objection, allowed for the deposition of several GSA employees on the basis of a notice of deposition to proceed.

## A. <u>The Factual Background Supports ACMI's Cross-Motion to Compel.</u>

This case involves the government's claim for excess reprocurement costs for the construction of the St. Louis federal courthouse from ACMI, the general contractor that the GSA terminated when the job was nearly completed. At the time of ACMI's termination there was $24.5 million left to complete the contract, but due to poor oversight and lack of cost controls by

the GSA as the general contractor the government now claims it spent over $51 million to complete the reprocurement phase ("Phase III").[1]

There is compelling evidence that the GSA never properly tracked the work and scope of the project under Phase III, and as a result cannot make an accurate demand for excess reprocurement costs on ACMI that meets the government's burden of proof. Through a series of five demands, ranging from $17 million to over $31 million, the government has illuminated the degree to which it is disorganized and unable to calculate a demand amount with any reasonable degree of certainty. In addition to the wide variation in the amounts of the final decisions, internal government documents suggest that ACMI owes much less. In 2004, the government's claim was priced at approximately $10.3 million.[2] On March 21, 2006 the government sought over $30 million from ACMI in excess reprocurement costs.[3] Then, in May 2006 that number was revised to $28 million.[4] Next, a minor revision resulted in an October 2006 request of approximately $28 million.[5] Next, on May 24, 2007 a draft final decision calculated the excess reprocurement costs at only $10 million.[6] Nevertheless, on August 9, 2007 the GSA issued a final decision for total costs of $17.3 million, which is a decline of approximately 40% from the

---

[1] July 2, 2008 Letter from G. Butler (L. Phillips Depo. Exh. 8) (Exh. 1).

[2] October 21, 2004 email from K. Poole to D. Kirchner, GSA 117660 (Exh. 2).

[3] March 21, 2006 Letter from G. Butler (M. Hom Depo. Exh. 2; T. Page Depo. Exh. 4; L. Phillips Depo. Exh. 3; K. Poole Depo. Exh. 1) (Exh. 3).

[4] May 1, 2006 Letter from G. Butler (M. Hom Depo. Exh. 10; T. Page Depo. Exh. 5; L. Phillips Depo. Exh. 4; K. Poole Depo. Exh. 2) (Exh. 4). Apparently due to a typographical error, a number nearly identical to the original over $30 million demand remained in the May correspondence as well. *See id.*

[5] October 10, 2006 Letter from G. Butler (M. Hom Depo. Exh. 11; T. Page Depo. Exh. 6; L. Phillips Depo. Exh. 5; K. Poole Depo. Exh. 3) (Exh. 5).

[6] May 24, 2007 Draft Final Decision, AALRR 10511 (Phillips Depo. Exh. 6 and contained in Hom Depo. Exh. 21) (Exh. 6).

original final decision on costs, but is still much larger than the draft. In addition the method of calculating the cost of reprocurement was radically changed.[7] Finally, over two years after the first of the demands, after the depositions of three government witnesses, and more than eight years after the substantial completion of construction, on July 2, 2008 the government made its most recent $18 million demand.[8]




[7] August 9, 2007 Letter from G. Butler (M. Hom Depo. Exh. 12; T. Page Depo. Exh. 7; L. Phillips Depo. Exh. 7; K. Poole Depo. Exh. 4) (Exh. 7).

[8] July 2, 2008 Letter from G. Butler (L. Phillips Depo. Exh. 8) (Exh. 8).

**TIMELINE OF ALLEGED TOTAL EXCESS REPROCUREMENT & DAMAGES CALCULATIONS**

(Courthouse Declared Substantially Complete May 18, 2000)

| **DATE** | **AMOUNT** | **EXHIBIT** |
|---|---|---|
| October 21, 2004 | $10,300,000[9] | October 21, 2004 email from K. Poole (Exh. 2 ) |
| March 21, 2006 | $31,791,700.39[10] | March 21, 2006 Letter from G. Butler (Exh. 3). |
| May 1, 2006 | $31,793,699.39[11] | May 1, 2006 Letter from G. Butler (Exh. 4). |
| October 10, 2006 | $31,791,699.39[12] | October 10, 2006 Letter from G. Butler (Exh. 5). |
| May 24, 2007 | $11,825,207.68[13] | May 24, 2007 Draft Final Decision, (Exh. 6). |
| August 9, 2007 | $17,343,711.03[14] | August 9, 2007 Letter from G. Butler (Exh. 7). |
| July 2, 2008 | $18,001,262.04[15] | July 2, 2008 Letter from G. Butler (Exh. 1). |

[9] This email only refers to "excess reprocurement costs" and does not appear to include amounts for liquidated damages which would total $1.76 million. The email does not identify whether the approximately $1.5 million in extended costs of HOK and Jacobs are included in the $10.3 million.

[10] This amount is composed of $30,031,700.39 in excess reprocurement costs (which includes the extended costs for HOK and Jacobs in the amount of $1,534,968.34), and $1,760,000 in liquidated damages.

[11] This amount is arrived at by adding the total amount of each item listed as a cost in the demand letter to total $28,498,731.05 which is identified as demand number 3 with $1,760,000 in liquidated damages and $1,534,968.34 in extended costs for HOK and Jacobs. The letter does not arrive at this total for costs of demand number 3 but instead states that the total is both $28,496,731.05 and also $28,496,723.05. Perplexingly the letter also states that the new final decision total is $30,031,699.39.

[12] This amount is arrived at $28,496,731.05, which is the total of costs listed for that demand, with $1,760,000 in liquidated damages and $1,534,968.34 in extended costs for HOK and Jacobs.

[13] This amount is arrived at by adding the $10,065,207.68 allocated to excess reprocurement costs (which include the extended costs for HOK and Jacobs in the amount of $1,534,968.34) with the liquidated damages of $1,760,000.

[14] The format for this demand worked from a total cost approach and this amount was arrived at by subtracting out costs that were purportedly not chargeable to ACMI and adding in liquidated damages of $1,760,000. The extended costs of HOK and Jacobs of $1,534,968.34 are included in the starting total cost amount of $50,861,540.09.

[15] The format for this demand worked from a total cost approach and this amount was arrived at by subtracting out costs that were purportedly not chargeable to ACMI and adding in liquidated damages of $1,760,000. The extended costs of HOK and Jacobs of $1,534,968.34 are included in the starting total cost amount of $51,240,152.86. The subcategories subtracted from the total costs now contain different amounts than were stated in the August 2007 letter.

**B. <u>The Government Bears the Burden of Establishing Entitlement to and the Amount of Excess Reprocurement Costs and ACMI's Discovery Relates Directly to the Government's Ever-Changing Calculations.</u>**

In its Motion for a Protective Order, the government claims that any errors in its calculations are not relevant because the court ultimately determines the amount owed, if any. Motion 2-3. Yet this claim ignores the fact that it is the government that shoulders the heavy burden of establishing the excess reprocurement costs it is entitled to recover. Specifically, to prevail on its claim, the government must prove that (i) the GSA properly terminated ACMI for delay, (ii) the costs GSA seeks to assess as "excess reprocurement costs" are, in fact, costs for work that was within the scope of the original GSA-ACMI Phase II contract, and (iii) the GSA actually incurred the "excess costs" and the GSA acted reasonably to minimize the excess costs resulting from the default (reasonable time, using the most efficient method of reprocurement, obtaining a reasonable price and mitigating its losses). *See generally Cascade Pac. Int'l v. United States*, 773 F.2d 287, 293-94 (Fed. Cir. 1985). The fact that the Contracting Officer cannot seem to get the claim amount right relates directly to the validity of the calculation and is important information for the Court to consider in determining whether the government has met its burden.

To fully understand and test the government's excess reprocurement calculation, and the methodology employed in making that calculation, plaintiff must depose Ms. Kirchner and Ms. Crow. ACMI seeks facts relating to the calculation of excess reprocurement costs. Documents produced by the government thus far in discovery reveal that both Ms. Kirchner and Ms. Crow, like many other witnesses in this case, wore multiple hats and played dual roles. In this Court's ruling in *Chevron U.S.A., Inc. v. United States*, 80 Fed. Cl. 340, 360 (2008) (Braden, J.), the Court recognized that a lawyer playing dual roles may be involved in non-privileged activities. *Id.* (allowing further discovery on issues where a lawyer was both a technical and legal advisor

to the Department of Energy). Both Ms. Crow and Ms. Kirchner played integral roles in calculating, revising, and recalculating the government's excess reprocurement costs. Indeed, Ms. Crow conceded at the August 19, 2008 discovery conference with the Court that she "revised [the contracting officer's] calculations."[16] It is their role in the multiple calculations of excess reprocurement costs attributable to ACMI on which ACMI now seeks to depose them.

For example, on April 18 and 19, 2007 Ms. Kirchner, Ms. Crow, government employees and non-parties Jacobs employees attended a meeting regarding the calculation of excess reprocurement costs.[17] At this meeting the government realized there was a gross mistake in the method by which it calculated its first three final excess reprocurement costs decisions in 2006.[18] Shortly after the meeting the government began developing its fourth calculation of excess reprocurement costs.[19] In that process, a spreadsheet of the expenses incurred during Phase III of

[16] 08/19/08 Transcript of Status Hearing, at 21:24-22:1 (Exh. 9).

[17] April 20, 2007 email from G. Butler to R. Haddock, M. Hom, B. Daubach, R. Herron, G. Gummere, and T. Page, GSA 119231 (Hom Depo. Exh. 17 and L. Phillips Depo. Exh. 27) (Exh. 10) (minutes of April 18 and 19, 2007 meetings withheld on assertion of privilege); *see also* February 20, 2007 email from G. Butler to R. Haddock, GSA 119230 (L. Phillips Depo. Exh. 26) (Exh. 11) ("Domenique [Kirchner] (DOJ) wants [us] all to become very familiar with what we have listed for reprocurement costs as there is a 'very good' chance we and others . . . will be asked to give depositions regarding the subject. Therefore, in order to be prepared, Catherine Crow [] wants to meet with all of us at once if possible, to go over our supporting documents."); April 20, 2007 email from K. Poole to B Daubach, T. Page, and M. Hom, AALRR 10268 (Hom Depo. Exh. 16) (Exh. 12) ("Georgann and I thank you for taking the time to attend the meeting with us, Domenique Kirchner and Catherine Crow in St. Louis this week.").

[18] M. Hom Depo. at 11-14 (Exh. 13) (stating Hom became aware of his miscalculation in April 2007); K. Poole Depo. at 74 (Exh. 14) (The erroneous calculation "was discovered, while in a meeting, while we were going through documentation."); *see also* K. Poole Depo. at 78 (Exh.15) (After discovering the error the "plan was to go about it a different way, to try to ensure the accuracy of Marty's calculations.").

[19] *See* April 24, 2007 Letter from G. Butler (Hom Depo. Exh. 20) (Exh. 16) (indicating she was considering the amount of excess reprocurement costs); June 7, 2007 Letter from G. Butler (Exh. 17) (stating need for additional time to issue new decision).

the construction was developed.[20] Documents reveal that Ms. Crow played an involved role in the development of this spreadsheet that purportedly supports the government's excess reprocurement calculation.[21]

To the extent that the April meeting was privileged, the privilege has been waived. Likewise the privilege is also waived for any other meetings that occurred where the amount of excess reprocurement costs was the subject of discussion with counsel, including the meetings in May of 2007.[22] As further evidence of Ms. Crow and Ms. Kirchner's close involvement in the assembly of excess costs, the government has also produced an internal memorandum from Ms. Crow to Ms. Kirchner discussing the method by which the March 21, 2006 final decision was calculated.[23] Both Ms. Crow and Ms. Kirchner are important fact witnesses regarding the methodology employed in the calculation of excess reprocurement costs that is one of the core issues in this dispute and ACMI is entitled to depose them as fact witnesses.

---

[20] *See* September 6, 2007 Defendant's Preliminary List of Witnesses and Documents attaching Spreadsheet (Exh. 18); T. Page Depo at 16 (Exh. 19) (stating that spreadsheet was created in the summer of 2007).

[21] *See, e.g.*, June 5, 2007 email from C. Crow to G. Butler, GSA 114365 (Exh. 20) (stating "I have some questions/comments re: that spreadsheet. Call me before you finalize the document."); June 6, 2007 email from G. Butler to B. Daubach and T. Page, GSA 120211 (Exh. 21) (indicating Crow reviewed spreadsheet and that revisions should be sent to her); June 14, 2007 email from C. Crow to G. Butler, T. Page, and S. Hadley, CC 001826 (Exh. 22) ( "I think it's best if we have all spreadsheet issues resolved by Monday morning, because Terry is going to start inputting numbers into it then.").

[22] *See* M. Hom Bills, at AALRR 10230-231 (Hom Depo. Exh. 5) (Exh. 23) (indicating conferences regarding revisions to excess reprocurement costs on May 21-25, 2007 where Crow was in attendance).

[23] This document was introduced as an exhibit at the Martin Hom deposition and no objection was raised on the basis of any privilege. June 26, 2007 Memorandum from C. Crow to D. Kirchner, KP004677 (Hom Depo. Exh. 13) (Exh. 24).

**C. ACMI is Entitled to Take Discovery on All Information Related to the Calculation of Excess Reprocurement Costs Regardless of the Government's Privilege Claims.**

ACMI by cross-motion seeks to compel the depositions of Ms. Kirchner and Ms. Crow as well as production from Ms. Kirchner and Ms. Crow of all documents relating to any meetings or other communications regarding the calculation of excess reprocurement costs as indicated in the notices of deposition, including production of the April 18-19, 2007 meeting minutes for which the government has asserted an attorney-client privilege, and the reopening of all previously conducted depositions on the subject of these meetings, as the privilege previously asserted by the government is not tenable. First, Ms. Crow and Ms. Kirchner were not working in a legal capacity and providing legal advice at this meeting or in other related communications, but were instead creating and revising the excess reprocurement calculation. *See* discussion *supra*, at pages 18-19. Second, the meeting was attended by non-government employees, and non-government employees participated in other related communications, so no privilege could have attached to those discussions. *See* discussion *supra*, at pages 16-17. Third, if Ms. Crow and Ms. Kirchner were indeed serving in a legal capacity, any privilege or work product protection has been thoroughly waived by the government's repeated production of documents containing attorney-client communications regarding the excess reprocurement calculation including a memorandum between Ms. Crow and Ms. Kirchner regarding the method of calculation. *See* discussion *supra*, at 17 and related footnote.

Deposition testimony demonstrates that it was at the April 2007 meeting that the government set out to recalculate its excess reprocurement costs. But, because the government has asserted an attorney-client privilege with respect to these meetings, ACMI was unable at

those depositions to further explore what happened during the meeting.[24] In light of the May 24, 2007 $10 million draft excess reprocurement cost calculation, it is particularly important that ACMI be able to explore what happened at this meeting. Especially since the government only approximately two months later on August 9, 2007 issued a demand for $17 million -- over $7 million dollars more than the May 2007 draft.

Specifically, as set forth in the notices of deposition, ACMI seeks discovery from Ms. Kirchner and Ms. Crow regarding the April 18 and 19, 2007 and May 21, 22, 23, 24, and 25, 2007 meetings during which the revision and calculation of excess reprocurement costs were made. ACMI also seeks discovery related to Ms. Crow and Ms. Kirchner's review of any draft final decisions or demands that were not ultimately issued to ACMI, including but not limited to the approximately $10 million draft May 24, 2007 final decision, produced by the United States. ACMI also seeks discovery from Ms. Kirchner and Ms. Crow relating to their participation in any supporting documents used to justify excess reprocurement costs, specifically the assembly of the spreadsheets used to support the August 9, 2007 and July 2, 2008 final demands. Finally, ACMI seeks discovery from Ms. Kirchner and Ms. Crow on their involvement in the Contracting Officer's decision to adopt a new methodology which was employed in the August 9, 2007 and July 2, 2008 final demands.

For the reasons discussed more thoroughly below, the government should be required to produce Ms. Kirchner and Ms. Crow for deposition as well as to produce the meeting minutes and any other documents it is similarly withholding related to Ms. Crow and Ms. Kirchner's contributions to and involvement in the calculation of excess reprocurement costs. To the extent

[24] *E.g.*, M. Hom Depo. at 13-14 and 109-112 and 125-135 (Exh. 25).

any privilege ever existed with respect to such communications, the government has repeatedly waived those privileges through the production of documents.

**D. <u>ACMI Satisified the Court of Federal Claims Requirements for Deposing Counsel.</u>**

Rule 30(a) of the United States Court of Federal Claims ("RCFC") gives parties significant latitude to depose individuals during discovery, with no specific prohibition on taking depositions of counsel. RFRC 30(a); *Boston Edison Co. v. United States*, 75 Fed. Cl. 557, 560 (2007); *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 561 (1999). *See also N.F.A Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987); *United Phosphorus Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 248 (D. Kan. 1995) ("Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source of discovery by virtue of their license to practice law or their employment by a party to represent them in litigation."). Nevertheless, under RCFC 26, this court has discretion to limit or preclude discovery if it decides that "justice requires… [the] protect[ion of] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." RCFC 26(c). Thus, pursuant to RCFC 26(c), a party seeking to protect itself from discovery bears the burden of persuasion to demonstrate "good cause" exists for a protective order. *Sparton Corp*., 44 Fed. Cl. at 561; *Boston Edison*, 75 Fed. Cl. at 561 ("Rule 26(c) places the burden of persuasion on the party seeking the protective order"). To demonstrate good cause to preclude a deposition, the party seeking the protective order must show that the discovery request is likely to oppress an adversary or otherwise impose an undue burden. *Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1361 (Fed. Cir. 2006); *Capital Props., Inc. v. United States*, 49 Fed. Cl. 607, 611 (2001).

While depositions of opposing counsel should be employed only in limited circumstances, *see Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), such

depositions may be necessary and appropriate where the attorney may be a fact witness to the dispute. *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990). In the Court of Federal Claims the deposition of opposing counsel is permitted if 1) no other means exist to obtain the information than to depose opposing counsel; 2) the information sought is relevant and nonprivileged; and 3) the information is crucial to the preparation of the case. *Sparton*, 44 Fed. Cl. at 563-68 (applying *Shelton v. Am. Motors Corp.*, 850 F.2d 1323, 1327 (8th Cir. 1986)); *see also Boston Edison Co.*, 75 Fed. Cl. at 560; *King-Fisher Co. v. United States*, 58 Fed. Cl. 570, 571 (2003). ACMI's request to depose Ms. Crow and Ms. Kirchner meets these three requirements and should be allowed to proceed. *See King-Fisher Co. v. United States*, 58 Fed. Cl. 570, 571 (2003) (allowing deposition of opposing counsel).

**1. The information sought from the depositions of Ms. Kirchner and Ms. Crow is otherwise unavailable from other sources.**

ACMI has already attempted to discover what occurred at the meetings in April and May 2007 where the government determined it had grossly overstated the excess reprocurement costs and began the process of recalculating these amounts. When Martin Hom was asked about the April 2007 meeting with Ms. Kirchner and Ms. Crow in attendance he was instructed not to answer the question. Specifically, Ms. Kirchner stated: "I'm going to instruct him not to answer as to the meeting with – that he attended that I'm present and Catherine Crow was also present."[25]

[25] M. Hom Depo. at 125-26 (Exh. 26); *see also* M. Hom Depo. at 14 (instructing witness not to answer questions about meetings with Kirchner in attendance).

Accordingly, while the government argues in its Motion that other people can testify instead of Ms. Crow and Ms. Kirchner, thus far the individuals at the meetings in which the figures were revised were instructed at depositions not to respond to questions about the meetings.[26] As such, Ms. Kirchner and Ms. Crow have made themselves the only individuals from whom that information is available. In light of this history of deposition testimony on these issues, the government's assertion in its Motion that ACMI had not "even pursued" other discovery options is disingenuous at best. Motion, at 11. The government has asserted the attorney-client privilege for the minutes from these meetings and instructs deponents not to answer questions regarding the events at those meetings.[27] Under these circumstances, the Court should find that the information sought at the deposition of counsel is not available from anywhere else.

Furthermore, documents reveal that Ms. Crow directed the Contracting Officer to the new methodology used to calculate the demand.[28] This methodology was employed in both the August 9, 2007 and July 2, 2008 demands for payment.[29] Likewise, correspondence produced in discovery shows that Ms. Kirchner directed specific language to be included in the final decisions issued to

[26] M. Hom Depo at 13-14 and 109-112 and 125-135 (Exh. 25).

[27] M. Hom Depo at 13-14 and 109-112 and 125-135 (Exh. 25).

[28] *See, e.g.*, August 8, 2007 email from C. Crow to G. Butler, GSA 116476-479 (Exh. 27) (attaching draft format employing total cost methodology that corresponds to the August 2007 final decision).

[29] August 9, 2007 Letter from G. Butler (Exh. 7) and July 2, 2008 Letter from G. Butler (Exh. 1).

ACMI.[30] With respect to those areas of testimony, both Ms. Crow and Ms. Kirchner have independent firsthand knowledge of the facts that no other witness possesses.

**2. The information sought from the depositions of government counsel is non-privileged, or alternatively any privilege has been waived.**

The information ACMI seeks from the depositions of Ms. Crow and Ms. Kirchner is not protected by any privilege, including the attorney-client privilege.[31] In *Chevron*, this Court declined "the Government's request to extend the well established parameters of the attorney-client privilege to attorney communications that do not provide legal advice, but rather concern primarily or exclusively technical or factual information." *Chevron,* 80 Fed. Cl. at 364. That "examination was guided by the test established by our appellate court: '[T]he *central inquiry* [is] whether the communication was one that was made *...for the purpose of obtaining legal advice or services.'*" *Id. (*quoting *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805 (Fed. Cir. 2000) (emphasis added) (citations omitted)). Additionally, the information ACMI

---

[30] March 2, 2006 email from J. Walsh to G. Butler, GSA 110752-110753 (Exh. 28) (noting Ms. Kirchner requested specific language about retainage be in the demand letters); February 17, 2006 email from K. Poole to G. Butler beginning chain, AALRR 10189-10193 (Hom Depo. Exh. 22) (including email from Ms. Kirchner asking questions about excess reprocurement calculation) (Exh. 29); February 21, 2006 email from G. Butler to K. Poole, GSA 110567-110568 (Hom Depo. Exh. 23) (Exh. 30) (referencing specific language Ms. Kirchner provided to Butler for inclusion in demand letter).

[31] This Court has noted that:

> '[T]he attorney-client privilege protects the confidentiality of communications between an attorney and client made for the purpose of obtaining legal advice.' We recognize the privilege in order to promote full and frank communication between a client and his [or/her] attorney so that the client can make well-informed legal decisions and conform his [or/her] activities to the law.

*Chevron U.S.A., Inc. v. United States,* 72 Fed. Cl. 366, 367 (2006) ((quoting *In re EchoStar Commc'ns Corp.,* 448 F.3d 1294, 1300-01 (Fed. Cir. 2006) (quoting *Genentech, Inc. v. Int'l Trade Comm'n,* 122 F.3d 1409, 1415 (Fed. Cir. 1997)).

seeks from Ms. Kirchner and Ms. Crow does not qualify as work product because ACMI does not seek attorney opinions, mental impressions, or legal conclusions. Rather, the depositions ACMI seeks are to address the method by which the government calculated the costs of excess reprocurement and the attorneys' roles in that calculation, not legal advice or communications.

Even if the attorney-client privilege applied to Ms. Crow and Ms. Kirchner's work on the calculation, the privilege was waived by their disclosure of correspondence between each other and with other individuals that revealed their role in re-calculating the claim amount.[32] As the *Sparton* court noted, privilege can be waived by disclosure. 44 Fed. Cl. at 567-68. Moreover, "[t]he widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *In re Echostar Communs. Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). Likewise, work-product waiver "extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product." *Id.* at 1302.

In this case, the government's assertion of privilege apparently depends on legal advice or strategy being discussed at the meetings in April and May 2007 where Ms. Kirchner and Ms. Crow were in attendance. The correspondence regarding the April 2007 meeting indicates that Brent Daubach, Chris Gummere, Roger Haddock and Terry Page were in attendance in connection with Jacobs Engineering's engagement by the GSA to assemble excess

[32] *See* e.g., June 26, 2007 Memorandum from C. Crow to D. Kirchner, KP004677 (Hom Depo. Exh. 13) (Exh. 24); August 8, 2007 email from C. Crow to G. Butler, GSA 116476-479 (Exh. 27) (attaching draft format employing total cost methodology by which final decision was issued).

reprocurement costs.[33] And both Mr. Page and Mr. Daubach also attended the May 2007 meetings on calculating excess reprocurement where at least Ms. Crow was in attendance.[34] Yet there has been no indication as to why employees of Jacobs Engineering would be in attendance at these purported legal strategy meetings since ACMI understands Jacob's role to be assisting in the assembly of excess reprocurement costs. Therefore, since the meetings were regarding the assembly of excess reprocurement costs no privilege or work product protection could have attached in the first instance to discussions at meetings in April and May 2007 and at which Jacobs employees were present.

Further, the government has repeatedly disclosed a large volume of internal communications to ACMI during discovery. ACMI brought this disclosure to the attention of the defendant several times, but the government has only asserted twice that a privileged document was inadvertently produced.[35] On the first occasion, the assertion occurred a day after the document was introduced as an exhibit without objection.[36] On the second occasion, the assertion of privilege occurred 386 days after the document at issue was produced by the Government.[37]

---

[33] April 20, 2007 email from G. Butler to R. Haddock, M. Hom, B. Daubach, R. Herron, G. Gummere, and T. Page, GSA 119231 (Hom Depo. Exh. 17) (Exh. 10) (minutes of April 18 and 19, 2007 meetings withheld on assertion of privilege).

[34] *See* M. Hom Bills, at AALRR 10230-231 (Hom Depo. Exh. 5) (Exh. 23).

[35] July 24, 2008 Letter from D. Kirchner (Exh. 31), August 21, 2008 Letter from D. Kirchner (Exh. 32).

[36] July 24, 2008 Letter from D. Kirchner (Exh. 31).

[37] *See* August 21, 2008 Letter from D. Kirchner (Exh. 32) (requesting return of electronic document from Box 3020); August 2, 2007 Letter from D. Kirchner (Exh. 33) (transmittal letter producing Box 3020).

As this Court has recognized a "waiver need not be express, but may be inferred from a pattern of conduct." *American Airlines, Inc. v. United States*, 77 Fed. Cl. 672, 680-81 (2007) (Braden, J.) (citations omitted). In this case, the government has repeatedly produced materials relating to attorney-client communications and even communications between the two attorneys ACMI now seeks to depose regarding the calculation of excess reprocurement costs.[38] Many of these documents then became deposition exhibits where no objections were made to their admissibility.[39] There can be no privilege that remains in light of the government's conduct.

**3. The information sought from the depositions of government counsel is necessary and crucial to the preparation of plaintiff's case.**

The depositions of Ms. Crow and Ms. Kirchner are necessary because the government has issued a series of widely varying demands for repayment that directly call into question the government's ability to meet its burden. Thus, a central part of the case is determining what costs are actually attributable to ACMI.

[38] June 26, 2007 Memorandum from C. Crow to D. Kirchner, KP004677 (Hom Depo. Exh. 13) (Exh. 24); *see also* April 27, 2007 email from C. Crow to D. Kirchner and R. Haddock, GSA 119205-15 (Exh. 34) (attaching legal research regarding FAR subparts).

[39] M. Hom Depo. at 115 (introducing memorandum from C. Crow to D. Kirchner (Hom Depo. Exh. 13) (Exh. 35); M. Hom Depo at 119 (introducing email chain containing emailed questions from D. Kirchner regarding calculations (Hom Depo. Exh. 15) (Exh. 36); M. Hom Depo. at 151 (introducing funding memorandum document labeled privileged (Hom Depo. Exh. 19)) (Exh. 37); M. Hom Depo. at 174 (introducing email chain containing emailed questions from D. Kirchner regarding calculations (Hom Depo. Exh. 22) (Exh. 38); M. Hom Depo. at 179-80 (introducing email chain containing proposed language from D. Kirchner for final decision and asking questions without objection (Hom Depo. Exh. 23)) (Exh. 39); L. Phillips Depo. at 24 (introducing attorney work product of Crow (L. Phillips Depo. Exh. 1)) (Exh. 40); L. Phillips Depo. at 133 (introducing 1999 PowerPoint on termination labeled attorney work product (L. Phillips Depo. Exh. 18)) (Exh. 41); L. Phillips Depo. at 152 (introducing funding memorandum document labeled privileged (L. Phillips Depo. Exh. 24)) (Exh. 42); L. Phillips Depo. at 164 (introducing email discussing arranging meeting with Ms. Kirchner and Ms. Crow to review reprocurement costs (L. Phillips Depo. Exh. 26) (Exh. 43); L. Phillips Depo. at 179 (introducing funding request labeled attorney work product (L. Phillips Depo. Exh. 32) (Exh. 44).

The deposition of Ms. Kirchner is necessary because she actively participated in drafting the final decisions and demands for repayment. For instance, a March 2, 2006 email from government auditor John Walsh to Contracting Officer Georgann Butler indicates that Ms. Kirchner had requested that information about retainage be inserted in a draft of a document that presumably became the March 21, 2006 final decision.[40] Ms. Kirchner "wanted [the additional language] to clarify something she had told the judge."[41] In addition, ACMI would also like to explore Ms. Kirchner's receipt of a calculation of excess reprocurement demands totaling $10.3 million in 2004.[42]

The deposition of Ms. Crow is both permissible and crucial because Ms. Crow played a non-legal role at times regarding the costs of reprocurement. For example, on August 8, 2007, the night before the government issued its fourth final decision Ms. Crow emailed Ms. Butler the methodology that was subsequently used in both the fourth and fifth final decisions.[43] This new methodology is dramatically different than the initial decisions and is easier for the government to obscure how it is tracking costs that it then charges back to ACMI. It is ACMI's belief that the initial methodology resulted in the $10 million cost calculation in 2004, which was then repeated in a May 24, 2007 draft decision for $10 million; and that the August 2007 change in methodology directed by Ms. Crow resulted in a demand for $17 million.[44] By employing a total

---

[40] March 2, 2006, Email from J. Walsh to G. Butler, GSA 110752-110753 (Exh. 28).

[41] March 2, 2006, Email from J. Walsh to G. Butler, GSA 110752-110753 (Exh. 28).

[42] October 21, 2004 email from K. Poole to D. Kirchner, GSA 117660 (Exh. 2).

[43] August 8, 2007 email from C. Crow to G. Butler, GSA 116476-479 (Exh. 27).

[44] October 21, 2004 email from K. Poole to D. Kirchner, GSA 117660 (Exh. 2), May 24, 2007 Draft Final Decision, AALRR 10511 (Phillips Depo. Exh. 6 and contained in Hom Depo. Exh. 21) (Exh. 6), and August 9, 2007 Letter from G. Butler (Exh. 7).

cost methodology the government did not justify why it charged each dollar to ACMI, instead it purported to subtract costs it asserted that ACMI was not accountable for.

The information sought during the depositions of the two attorneys is crucial to ACMI's case. As in *Boston Edison*, where Boston Edison's attorney could be deposed as to his non-legal role as a consultant for the sale of a nuclear power plant, ACMI should not be precluded from deposing Ms. Crow and Ms. Kirchner as to the facts underlying their non-legal involvement in calculating the damages and drafting the corresponding demand letters. 75 Fed. Cl. at 562-63. Moreover, ACMI is entitled to learn all of the facts concerning the five ever-changing calculations of excess reprocurement costs in order to establish that the government cannot ever satisfy its burden of proving those costs. This is because the government made several errors as it tried and then rejected methodologies to account for the excess costs, and was the result of the government's ineptness at tracking the costs from the date of ACMI's termination from the project.

Indeed, in *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990), the court permitted the deposition of an attorney, but limited the scope and duration of the deposition, noting: "In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness," and that "[t]he deposition of the attorney may be 'both necessary and appropriate' where the attorney may be a fact witness, such as an 'actor or viewer.'" The *Johnston* court permitted the deposition of plaintiff's lead counsel because "he personally witnessed and participated in some of the key conversations with defendants' representatives upon which several major allegations are founded." *Id*. at 354. Moreover, the court also found that the deposition was appropriate because although other witnesses had been deposed about the

meetings and conversations at issue, they had given conflicting testimony. *Id*. at 353-54. Here, the government has instructed every witness asked about the meetings to revise the excess reprocurement cost calculation not to answer such questions at depositions.

The government's citation to *Walker v. United Parcel Servs., Inc.*, 87 F.R.D. 360, 362 (E.D. Pa. 1980) is completely inapposite. In *Walker*, the court did not permit the deposition because the deposition of the attorney was "sought only to establish the credibility, that is, to buttress the testimony of plaintiffs' other witnesses," clearly a tangential issue. Similarly, unlike *Sparton*, where the proposed to-be-deposed attorney's role was only in negotiating a failed settlement that was *not* an issue in the case, the method of calculating excess reprocurement costs that Ms. Crow suggested was ultimately used in the demand to ACMI. Thus, the government has already revealed that Ms. Crow has crucial information about a central issue to the case: the factual bases for the calculation of the damages figure. As such, there is no good cause to preclude ACMI from deposing Ms. Crow and Ms. Kirchner.

Likewise, Ms. Crow and Ms. Kirchner were both involved in a non-legal capacity in calculating or revising the government's figures in this case. This is not a situation where, as in *Sparton*, ACMI seeks to depose Ms. Crow or Ms. Kirchner regarding their litigation strategy or mental impressions about the case. Rather, as in *Boston Edison* and *King-Fisher*, Ms. Crow and Ms. Kirchner both have "independent and firsthand knowledge" of the facts underlying one of the predominant issues in this case, the calculation of the government's damages claim.

The upcoming deposition of Georgann Butler, the contracting officer, will not provide the same information ACMI seeks from Ms. Kirchner and Ms. Crow, as the government suggests in its Motion. Motion at 6, 12. Ms. Butler did not develop the total cost methodology revision to the excess reprocurement cost calculations. Nor did Ms. Butler originate any of the many

communications Ms. Kirchner and Ms. Crow authored discussing the calculations and recommending changes to the calculations.

Accordingly, the defendant's request for a protective order should be denied and the depositions of Ms. Kirchner and Ms. Crow should be allowed to proceed immediately.

**E. <u>ACMI Employed the Proper Procedure by Noticing Ms. Crow and Ms. Kirchner's Depositions.</u>**

ACMI complied with the Rules of the Court of Federal Claims when it noticed the depositions of Ms. Crow and Ms. Kirchner. In its Motion, the government asserts that AMCI has failed to follow *Touhy* regulations in noticing the depositions of Ms. Crow and Ms. Kirchner.[45] The *Touhy* regulations provide the method by which a government agency will comply with a subpoena. *See Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007). Although the Court of Federal Claims and the Federal Circuit have not addressed the issue, Judge Kavanaugh of the D.C. Circuit explained that *Touhy* regulations do not require a private party to meet a heightened burden beyond those set forth in the Rules of Federal Civil Procedure when seeking information from a government agency. *Id.* at 508-09. This D.C. Circuit case law should be accorded significant weight because the D.C. Circuit is the appellate court responsible for the vast majority of agency law. ACMI is entitled to seek discovery under the Rules. If the government declines to comply then it is up to the Court to determine under the Rules whether the agency must provide the information sought. *See id.*

The government's assertion that ACMI has failed to comply with agency regulations is unfounded and the unpublished case law it cites is inapposite. The first decision, *Haithcox v.*

---

[45] The government's new ill-found dependence on the agency regulations is particularly weak because it comes after ACMI has already received voluminous document productions from the agencies relating to the litigation and after current and former GSA employees have already been deposed on the matter.

*Geo Group, Inc.*, 2008 WL 2487913 (D. Colo. June 16, 2008), quashed a Rule 45 subpoena because it was not served on the proper person (the General Counsel of DHS). The second decision, *United States v. Vander Luitgaren*, 2008 WL 2610465 (M.D. Fla. June 30, 2008), noted that there were no failures to comply with any procedures set forth by agency regulations but rather upheld the denial of a subpoena to an AUSA both because the testimony sought was not relevant and because the U.S. Attorney had decided to preclude the AUSA's testimony. In both cases, the district courts made some limited review of whether the decisions by the agencies to refuse to comply with the subpoena were reasonable -- with the court in *Haithcox* focusing on the burdensomeness of the subpoena and the court in *Vander Luitgaren* focusing at least in part on the relevance of the testimony sought. As the government is a party to this case, the use of a notice of deposition under Rule 30 is wholly appropriate and the *Touhy* regulations do not and cannot impose a heightened procedural burden on ACMI.

**F. <u>Conclusion</u>**

For the foregoing reasons, ACMI requests that the Court grant ACMI's Cross-Motion to Compel and deny the Government's Motion for a Protective Order in its entirety.

Respectfully submitted,

/s/James D. Wareham

James D. Wareham, Attorney of Record
for Plaintiff
Kirby D. Behre
Danielle W. Pierce
Paul, Hastings, Janofsky & Walker LLP
875 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: 202-551-1728
Fax: 202-551-0128

Date: September 2, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this 2nd day of September 2008 I caused a copy of the foregoing to be served by ECF upon counsel for the Defendant as follows:

Dominique Kirchner
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530

/s/Kirby D. Behre
Kirby D. Behre

LEGAL_US_E # 80762935.10