# EXHIBIT 6

## (M. Hom Depo. Exh. 21, L. Phillips Depo. Exh. 6)

cc:
Official File: 6PCA-I
Reading Files: LR(C. Morris/T. Hawkins/D. Phillips/C. Crow) 6L(Warnick) 6A 6P 6PC 6PCE(L. Phillips) 6ADB(K. Poole) DOJ(Kirchner/Hilmer)
6PCA-I:GButler:816-823-4918:5-24-07 GB/Stlcthse/Litigation/Final
Decision – Excess Reprocurement Costs

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

David Leonard, President
MDI Construction Management, Inc.
2200 Fletcher Ave.
Fort Lee, New Jersey 07025

**Re: Thomas F. Eagleton United States Courthouse, St. Louis, MO**
**Contract No. GS06P95GZC0501 – Phase II (NMO37113) – Revised Final Decision**

Dear Mr. Leonard:

As per my April 24, 2007 letter regarding this subject, below you will find my revised decision:

On or about September 25, 1995, Morse Diesel International ("MDI") was awarded Contract No. GS06P95GZC0501 in the amount of $165,102,791.18 for the core and shell construction of the Thomas F. Eagleton Courthouse in St. Louis, Missouri ("Phase II contract"). It is my understanding that on January 1, 2001, MDI changed its name to MDI Construction Management, Inc. However, to avoid confusion, this final decision will refer to MDI Construction Management, Inc. as MDI.

The Phase II contract contemplated an 820 day performance period. Due to performance delays and problems with the Phase I construction, the Phase II contract was terminated for the convenience of the Government on April 9, 1996. In an agreement dated May 2, 1996, GSA and MDI agreed to reinstate the Phase II contract with an agreed upon completion date of October 12, 1998. During the performance of the Phase II contract, eight contract modifications were issued which extended the Phase II contract completion date to January 11, 1999.

On December 8, 1998, GSA notified MDI of its concerns over MDI's lack of satisfactory progress on the Phase II contract, of the January 11, 1999 contract completion date, and of GSA's intent to assess liquidated damages if MDI was

AALRR 10511

EXHIBIT
Phillips 6
7/23/08

AALRR 10511

not substantially complete by January 11, 1999. MDI was not substantially complete on January 11, 1999 and GSA began assessing liquidated damages as of January 12, 1999. By way of contract modifications PODN, POEA, POFG, PCGF, and POGU, GSA assessed liquidated damages through May 30, 1999, in the total amount of $700,000.00.

On June 16, 1999, MDI's right to proceed under the Phase II contract was terminated for default due to MDI's failure to complete the Phase II work within the specified time. In the contracting officer's final decision dated June 16, 1999, MDI was informed that GSA may have the project completed by others pursuant to the default clause contained in the Phase II contract, FAR 52.249-10 (APR 1984), and that MDI and its sureties would be responsible for any and all excess costs to complete the Phase II work. GSA completed the remainder of the Phase II contract work which was substantially complete on May 18, 2000.

**<u>A. Excess Reprocurement Costs:</u>**

In the event that MDI's right to proceed was terminated for default, the Phase II contract expressly provides, in pertinent part, that,

> In this event, the Government may take over the work and complete it by contract or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the Government in completing the work.

(FAR 52.249-10 – Default (Fixed Price Construction)(APR 1984) at GSA Form 3506, Page 42)

The revised contracting officer decision for excess reprocurement costs is calculated as follows:

1. Excess costs to complete Phase II work

In my original decision I determined that MDI was responsible for excess costs to complete Phase II work in the amount of $18,030,374.59. After further review I have determined that because of math errors, these costs were duplicated in other items previously identified in the original decision.

2. Extended costs for HOK and Jacobs

These item costs remain unchanged ($1,534,968.34) and still apply.

3. Corrective work from June 1999 through October 2000 $ 5,575,977.98

In my original decision I determined that MDI was responsible for corrective work during June 1999 through October 2000 totaling $5,575,977.98. After further review of the documentation I have determined that MDI is only responsible $4,779,922.69 for this work. This revised number is based on the following changes:

- DHP Systems Was $610,430.00 Now $43,344.00
  - Change due to final negotiated audit findings.
- DKW Construction Was $249,796.29 Now $192,514.50
  - Change due to my determination MDI might not be responsible for all costs.
- Fabri-Tech Sheet Metal Was $2,000.00 Now $1,238.00
  - Change due to final negotiated price settlement with the contractor.
- Industrial Steel Was $46,677.00 Now $0.00
  - Change due to my determination MDI might not be responsible for all costs.
- NCS/ICS Was $736,072.50 Now $611,824.00
  - Change due to final negotiated audit findings.

4. Damages caused by FTU hose failure:

These item costs remain unchanged ($466,654.97) and still apply.

5. Corrective work after October 2000:

In my original decision I determined that MDI was responsible for corrective work during October 2000 to present totaling $580,049.29. After further review of the documentation I have determined that MDI is only responsible $548,630.62 for this work. This revised number is based on the following changes:

- Johnson Controls ~~Was $8,303.12~~ Now $0.00
  - Change due to my determination MDI might not be responsible for all costs.
- LB&B Associates Was $33,719.25 Now $10,603.70
  - Change due to my determination MDI might not be responsible for all costs.

6. Curtainwall repairs:

In my original decision I determined that MDI was responsible for curtainwall repairs in the amount of $432,520.16. After further review I have determined that

because of math errors, these costs were duplicated in other items previously identified in the original decision.

7. Removal of trash and debris and repair of the new plaza site:

In my original decision I determined that MDI was responsible for removal of trash and debris and repair of the new plaza site in the amount of $115,541.00. After further review I have determined that MDI might not be responsible for these costs.

8. Clean & seal exterior precast:

In my original decision I determined that MDI was responsible for clean & seal exterior precast in the amount of $729,159.00. After further review I have determined that MDI might not be responsible for these costs.

9. Testing & balance of HVAC system:

In my original decision I determined that MDI was responsible for testing and balancing of HVAC system in the amount of $1,391,954.00. After further review I have determined that MDI might not be responsible for these costs.

10. Fire safety issues:

These item costs remain unchanged ($632,076.00) and still apply.

11. Elevator repairs:

In my original decision I determined that MDI was responsible for elevator repairs in the amount of $199,469.00. After further review I have determined that MDI might not be responsible for these costs.

12. Estimate of repairs to curtainwall members damaged in storage:

These item costs remain unchanged ($342,955.06) and still apply.

**B. Liquidated Damages:**

Furthermore, with regard to liquidated damages, the Phase II contract provides, in pertinent part, that,

> If the Government terminates the Contractor's right to proceed, the resulting damage will consist of liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned the Government in completing the work.

(Section 00800-21 at FAR 52.212-5 – Liquidated Damages – Construction (APR 1984)

On October 31, 2000, GSA issued Claim No. 6P956501A (Demand #1) demanding the repayment of liquidated damages in the amount of $1,760,000.00 for the period of June 1, 1999 through May 17, 2000. This amount was calculated by multiplying the liquidated damages daily rate of $5,000 by 352 calendar days. In that demand, MDI was notified that the demand only sought the repayment of liquidated damages at that time and that GSA would be seeking its excess reprocurement costs and costs to correct defective work at a later date. As stated in my original decision, while MDI was ultimately granted a deferral on the collection of that debt, the Government was renewing its demand for the payment of liquidated damages in the amount of $1,760,000.00 as provided for under the Phase II contract. This figure remains unchanged.

**C. Summary of Costs:**

Summary of revised costs is:

| | | |
|---|---|---|
| 1. | Excess costs to complete Phase II work | $ 0.00 |
| 2. | Extended costs for HOK and Jacobs | $ 1,534,968.34 |
| 3. | Corrective work June 1999-October 2000 | $ 4,779,922.69 |
| 4. | Damages caused by FTU hose failure | $ 466,654.97 |
| 5. | Corrective work after October 2000 | $ 548,630.62 |
| 6. | Curtainwall repairs | $ 0.00 |
| 7. | Removal of trash & debris & repair of the new plaza site | $ 0.00 |
| 8. | Clean & seal exterior precast | $ 0.00 |
| 9. | Testing & balance of HVAC system | $ 0.00 |
| 10. | Fire safety issues | $ 632,076.00 |
| 11. | Elevator repairs | $ 0.00 |
| 12. | Estimate of repairs to curtainwall members damaged in storage | $ 342,955.06 |
| TOTAL | | $10,065,207.68 |

Accordingly, GSA's revised determination is that MDI is responsible under the Phase II contract for the excess reprocurement costs, the costs to repair defective work installed by MDI prior to the termination, and the assessment of liquidated damages through the date of substantial completion which total $10,065,207.68.

This is the final decision of the contracting officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must within 90 days from the date you receive this decision, mail or otherwise furnish written

notice to the agency board of contract appeals and provide a copy to the contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

Georgann Butler
Contracting Officer
Construction Acquisition Branch I
Project Management Division
Public Buildings Services (6PCA-I)

cc: Seaboard Surety Company (Bond No. 320442-95)
Burnt Mills Road, 7 Route 206
Bedminster, NJ 07921

American Home Assurance Company (Bond No. 16-07-23)
70 Pine Street
New York, NJ 10270

Steven W. Schoenhaar
St. Paul Fire & Marine
5801 Centennial Way
P.O. Box 1138
Baltimore, MD 21203

James D. Wareham, Esq.
Paul Hastings Janofsky & Walker, LLP
875 15th Street, NW
Washington, DC 20005

Concur/Approved for Legal Sufficiency:

______________________________ Date______________
Regional Counsel (6L)

Concur:

______________________________ Date______________

Concur:

______________________________ Date______________
Mary Ruuwe
Assistant Regional Administrator (6P)