# EXHIBIT 13

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

AMEC CONSTRUCTION MANAGEMENT, INC.,
f/k/a Morse Diesel International, Inc.,

Plaintiff,

-against- Case No. 06-867

(Judge Braden)

THE UNITED STATES,

Defendant.

- - - - - - - - - - - - - - - - - - - - -x

June 25, 2008
8:50 a.m.

Videotaped deposition of MARTIN HOM, taken by attorneys for Plaintiff, pursuant to subpoena, held at the offices of Paul, Hastings, Janofsky & Walker, LLP, 3579 Valley Centre Drive, San Diego, California, before Helen Mitchell, a Shorthand Reporter and Notary Public.

WINTER REPORTING, INC. 212.953.1414

(Hom - 6/25/08)
double counting?
MS. KIRCHNER: Objection, asked and answered.
A Yes.
Q How are you aware of that?
A I came to that understanding.
Q When did you come to that understanding?
A In April of 2007.
Q And what was the context in which you came to that understanding?
A I had a misunderstanding of what the PTIs represent.
Q And what is PTI?
A Post termination issue, is my understanding.
Q And what specifically was your misunderstanding?
A I had believed that the PTIs represented defective work in Phase II of the St. Louis courthouse project.
Q So your understanding was that it represented defective work in Phase II. What was the subsequent understanding that you came

(Hom - 6/25/08)

to?

A That the PTIs represented issues after termination that Jacobs determined that Morse Diesel was responsible for as excess reprocurement costs.

Q And so your initial understanding was that it was only the defects, and later you came to understand that you should have included everything that Jacobs --

A That's not --

Q -- was looking at?

A -- what I said.

Q Okay, please explain, because I don't understand.

A I said my subsequent understanding of the PTIs was that Jacobs determined that they were excess reprocurement costs in Phase III that Morse Diesel was responsible for.

Q How much double counting did that result in?

A I don't know.

Q I guess I'm still unclear as to what the misunderstanding was, so maybe you could restate it for me.

(Hom - 6/25/08)

A I think I've said it. Prior to April 2007, I believed the PTIs represented defective work installed by Morse Diesel and its subcontractors during Phase II. In April 2007, I understood them to represent Jacobs -- Jacobs determined them to be excess reprocurement costs in Phase III that Morse Diesel was responsible for.

Q What did you do as a result of learning that new information?

A I had a meeting with Jacobs.

Q What was the purpose of the meeting?

A To refine the issues.

Q Was another calculation done?

A I did not do another calculation.

Q Were you engaged in discussions with anybody about how a new number could be come up with?

A I think that meeting involved Miss Kirchner, and the subject of attorney/client privilege.

MS. KIRCHNER: Okay. If that's where we're going --

(Hom - 6/25/08)

THE WITNESS: Yes.

MS. KIRCHNER: Okay. He was at a meeting with me where we are asserting attorney/client privilege, and as to that meeting with me, I'm instructing him not to answer as to the meeting with me, if I understand where he's going.

(Letter marked Hom Exhibit 2 for identification.)

Q I'm showing you what's been marked as Hom Exhibit No. 2.

Could you take a look at that exhibit and see if you can identify it.

(Pause)

A Your question?

Q Just do you recognize the exhibit?

A I've never seen this document in this form.

Q Have you seen this document in another form?

A Yes, I believe.

Q What form would that be?

A I drafted a letter similar to this in January of 2006. I'm not quite sure if it's