# EXHIBIT 35

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

AMEC CONSTRUCTION MANAGEMENT, INC.,
f/k/a Morse Diesel International, Inc.,

Plaintiff,

-against- Case No. 06-867
(Judge Braden)

THE UNITED STATES,

Defendant.

- - - - - - - - - - - - - - - - - - - - -x

June 25, 2008
8:50 a.m.

Videotaped deposition of MARTIN HOM, taken by attorneys for Plaintiff, pursuant to subpoena, held at the offices of Paul, Hastings, Janofsky & Walker, LLP, 3579 Valley Centre Drive, San Diego, California, before Helen Mitchell, a Shorthand Reporter and Notary Public.

WINTER REPORTING, INC. 212.953.1414

(Hom - 6/25/08)

decision.

Q Well, there are entries here that indicate you were discussing revision to the excess reprocurement final decision; correct?

MS. KIRCHNER: Objection, misconstrues -- misstates the document.

A There's one entry on 5/15 that speaks to revision of excess reprocurement final decision. All the other entries, I believe, state "revisions to excess reprocurement cost claim."

Q And the difference would be between the final decision and the excess reprocurement cost claim?

MS. KIRCHNER: Objection, ambiguous.

A The way I looked at it, it has nothing to do -- we're working on the number, but not the final decision, that document itself.

Q Well, the number would have to go in the final decision, wouldn't it?

A Correct.

MS. KIRCHNER: Objection,

(Hom - 6/25/08)

ambiguous.

Q So bottom line is, in May of '07, you billed the federal government for 41 hours worth of work for matters relating to the revision of the excess reprocurement costs; correct?

A Correct.

(Memorandum to Ms. Kirchner from Ms. Crow marked Hom Exhibit 13 for identification.)

Q Showing you what's been marked as Hom Exhibit No. 13, can you look at that exhibit and see if you can identify that.

(Pause)

A I'm sorry, your question was?

Q Do you recognize this exhibit?

A No.

Q Have you ever seen it before?

A No.

Q Directing your attention back to Exhibit No. 2 -- that's the March 21st, 2006 final decision.

A Hang on a sec.

Okay, I have Exhibit 2.

(Hom - 6/25/08)

Q Exhibit 13, that you just looked at, indicates, in a memorandum to Miss Kirchner from Miss Crow, that the memo contains an explanation of the value and balance in footnote two of what is Hom Exhibit No. 2.

And that's the footnote that you explained to us earlier in your deposition about how you calculated the $30 million; is that correct?

A How you calculated the $18 million.

Q Which was part of the $30 million; correct?

A Correct.

Q And does looking at Hom Exhibit No. 13 refresh your recollection as to whether or not in May of '07 you were involved in discussions specifically about revising the final decision amount?

A No.

(Document marked Hom Exhibit 14 for identification.)

Q Showing you next what's been marked as Hom Exhibit No. 14, can you look at

POHD 21,018,470.15
Rev. 1 POHD 2,300,000.00
Rev. 2 POHD 1,119,000.00
24,437,470.15

GSA

GSA Office of General Counsel

June 26, 2007

MEMORANDUM FOR DOMENIQUE KIRCHNER
U.S. DEPARTMENT OF JUSTICE

**Privileged & Confidential**
**Attorney Work Product**

FROM: CATHERINE CROW CC
SENIOR ASSISTANT GENERAL COUNSEL
REAL PROPERTY DIVISION (LR)
U.S. GENERAL SERVICES ADMINISTRATION

SUBJECT: AMEC Construction Management, Inc. v. United States, Fed. Cl. No. 06-867 (Excess Reprocurement Claim)

Per your request, below is an explanation of the contract value and balance referenced in footnote 2 of Georgann Butler's final decision dated March 21, 2006:

- $7,817,227.49--This number was taken from Payment Voucher No. 41 ("Change Orders before Termination for Default").
- $172,920,019.67--This number is the sum of $165,102,792.18 (the contract value at award, which is listed on Payment Voucher No. 41) and $7,817,227.49. The value of Option 9 was not deleted in determining this figure because it was still part of the contract. The reason the value of Option 9 was deleted in Payment Voucher No. 41 + previous pymt vouchers was because Option 9 was paid using a different ACT number. Different Act numbers are not included although a part of the contract in the same payment voucher.
- $148,379,556.18--This number is the sum of $148,122,026 (the "Previous Payments" listed on Payment Voucher No. 41) and $257,529.85 (the total payments for Option 9). The attached payment logs show these numbers. I've also asked Georgann to find the last payment voucher for Option 9 and we'll include that in our backup. See attached scan for you from my stuff

another way to say it: Option 9 dollar value was ~~made~~ deleted for payment computations only as it was assigned a separate ACT # + required a separate pymt voucher to process in Finance.

These contract values are accurate as of the time of the termination. After the termination, GSA settled with Sachs Electric for $19,160 and with JMAC and the values above do not take those settlements into account.

Also, Payment Voucher No. 41 references "PSFZ" and "POHD". According to Karen Poole, those are modifications. The former was for the Sachs settlement and the latter was an administrative modification to deobligate $24,437,470.15 from AMEC's Phase II contract so that that money could be used on Phase III contracts.

Attached are copies of the payment logs for both ACT numbers used on Phase II and the first page of Payment Voucher No. 41.

U.S. General Services Administration
1800 F Street, NW
Washington, DC 20405-0002
www.gsa.gov

EXHIBIT
Hom 13
6/25/08