# EXHIBIT 37

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

AMEC CONSTRUCTION MANAGEMENT, INC.,
f/k/a Morse Diesel International, Inc.,

Plaintiff,

-against- Case No. 06-867
(Judge Braden)

THE UNITED STATES,

Defendant.

- - - - - - - - - - - - - - - - - - - - -x

June 25, 2008
8:50 a.m.

Videotaped deposition of MARTIN HOM, taken by attorneys for Plaintiff, pursuant to subpoena, held at the offices of Paul, Hastings, Janofsky & Walker, LLP, 3579 Valley Centre Drive, San Diego, California, before Helen Mitchell, a Shorthand Reporter and Notary Public.

WINTER REPORTING, INC. 212.953.1414

(Hom - 6/25/08)

A Yes.

Q Do you know who he is?

A He worked in GSA region six. His exact title in August of 2007 -- 2000 escapes me at the moment.

Q What was his role with regard to the courthouse construction project?

A I believe he was in a supervisory capacity over Karen Poole and Georgann Butler.

Q Do you recall Mr. Simon discussing with you and others the fact that at least as of August 2000, HOK had approximately $200,000 left on its contract with the government, and that the government believed that there were designed -- design deficiencies that needed to be discussed with HOK?

A No, I don't recall that.

Q Are you familiar with a funding category of BA51 and BA54?

A Vaguely. It's been a long time since I've been in the government.

Q Do you know what those two categories are?

A I believe BA54 is project funds.

(Hom - 6/25/08)
I'm not sure at this point what 51 funds are.
Q What about BA61 and BA80?
A BA80, I believe, are tenant funds.
BA61 are O&M, operation and maintenance funds.
Q And it was 51 you are not familiar with; right?
A Yes.
Q What about 50, BA50?
A I'm sure -- I'm unsure at this point in time.
Q Do you recall engaging in discussions as to whether or not the BA54 funds, which you've indicated are allocated to project costs, whether those funds could be used for excess costs of reprocurement?
A I don't recall any discussions on that.
(Document marked Hom Exhibit 19 for identification.)
Q Showing you what's been marked as Hom Exhibit No. 19, can you take a look at that exhibit.
(Pause)

(Hom - 6/25/08)
A Okay.
Q Do you recognize that exhibit?
A I do not, although I note that my name's on the copy line, but I don't recognize it.
Q Does it refresh your recollection in any way about the couple of items we've just talked about with regard to Ed Simon?
MS. KIRCHNER: Objection, ambiguous.
A No.
Q Are you represented by counsel here today?
A For the purposes of this deposition, yes.
Q Is she representing you in a personal capacity?
MS. KIRCHNER: Objection, ambiguous.
A I'm not sure.
Q And to whom are you --
A I mean, as compared to as representing the law firm?
She's representing me for the

**ATTORNEY CLIENT PRIVELEDGE DUE TO POTENTIAL PHASE III LITIGATION.**
**PLEASE DO NOT COPY OR DISTRIBUTE**

**Date:** **AUGUST 28, 2000 THIRD VERSION**
**To:** John Casey, Buster Rosser, Jeff Neely
**Copy:** Linda Phillips, Jackie Boursheski, Tom Barnard, John Walsh, Samm Skare, Dave Fellers, Marty Horn, Lee Ann Kramer, Karen Poole, Georgann Butler, Carol Watkins.
**From:** Ed Simon

These notes summarize discussions held the past week and concluding today concerning Eagleton funding. Please send any additional revisions to me

**PEOPLE INCLUDED IN DISCUSSIONS:** Jackie Boursheski, Tom Barnard, John Walsh, Samm Skare, Dave Fellers, Linda Phillips, Lee Ann Kramer, Karen Poole, Georgann Butler, Carol Watkins, Ed Simon, John Casey, Jeff Neely, Marty Horn, Harmon Eggars, Mike Wooten

**PURPOSE OF DISCUSSIONS:** To determine if BA54 money could be applied toward the St. Louis project, and to identify all other funding sources

**SUMMARY:** Audit findings have identified approximately **$471,000** in BA51 funds that can be recovered from construction contracts through immediate administrative contract action An additional **$100,000** could be recovered from construction contractors after some negotiation. Approximately **$250,000** will be requested from tenant agencies. We anticipate recovering **$200,000** from the A/E, after negotiations We are also identifying specific recurring repair items and recent tenant build out items for possible use of BA54 funds

Several questions have been discussed over the past week
1) Can BA54 money be used for excess reprocurement costs? **NO**
2) Can BA54 money be used for corrective work that was performed after the T4D action? **NO**
3) Can BA54 money be used for true recurring repairs? **IT DEPENDS, SEE ANSWER BELOW**
4) Does the date that Eagleton was ready for occupancy, May 18, 2000, have an effect on use of BA54 money? **IT DEPENDS, SEE ANSWER BELOW**
5) Can spending of BA54 money exceed prospectus limits? **NO**
6) What other options were available? **SEE ANSWER BELOW**

Question 1) and 2). After discussions with Harmon Eggars and Mike Wooten today, it was decided BA54 money could not be used for excess reprocurement costs, or for corrective work made to the building. Use of BA54 funds for these purposes would be considered an augmentation of the prospectus.

Question 3) After today's discussions, it was decided BA54 money could be used for costs that are recurring in nature if the items were not anticipated in the original prospectus. Some examples were cleaning mold from the building, and cleaning rust from elevator guide rails caused to moisture penetration. Pest control & window washing could be a BA61 expense. A study of current work orders will be started next week to determine the extent of these costs.

Question 4) After today's discussions, it was decided work ordered after May 18, 2000 could be paid for using BA54 money if the work items were not anticipated in the original prospectus An example would be last minute changed tenant build out requirements.

Question 5) The BA54 prospectus limitation cannot be exceeded Some work items charged to BA54 do not apply toward prospectus limit. They are security items and CRSS management fees after the substantial completion date.

EXHIBIT
Horn 19 ID
6/25/08